# Attachment C

# Guide to Judiciary Policy

Vol 7: Defender Services
Pt A: Guidelines for Administering the CJA and Related Statutes

## Appx 6A: Recommendations & Commentary Concerning the Cost and Quality of Defense Representation (Updated Spencer Report, September 2010)

Recommendations and Commentary

1.    Qualifications for Appointment
          Commentary on Recommendation 1
2.    Consultation with Federal Defender Organizations or the Administrative Office
          Commentary on Recommendation 2
3.    Appointment of More Than Two Lawyers
          Commentary on Recommendation 3
4.    Appointment of the Federal Defender Organization (FDO)
          Commentary on Recommendation 4
5.    The Death Penalty Authorization Process
          Commentary on Recommendation 5
6.    Federal Death Penalty Resource Counsel
          Commentary on Recommendation 6
7.    Experts
          Commentary on Recommendation 7
8.    Training
          Commentary on Recommendation 8
9.    Case Budgeting
          Commentary on Recommendation 9
10.   Case Management
          Commentary on Recommendation 10
11.   Availability of Cost Data
          Commentary on Recommendation 11

---

**Note:**  Detailed recommendations on the appointment and compensation of counsel in federal death penalty cases were adopted by the Judicial Conference, upon recommendation of the Defender Services Committee, on September 15, 1998 (JCUS-SEP 98, pp. 67-74).  The recommendations were contained in the May 1998 report entitled *Federal Death Penalty Cases: Recommendations Concerning the Cost and Quality of Defense Representation* (Spencer Report).  The Defender Services Committee approved the initial Spencer Report, including the commentary that

*Last revised June 3, 2011*

accompanied the recommendations.  In September 2010, following a comprehensive update of the report's contents, the Defender Services Committee endorsed revised commentary to the 1998 recommendations.  **The recommendations and the accompanying revised commentary are set forth in this appendix.**  The revised commentary has not been approved by the Judicial Conference; it is included in this appendix as it expands upon the recommendations, discusses the role of federal defender organizations in federal death penalty cases, and generally provides practical information that is useful to judges and appointed counsel in the management of a federal death penalty case.  The entire updated 2010 report, which includes additional information and is entitled *Update on the Cost and Quality of Defense Representation in Federal Death Penalty Cases*, is available on the [judiciary's public website](); what follows in this appendix is an excerpt from that report.

# VIII.    RECOMMENDATIONS AND COMMENTARY[89]

## 1. Qualifications for Appointment

a. <u>Quality of Counsel.</u>  Courts should ensure that all attorneys appointed in federal death penalty cases are well qualified, by virtue of their prior defense experience, training and commitment, to serve as counsel in this highly specialized and demanding type of litigation. High quality legal representation is essential to assure fair and final verdicts, as well as cost-effective case management.

b. <u>Qualifications of Counsel.</u>  As required by statute, at the outset of every capital case, courts should appoint two counsel, at least one of whom is experienced in and knowledgeable about the defense of death penalty cases. Ordinarily, "learned counsel" should have distinguished prior experience in the trial, appeal, or post-conviction review of federal death penalty cases, or distinguished prior experience in *state* death penalty trials, appeals, or post-conviction review that, in combination with co-counsel, will assure high quality representation.

c. <u>Special Considerations in the Appointment of Counsel on Appeal.</u>  Ordinarily, the attorneys appointed to represent a death-sentenced federal appellant should include at least one attorney who did not represent the appellant at trial. In appointing appellate counsel, courts should, among other relevant factors, consider:

> i. the attorney's experience in federal criminal appeals and capital appeals;

> ii. the general qualifications identified in paragraph 1(a), above; and

> iii. the attorney's willingness, unless relieved, to serve as counsel in any post-conviction proceedings that may follow the appeal.

d. <u>Special Considerations in the Appointment of Counsel in Post-Conviction Proceedings.</u>  In appointing post-conviction counsel in a case where the defendant is sentenced to death, courts should consider the attorney's experience in federal post-conviction proceedings and in capital post-conviction proceedings, as well as the general qualifications set forth in paragraph 1(a).

e. <u>Hourly Rate of Compensation for Counsel.</u>  The rate of compensation for counsel in a capital case should be maintained at a level sufficient to assure the appointment of attorneys who are appropriately qualified to undertake such representation.

---

[89] Section VIII utilizes a numbering system that is different from the rest of this report in order to match the numbered recommendations in the original Spencer Report.

## Commentary

As Recommendation 1(a) indicates, the first responsibility of the court in a federal death penalty case is to appoint experienced, well-trained, and dedicated defense counsel who will provide high quality legal representation.  Federal law requires the appointment of two counsel to represent a defendant in a federal death penalty case, of whom at least one must be "learned in the law applicable to capital cases." 18 U.S.C. § 3005.  Additional requirements relating to counsel's experience are codified at 18 U.S.C. § 3599.  Legislatures, courts, bar associations, and other groups that have considered the qualifications necessary for effective representation in death penalty proceedings have consistently demanded a higher degree of training and experience than that required for other representations.  As provided in the Defender Services Program Strategic Plan, counsel in federal death penalty cases are expected to comply with Guidelines 1.1 and 10.2 et seq. of the American Bar Association's *Guidelines for the Appointment and Performance of Counsel in Death Penalty Cases*, 31 Hofstra L. Rev. 913 (2003), and the *Supplementary Guidelines for the Mitigation Function of Defense Teams in Death Penalty Cases*, 36 Hofstra L. Rev 677 (2008).[90]

Heightened standards are required to ensure that representation in federal death penalty cases is both cost-effective and commensurate with the complexity and high stakes of the litigation.  Counsel in a federal death penalty case must not only be skilled in defending the charged offense, e.g., a homicide, but also must be thoroughly knowledgeable about a complex body of constitutional law and special procedures that do not apply in other criminal cases.  They must be able to direct extensive and sophisticated investigations into guilt/innocence and

---

[90] Aimed at providing counsel services "consistent with the best practices of the legal profession," the Defender Services Program Strategic Plan was endorsed by the Defender Services Committee of the United States Judicial Conference.  See Goal 2 (Quality of Representation), Strategy 16 (Capital Representations).

mitigation of sentence.  They must have the counseling skills to advise a client deciding between pleading guilty in return for a life sentence and proceeding to trial where the sentencing options are death or life imprisonment without the possibility of release.[91]  They must have communication skills to establish trust with clients, family members, witnesses, and others whose backgrounds may be culturally, racially, ethnically, linguistically, socioeconomically, and otherwise different from counsel's.  They must be able to work effectively as part of a defense team and collaboratively with counsel for codefendants.  And, for post-conviction cases, counsel also must be familiar with the unique jurisprudence and practices applicable in habeas corpus. Finally, counsel must be able, notwithstanding exceptional knowledge and skill, to commit sufficient time and resources, taking into account the extraordinary demands of a federal death penalty representation.

The standards listed in Recommendations 1(b) – (d) are designed to assist courts in identifying the specific types of expertise and distinguished prior experience which have been deemed most valuable to this demanding work in the experience of the federal courts thus far. They emphasize the importance of bringing to bear both death penalty expertise and experience in the practice of criminal defense in the federal courts.  As described further in the commentary to Recommendation 2, the qualifications of counsel must be assessed with respect to the particular demands of the individual case, the stage of the litigation, and the defendant.

---

[91] A guilty plea negotiated at any point in the proceedings brings substantial cost savings, and such a disposition is always available if the sides can find agreement, even after the death penalty has been authorized.  The Federal Death Penalty Resource Counsel Project recently estimated that plea agreements have been reached in approximately 25 percent of *authorized* federal capital prosecutions since 1988.  Appointed counsel's negotiating skills thus are very important.

The governing statute calls for capitally qualified counsel to be appointed "promptly," 18 U.S.C. § 3005.  Recommendation 1(b) endorses appointment of specially qualified counsel "at the outset" of a case, which in some cases may mean prior to the formal filing of a charging document.  Courts should not wait to see whether the government will seek capital prosecution before appointing appropriately qualified counsel and granting them the resources necessary for a preliminary investigation.  The goals of efficiency and quality of representation are achieved by early appointment of learned counsel in cases where capital indictment may be sought. Virtually all aspects of the defense of a federal death penalty case, beginning with decisions made at the earliest stages of the litigation, are affected by the complexities of the penalty phase. Early appointment of "learned counsel" is also necessitated by the formal authorization process adopted by the Department of Justice to guide the Attorney General's decision-making regarding whether to seek imposition of a death sentence once a death-eligible offense has been indicted. Integral to the authorization process are presentations to the local United States Attorney's Office and Justice Department officials of the factors which would militate against a death sentence.  See United States Attorney's Manual § 9-10.000.  A mitigation investigation therefore must be undertaken at the commencement of the representation.  Delay in appointment of learned counsel risks missing this important opportunity to avoid the high cost of a capital prosecution.  Since an early decision not to seek death is the least costly way to resolve a potential capital charge, a prompt preliminary mitigation investigation leading to effective advocacy with the local U.S. Attorney and with the Justice Department is critical both to a defendant's interests and to sound fiscal management of public funds.  And, since the local prosecutor's recommendation most often prevails with the Attorney General, the opportunity to persuade the U.S. Attorney not to request capital authorization is extremely important.

Recommendation 1(b)'s requirement of "distinguished prior experience" contemplates excellence, not simply prior experience, at the relevant stage of proceedings: trial, appeal, or post-conviction.  It is expected that a lawyer appointed as "learned counsel" for trial previously will have tried a capital case through the penalty phase, whether in state or in federal court, and will have done so with distinction.  Excellence in general criminal defense will not suffice because the preparation of a death penalty case requires knowledge, skills, and abilities which even the most seasoned lawyers will not possess if they lack capital experience.  And not all capital trial experience will qualify as "distinguished."  Consultation with federal defender organizations and Resource Counsel, as described in Recommendation 2 (Consultation with Federal Defender Organizations or the Administrative Office), can help ensure that appointed counsel meet this criterion.[92]

Courts should appoint counsel with "distinguished prior experience" in death penalty trials, appeals, or post-conviction representation, even if meeting the standard requires appointing counsel from outside the district in which a matter arises.  Appointing such qualified defense counsel generally produces cost efficiencies, including a higher likelihood of a non-trial disposition.  The costs of travel and other expenses associated with bringing counsel from

---

[92] The term federal defender organization (FDO) is used here to refer to a Federal Public Defender Organization (FPDO) and a Community Defender Organization (CDO), two different organizational models that fulfill the same function of providing counsel for indigent criminal defendants in the federal courts pursuant to the Criminal Justice Act (CJA), 18 U.S.C. § 3006A. A Federal Public Defender Organization is a federal office, headed by a Federal Public Defender who is selected by the Circuit Court of Appeals. The attorneys and other staff are employees of the federal judiciary.  A Community Defender Organization is a not-for-profit corporation governed by a board of directors and led by an executive director.  Both types of organization are funded and administered by the federal judiciary. Among the 94 judicial districts, 90 are served by an FDO.

The term "Resource Counsel" refers to the death penalty experts who serve in the Federal Death Penalty Resource Counsel Project (trial level), the Federal Capital Appellate Resource Counsel Project (appellate level), and the Federal Capital Habeas Project (post-conviction level).  These groups are referred to collectively as "Resource Counsel" or "the Resource Counsel Projects."  The work of the three Resource Counsel Projects and the National Mitigation Coordinator is described in the commentary accompanying Recommendation 2 (Consultation with Federal Defender Organizations or the Administrative Office) and Recommendation 6 (Federal Death Penalty Resource Counsel).

another jurisdiction can be minimized with careful planning by counsel and the court.  With appropriate forethought, investigations, client counseling, court appearances, and other obligations can be coordinated to maximize the efficient use of counsel's time and ensure cost-effectiveness.  In the institutional defender context, when it is helpful and desirable, attorney resources can be shared between defender offices pursuant to an established protocol.

Recommendation 1(c) provides that counsel on appeal should include "at least one attorney who did not represent the appellant at trial."  Like capital trial representation, capital appellate representation should be tailored to the individual requirements of the case, stage of proceedings, and client.  There should be no presumption of continuity from trial to appeal in federal death penalty cases, and courts frequently relieve and replace both trial counsel.  Capital appellate work is a specialty, and a lawyer is rarely a specialist in both trial and appellate representation.[93]  Even if trial counsel does possess "distinguished prior experience" in appellate as well as trial representation, there is value in bringing fresh perspective to issues that have been litigated below.  In addition, a new lawyer may, if appropriately experienced, be able to provide continued representation following the appeal in any post-conviction proceedings, which a trial lawyer could not, due to a conflict of interest.[94]  This would afford continuity of representation at that stage and, presumably, cost savings.  To address particular case-specific demands, such as an especially complex trial record or managing the needs of a defendant with significant mental health issues, some courts have found it helpful and cost-efficient to appoint one of the

[93] See *Good Practices for Panel Attorney Programs in the U.S. Courts of Appeals,* Vera Institute of Justice (2006) (the Defender Services Committee endorsed the report's recommendation that circuits adopt a flexible approach rather than requiring CJA trial counsel to continue representing the defendant through the appeal, and encouraging deference to trial counsel regarding whether continued representation is in the client's best interests and consistent with counsel's professional skills and obligations).
http://www.uscourts.gov/FederalCourts/AppointmentOfCounsel/Publications/VERASuggestedGoodPractices.aspx.

[94] Where a claim of ineffective assistance of counsel on appeal is possible, continued representation would not be appropriate.

95

defendant's trial attorneys as third counsel on appeal, to provide limited and/or temporary assistance as required.

Recommendation 1(d) highlights the need for specialized expertise in post-conviction representation.  Like trial and appellate counsel, post-conviction lawyers for federal death penalty cases should be selected based on an individualized assessment of the requirements of the case, the stage of the litigation, and the defendant.   Habeas corpus practice is a complex subspecialty of capital representation.  A lawyer qualified to be learned counsel in a federal capital trial or on appeal will not necessarily have such expertise.  Challenges include an accelerated timeline, a tangle of specialized procedural law applicable to capital proceedings pursuant to 28 U.S.C. § 2255, and an obligation that includes a full investigation of both phases of the trial to identify any possible constitutional infirmities.  This underscores the importance of appointing counsel with the experience and dedication – as well as the time and resources – to devote to this intensely demanding work.  The one-year statute of limitations makes it especially important that counsel be appointed promptly.  Federal Capital Habeas Resource Counsel recommend that appointment take place prior to the denial of certiorari by the Supreme Court. As indicated in Recommendation 4 (Appointment of the Federal Defender Organization), a number of federal defender organizations have staff attorneys who specialize in post-conviction capital litigation.  Where they possess the requisite expertise, appointment of federal defender organizations should be considered in capital 2255 cases.  For capital habeas corpus cases brought pursuant to 28 U.S.C. § 2254, involving state death sentenced prisoners, representation

by an institutional defender organization has been endorsed by the Committee on Defender

Services as offering cost and other efficiencies together with high quality representation.[95]

Recommendation 1(e) recognizes that appropriate rates of compensation are essential to

maintaining the quality of representation required in a federal capital case.  The time demands of

these cases are such that a single federal death penalty representation is likely to become, for a

substantial period of time, counsel's exclusive or nearly exclusive professional commitment.  It

is therefore necessary that the hourly rate of compensation be fair in relation to the costs

associated with maintaining a criminal practice.  The rate ($178 as of January 1, 2010) should be

reviewed at least every three years to ensure that it remains sufficient in light of inflation and

other factors.  (See 18 U.S.C. § 3006A(d)(1) and 18 U.S.C. § 3599(g)(1).)

---

[95] Report on Death Penalty Representation, prepared by the Committee on Defender Services Subcommittee on
Death Penalty Representation, approved by the Judicial Conference (JCUS-SEP 95, pp. 69, 78-81).

**2. Consultation with Federal Defender Organizations or the Administrative Office**

a. <u>Notification of Statutory Obligation to Consult.</u>  The Administrative Office of the U.S. Courts (Administrative Office) and federal defender organizations should take appropriate action to ensure that their availability to provide statutorily mandated consultation regarding the appointment of counsel in every federal death penalty case is well known to the courts. (See 18 U.S.C. § 3005.)

b. <u>Consultation by Courts in Selecting Counsel.</u>  In each case involving an offense punishable by death, courts should, as required by 18 U.S.C. § 3005, consider the recommendation of the district's Federal Public Defender (FPD) (unless the defender organization has a conflict) about the lawyers to be appointed. In districts not served by a Federal Public Defender Organization, 18 U.S.C. § 3005 requires consultation with the Administrative Office. Although not required to do so by statute, courts served by a Community Defender Organization (CDO) should seek the advice of that office.

c. <u>Consultation by Federal Defender Organizations and the Administrative Office in Recommending Counsel.</u>  In discharging their responsibility to recommend defense counsel, FDOs and the Administrative Office should consult with Federal Death Penalty Resource Counsel in order to identify attorneys who are well qualified, by virtue of their prior defense experience, training and commitment, to serve as lead and second counsel.

**Commentary**

Courts are required pursuant to 18 U.S.C. § 3005 to consider the recommendation of their federal defender organization or the Administrative Office regarding the appointment of both counsel in each federal death penalty case.[96]  Most courts are aware of the statute and policy and do consult about their appointments, though a small number still do not.  The Administrative Office should continue to ensure that all courts are aware of the importance and availability of consultation for all federal capital appointments, and should make specific outreach to courts that for any reason have not consulted with federal defenders or Resource Counsel.

---

[96] The specific language of the statute requires the court to "consider the recommendation of the *Federal Public Defender* organization, or, if no such organization exists in the district, of the Administrative Office…." 18 U.S.C. § 3005.  Emphasis added.  There is no indication in the legislative history that this reference was intended to exclude Community Defender Organizations, and the most reasonable interpretation is that this was inadvertent and that Congress's intention was to include all federal defender organizations.  As a matter of policy, the Judicial Conference recommends that consultation be made with the district's FDO, regardless of whether it is organized as an FPD or a CDO.  See Recommendation 1, Footnote 94.

Recommendation 2(b) emphasizes that consultation should be made for "*each case involving an offense punishable by death.*"  It is not satisfied where a court selects counsel from a pre-existing list, because recommendations concerning appointment of counsel are best obtained on an individualized, case-by-case basis.  The relative infrequency of federal death penalty appointments, and the typically swift response which any court requesting a recommendation can expect, makes lists or "panels" of "capitally-qualified" attorneys both unnecessary and, in some respects, impractical.[97]  Currently, within a short time after receipt of a request, the federal defender or Administrative Office (through Resource Counsel, as described below and in Recommendation 6) provides the court with the names of attorneys who not only are qualified to serve as counsel but who also have been contacted and indicated their willingness to serve in the particular case.[98]  These individualized recommendations help to ensure that counsel are well-suited to the demands of a particular case and compatible with one another and the defendant.  Whether at trial, on appeal, or in post-conviction, the federal defender and Resource Counsel are likely to have access to information that the court lacks.  That information includes factors relating to the defendant or to counsel who are candidates for appointment.  Consideration of these factors is essential to establishing a defense team that functions effectively.  Case-specific consultation is also required by Judicial Conference policy (see Guide, §§ 620.30(a) and (b), explaining the 18 U.S.C. § 3005 consultation requirement and

---

[97] The distinction between being qualified to serve and willing to do so is significant.  Many defense counsel would not be willing to accept appointment to more than one federal death penalty case at a time.  Furthermore, since accepting a federal death penalty appointment requires a substantial time commitment which may ultimately cause the attorney to become entirely unavailable for any other fee-generating work, appointment in such a case is not lightly undertaken.

[98] In some instances, in fact, it is the federal defender or Resource Counsel who first alerts the court to the need for an appointment.  For example, prior to an indictment issuing, the U.S. Attorney's Office may inform the defender or Resource Counsel of an imminent capital prosecution in which a defendant will need capitally qualified counsel, or the defender or Resource Counsel may become aware of an investigation and the need for counsel through other means.

suggesting that in developing a recommendation, consideration be given to "the facts and circumstances of the case.")

Recommendation 2(c) recognizes the role of Resource Counsel in the consultation process. When this Recommendation was first made, there was a single Federal Death Penalty Resource Counsel Project charged with responsibility for assisting in federal death penalty proceedings at all stages of litigation: trial, appeal, and post-conviction. Those functions have now been distributed among three projects, each of which addresses a different stage of litigation: the Federal Death Penalty Resource Counsel Project (trial), the Federal Capital Appellate Resource Counsel Project, and the Federal Capital Habeas Project.[99] Referred to collectively here as "Resource Counsel" or "the Resource Counsel Projects," these lawyers are death penalty experts. They are knowledgeable about and maintain effective communication with defense counsel nationwide, and their ability to promptly match attorneys with cases is of great value to the judiciary.

The appropriate Resource Counsel Project should be consulted about appointment of counsel in every trial, appellate, and post-conviction case, whether by the court, the federal defender, or both. In addition, prior to recommending counsel for appointment in a federal capital case, federal defenders should advise potential counsel that any attorney appointed is expected to consult regularly with Resource Counsel.[100] Federal defenders and Resource Counsel should also ensure, prior to making a recommendation to a court, that prospective defense counsel are able to dedicate the time required to the new capital case.

---

[99] The National Mitigation Coordinator also provides assistance in federal death penalty cases, as described in Recommendation 6 (Federal Death Penalty Resource Counsel).

[100] See Defender Services Strategic Plan, Goal 2 (Quality of Representation), Strategy 17 (Capital Representations).

Together, Resource Counsel and federal defenders have been instrumental in providing high quality representation to federal defendants from trial through post-conviction proceedings. Recommendation 2(c) recognizes the value of Resource Counsel and urges federal defenders and the Administrative Office to continue to work closely with them.

### 3. Appointment of More Than Two Lawyers

<u>Number of Counsel.</u>  Courts should not appoint more than two lawyers to provide representation to a defendant in a federal death penalty case unless exceptional circumstances and good cause are shown. Appointed counsel may, however, with prior court authorization, use the services of attorneys who work in association with them, provided that the employment of such additional counsel (at a reduced hourly rate) diminishes the total cost of representation or is required to meet time limits.

### Commentary

The norm in federal death penalty cases is the appointment of two counsel per defendant. Courts contemplating the appointment of a third counsel for trial, appeal or post-conviction representation might consider contacting the Administrative Office, the federal defender organization or the appropriate Resource Counsel Project (see Recommendation 6) for information and advice about whether circumstances warrant such appointment.

Notwithstanding this suggested limit on the number of attorneys charged with responsibility for the defense in its entirety, courts are encouraged to permit appointed counsel to employ additional attorneys to perform more limited services where to do so would be cost-effective or otherwise enhance the effective use of resources.  For example, in many federal death penalty cases, the prosecution provides to defense counsel an extensive amount of discovery material which must be reviewed for relevance and organized for use by the defense.  Allowing appointed counsel to obtain legal assistance from an associate at his or her firm or from another appropriately qualified lawyer may prove economical because the work is performed at a lower hourly rate, or this assistance may be a necessity in light of the volume and nature of the work or court deadlines.  See Guide, §§ 620.10.10 and 230.23.10(f).

**4. Appointment of the Federal Defender Organization (FDO)**

a. <u>FDO as Lead Counsel.</u>  Courts should consider appointing the district's FDO as lead counsel in a federal death penalty case only if the following conditions are present:

> i. the FDO has one or more lawyers with experience in the trial and/or appeal of capital cases who are qualified to serve as "learned counsel"; and

> ii. the FDO has sufficient resources so that workload can be adjusted without unduly disrupting the operation of the office, and the lawyer(s) assigned to the death penalty case can devote adequate time to its defense, recognizing that the case may require all of their available time; and

> iii. the FDO has or is likely to obtain sufficient funds to provide for the expert, investigative and other services reasonably believed to be necessary for the defense of the death penalty case.

b. <u>FDO as Second Counsel.</u> Courts should consider appointing the district's FDO as second counsel in a federal death penalty case only if the following conditions are present:

> i. the FDO has sufficient resources so that workload can be adjusted without unduly disrupting the operation of the office, and the lawyer(s) assigned to the death penalty case can devote adequate time to its defense, recognizing that the case may require all of their available time; and

> ii. the FDO has or is likely to obtain sufficient funds to provide for the expert, investigative and other services reasonably believed to be necessary for the defense of the death penalty case.

### Commentary

Effective capital representation requires a team of many players, and the institutional strength of a federal defender organization lends itself to good teamwork.  On the other hand, a defender organization can meet the demands of a capital case only if the assigned personnel possess the requisite qualifications and have available to them the time and other resources the case requires.  Thus, courts are encouraged to appoint an FDO as either lead or second counsel in a capital case, but only after consideration of the factors identified in this Recommendation and consultation with the federal defender.

Recommendations 4(a) and (b) acknowledge that capital cases inevitably and seriously disrupt the normal functioning of an office.  To undertake too much death penalty litigation would seriously threaten the effective performance of a defender organization's responsibility to provide representation to a substantial number of financially eligible criminal defendants in its district each year.  Therefore, a federal defender organization should not be required to accept more than one federal death penalty trial representation at a time unless the head of the organization believes such an arrangement is appropriate.  In addition, the head of an FDO accepting a capital appointment must be prepared to seek additional resources as necessary and to shift responsibilities among staff so that those entrusted with capital cases have sufficient time for that work and other demands upon them are limited.[101]  Regardless of what level of capital experience the federal defender has, all FDOs with federal capital cases should maintain close contact and collaborate with the appropriate Resource Counsel Project.[102]

In addition to serving as counsel, many federal defender organizations play a valuable administrative and leadership role with respect to death penalty representation in their districts, for example, by sponsoring training, facilitating relationships with Resource Counsel, and disseminating information to panel attorneys.  This important work should continue to be supported and encouraged by the Administrative Office.  Also, federal defender organizations should identify and share best practices they have developed in providing capital representation and in supporting the work of other capital lawyers.

---

[101] These warnings about avoiding over-commitment should be understood to extend to panel attorneys accepting appointment in capital cases as well. As noted in the commentary accompanying Recommendation 2 (Consultation with Federal Defender Organizations or the Administrative Office), in making recommendations and appointments, courts, federal defenders and Resource Counsel should ensure that prospective defense counsel are sufficiently free of other obligations to dedicate the time required to the new capital case.

[102] See Defender Services Strategic Plan, Goal 2 (Quality of Representation), Strategy 16 (Capital Representations).

Courts are encouraged to consider appointing federal defender organizations with the requisite expertise to represent federal death-sentenced prisoners in appellate and post-conviction proceedings, as well as at trial.  There are particular benefits to the appointment of well-resourced offices in capital 2255 proceedings, which require digesting and briefing large amounts of legal and factual material and conducting a thorough investigation within a very compressed timetable.  Post-conviction representation makes demands that can be efficiently met by institutional representation.[103]  In addition, it has proved much harder to find qualified, available attorneys for 2255 matters than for capital trial cases.

Over the past several years, a number of federal defender organizations have accepted capital appeals and 2255 representations, most of them having acquired the necessary expertise through their representation of state death-sentenced prisoners pursuant to 28 U.S.C. § 2254.  The Administrative Office should evaluate the need for counsel in capital 2255 proceedings, continue to support federal defender organizations in meeting the need, and consider whether to establish additional capacity for institutional representation in capital cases in the defender program.

---

[103] Report on Death Penalty Representation, prepared by the Committee on Defender Services Subcommittee on Death Penalty Representation, approved by the Judicial Conference (JCUS-SEP 95).

**5.  The Death Penalty Authorization Process**

a. Streamlining the Authorization Process. The Department of Justice should consider adopting a "fast track" review of cases involving death-eligible defendants where there is a high probability that the death penalty will not be sought.

b. Court Monitoring of the Authorization Process. Courts should exercise their supervisory powers to ensure that the death penalty authorization process proceeds expeditiously.

## Commentary

A decision not to seek the death penalty against a defendant has large and immediate cost-saving consequences.  The sooner that decision is made, the larger the savings.  Since the death penalty ultimately is sought against only a small number of the defendants charged with death-eligible offenses, the process for identifying those defendants should be expeditious in order to preserve funding and minimize the unnecessary expenditure of resources.  The current process, however, is not expeditious; rather, even in cases in which authorization for capital prosecution is viewed as unlikely by both the prosecution and the defense, the process is lengthy and seemingly inefficient, involving multiple levels of review, and results in unnecessary costs being incurred.  The process also limits the availability of lawyers qualified to serve as "learned counsel" for other capital appointments.  Recommendations 5(a) and (b) call upon the Department of Justice and the judiciary to maximize cost-savings by increasing the efficiency of the authorization process.  The Department of Justice can do this by evaluating and streamlining its procedures.  Judges can do this by establishing reasonable deadlines and maintaining oversight during the pre-authorization stage of the litigation.[104]  Courts should ensure, however, that whatever decision-making timetables are imposed are sufficient to allow for meaningful pre-authorization advocacy by counsel for the defendant.  Where authorization to seek the death

---

[104] Section 670 of the Guide sets forth Judicial Conference policy on "scheduling of federal death penalty case authorization to control costs."

106

penalty is significantly likely, the prosecution and defense should be given every opportunity to explore the reasons for not authorizing or for negotiating an early disposition of the case.

In addition to acting in their individual capacities to pursue efficiency goals, the Department of Justice and the judiciary should seek opportunities to communicate with one another about the impact of federal death penalty policies on the efficient administration of justice.  Given the enormous resource demands and cost implications, it would be wise for the judiciary, the Department of Justice, and the Administrative Office to communicate and work together at the highest levels.

**6. Federal Death Penalty Resource Counsel**

a.  <u>Information from Resource Counsel.</u>  In all federal death penalty cases, defense counsel should obtain the services of Federal Death Penalty Resource Counsel in order to obtain the benefit of model pleadings and other information that will save time, conserve resources and enhance representation.  The judiciary should allocate resources sufficient to permit the full value of these services to be provided in every case.

b.  <u>Technology and Information Sharing.</u>  The Administrative Office should explore the use of computer-based technology to facilitate the efficient and cost-effective sharing of information between Resource Counsel and defense counsel in federal death penalty cases.

<strong>Commentary</strong>

When Recommendation 6 was issued in 1998, there was only one Federal Death Penalty Resource Counsel Project, and it offered support for all cases, whether at trial, on appeal, or in post-conviction.  As Recommendation 2 (Consultation with Federal Defender Organizations or the Administrative Office) describes, there is now a separate Resource Counsel Project dedicated to each stage of litigation.  The trial-level Federal Death Penalty Resource Counsel Project has been joined by the Federal Capital Appellate Resource Counsel Project and the Federal Capital Habeas Project.  There is also a National Mitigation Coordinator who collaborates with Resource Counsel and supports work in all death penalty matters that arise in the federal courts.[105] Recommendation 6 and other references to Resource Counsel in these Recommendations and Commentary apply to each of the Resource Counsel Projects.

The Resource Counsel Projects serve CJA counsel, federal defenders, and the courts by recommending counsel for every case at trial, on appeal, and in post-conviction, and by providing numerous other services, including case consultation, training, and assistance with case budgeting.  Trial-level Resource Counsel are assigned to each defense team at the outset of every death-eligible case, and continue to support the efforts of appointed counsel through the

---

[105] The National Mitigation Coordinator also works with the Habeas Assistance and Training Counsel Project (HAT) in connection with capital post-conviction representation in the federal courts pursuant to 28 U.S.C. §2254.

conclusion of trial. Appellate and post-conviction Resource Counsel assume responsibility at the appropriate procedural junctures, and offer consultation and assistance throughout those stages of the case. The National Mitigation Coordinator provides information, referrals, and case-specific consultation, and is extensively involved in the planning and delivery of training. The four Projects work together on issues of common concern, and support one another in conducting training and disseminating information to counsel. They also provide consultation and advice to the Administrative Office and to courts.

Recommendation 6(a) urges both the judiciary and counsel to maximize the benefits of Resource Counsel's services. Together, the Resource Counsel Projects are essential to the delivery of high quality, cost-effective representation. Their work should continue to be facilitated by the Administrative Office, and counsel in all federal death penalty cases are encouraged to maintain regular contact with Resource Counsel. See Defender Services Strategic Plan, Goal 2 (Quality of Counsel), Strategy 16 (Capital Representations). In addition, federal defender organizations should advise potential appointed counsel that they are expected to consult with Resource Counsel if they accept a capital representation. *Id*., Strategy 17 (Capital Representations). The Department of Justice provides centralized support to prosecutors nationwide at all stages of federal death penalty proceedings. Although the Resource Counsel Projects cannot match that capacity, the judiciary should allocate resources sufficient to permit the full value of their services to be provided in every case.

Recommendation 6(b) recognizes the critical role of technology in sharing information. The website maintained by Resource Counsel (www.capdefnet.org) recently has been upgraded. It is a valuable resource, enhancing quality of representation in a cost-efficient manner, and it is relied upon extensively by appointed counsel nationwide. The Administrative Office should

support the ongoing development of this cost-effective means of assisting appointed counsel in federal death penalty cases. The database of case related information maintained by Resource Counsel is also an essential resource and, similarly, should receive ongoing support as indicated in the Commentary to Recommendation 11 (Availability of Cost Data).

## 7.  Experts

a. <u>Salaried Positions for Penalty Phase Investigators.</u> The federal defender program should consider establishing salaried positions within FDOs for persons trained to gather and analyze information relevant to the penalty phase of a capital case. FDOs should explore the possibility that, in addition to providing services in death penalty cases to which their FDO is appointed, it might be feasible for these investigators to render assistance to panel attorneys and to other FDOs.

b. <u>Negotiating Reduced Rates.</u> Counsel should seek to contain costs by negotiating reduced hourly rates and/or total fees with experts and other service providers.

c. <u>Directory of Experts.</u> A directory of experts willing to provide the assistance most frequently needed in federal death penalty cases, and their hourly rates of billing, should be developed and made available to counsel.

### Commentary

Penalty phase investigators or "mitigation specialists" are individuals trained and experienced in the development and presentation of evidence for the penalty phase of a capital case.  As indicated in the 2003 ABA Guidelines,[106] this function is an essential component of effective capital defense representation; however, mitigation specialists are in short supply and in many cases they are not available locally.  Recommendation 7(a) suggests ameliorating this problem by employing and training persons for this work in federal defender organizations.  In 2004 the Defender Services Committee authorized a position for a National Mitigation Coordinator in a federal defender office to assist in expanding the availability and quality of mitigation work in death penalty cases in the federal courts.  In addition to leveraging his own significant knowledge and skills through case consultations, the National Mitigation Coordinator has enhanced defense representation and contributed to cost containment efforts by recruiting more mitigation specialists to work on federal capital cases, matching mitigation specialists with

---

[106] American Bar Association, *Guidelines for the Appointment and Performance of Counsel in Death Penalty Cases*, 31 Hofstra L. Rev. 913 (2003).  See also Supplementary Guidelines for the Mitigation Function of Defense Teams in Death Penalty Cases, 36 Hofstra L. Rev. 677 (2008) for an elaboration on the mitigation function, including the role of mitigation specialists.

counsel, and providing expanded training opportunities both for defender staff and for private mitigation specialists who are authorized to work on federal cases.  This training enhances the skills and availability of such professionals.

In addition, because of the cost containment potential, Recommendation 7(a) suggests that salaried federal defender employees might work not only on cases in which their office is appointed, but also, in appropriate instances, on other cases. Procedures that will facilitate lending such non-attorney staff members between defender offices have been developed by the Administrative Office.

Recommendation 7(b) encourages counsel to negotiate a reduced hourly rate for expert services whenever possible.  Private experts must be employed in death penalty cases, but the cost of their services can and should be contained.  When asked to provide services for the defense of a CJA-eligible criminal defendant, many experts are willing to accept fees lower than their customary hourly rates for private clients.  The types of experts employed in capital cases can be highly specialized, however, and sometimes a particular expert is required and it is not possible to negotiate a reduced rate.  It should be noted that the government, too, employs private experts, often at high hourly rates, a factor the courts could consider in assessing the reasonableness of proposed defense expenditures.

With respect to Recommendation 7(c), it should be noted that while maintaining formal lists of experts has proved to be problematic, substantial progress has been made in collecting and sharing appropriate information of this nature with defense counsel and courts, particularly since 2004 when the National Mitigation Coordinator position was established.  Resource Counsel, federal defenders, and the National Mitigation Coordinator have knowledge of a wide range of expert service providers throughout the country and they are available to assist in

112

matching cases with experts and evaluating costs during the case-budgeting process and at any other stage of litigation.

## 8. Training

<u>Federal Death Penalty Training Programs.</u> The Administrative Office should continue to offer and expand training programs designed specifically for defense counsel in federal death penalty cases.

### Commentary

Specialized death penalty training programs are relied upon by even the most highly experienced counsel to update and refine their skills and knowledge. Death penalty law is not only complex but also is rapidly evolving, and counsel are obligated to keep pace with developments throughout the federal courts. Continuing education in the latest forensic science developments is another responsibility of capital lawyers. Resource Counsel, the National Mitigation Coordinator, and federal defenders, with the support of the Administrative Office, have substantially increased training opportunities over the past several years. Counsel appointed in federal capital cases may attend a variety of specialized trial, appellate, and post-conviction programs organized or supported by each of the Resource Counsel Projects. Defender offices sponsor local and regional training as well. Programs focusing on forensic science, mitigation investigation, and victim contact offer further opportunities for skill-building and information sharing. Financial assistance to facilitate attendance at training programs and other logistical support are made available through the Training Branch of the Administrative Office's Office of Defender Services. These opportunities for counsel to benefit from the research and experience of others and share information and ideas are important and cost-effective. Their quality and utility has been universally praised by defense counsel. The Administrative Office should ensure that training opportunities continue to expand to meet the needs of capital defense teams.

**9. Case Budgeting**

a. <u>Consultation with Prosecution.</u> Upon learning that a defendant is charged with an offense punishable by death, courts should promptly consult with the prosecution to determine the likelihood that the death penalty will be sought in the case and to find out when that decision will be made.

b. <u>Prior to Death Penalty Authorization.</u> Ordinarily, the court should require defense counsel to submit a litigation budget encompassing all services (counsel, expert, investigative and other) likely to be required through the time that the Department of Justice (DOJ) determines whether or not to authorize the death penalty.

c. <u>After Death Penalty Authorization.</u> As soon as practicable after the death penalty has been authorized by DOJ, defense counsel should be required to submit a further budget for services likely to be needed through the trial of the guilt and penalty phases of the case. In its discretion, the court may determine that defense counsel should prepare budgets for shorter intervals of time.

d. <u>Advice from Administrative Office and Resource Counsel.</u> In preparing and reviewing case budgets, defense counsel and the courts should seek advice from the Administrative Office and Federal Death Penalty Resource Counsel, as may be appropriate.

e. <u>Confidentiality of Case Budgets.</u> Case budgets should be submitted <u>ex</u> <u>parte</u> and should be filed and maintained under seal.

f. <u>Modification of Approved Budget.</u> An approved budget should guide counsel's use of time and resources by indicating the services for which compensation is authorized. Case budgets should be re-evaluated when justified by changed or unexpected circumstances, and should be modified by the court where good cause is shown.

g. <u>Payment of Interim Vouchers.</u> Courts should require counsel to submit vouchers on a monthly basis, and should promptly review, certify and process those vouchers for payment.

h. <u>Budgets In Excess of $250,000.</u> If the total amount proposed by defense counsel to be budgeted for a case exceeds $250,000, the court should, prior to approval, submit such budget for review and recommendation to the Administrative Office.

i. <u>Death Penalty Not Authorized.</u> As soon as practicable after DOJ declines to authorize the death penalty, the court should review the number of appointed counsel and the hourly rate of compensation needed for the duration of the proceeding pursuant to the Guide, § 630.30.

j. <u>Judicial Conference Guidelines.</u> The Judicial Conference should promulgate guidelines on case budgeting for use by the courts and counsel.

k. <u>Judicial Training for Death Penalty Cases.</u> The Federal Judicial Center should work in cooperation with the Administrative Office to provide training for judges in the management of federal death penalty cases and, in particular, in the review of case budgets.

## Commentary

When Recommendation 9 was issued in 1998, case budgeting was new to the courts.  It is now well established, representing the norm in federal death penalty cases.  Judicial Conference policy with respect to capital case budgeting is set forth in Section 640 of the Guide, and district and appellate courts in various parts of the country are experimenting with different approaches to case budgeting.  Reports on their methods and progress will be forthcoming as those initiatives are evaluated.  In the meantime, certain things are clear.  Drafting a case budget requires the lawyer to incorporate cost considerations into litigation planning and encourages the use of less expensive means to achieve the desired end.  Submission and review of a budget assists the court in monitoring the overall cost of representation in the case, and determining the reasonableness of costs.  Both judges and counsel consistently describe the budgeting process as valuable.  They also emphasize the importance of a focus on the "big picture" rather than "nickels and dimes," and of an understanding that case budgeting is about ensuring planned, thoughtful, and responsible spending as opposed to simply cutting costs.  Resource Counsel are available to assist courts and counsel with drafting and evaluating case budgets.

Because of the unpredictability of pretrial litigation, it is impractical to require counsel to budget for an entire case from start to finish.  At a minimum, the budgeting process should occur in two stages, as suggested in Recommendations 9(b) and (c).  The first stage begins when the lawyer is sufficiently familiar with the case to be able to present a budget reasonably related to the anticipated factual and legal issues in the case and continues until the Department of Justice makes its decision as to whether it will seek the death penalty.  Prior to this first-stage budget, in

some districts the court orders a "starter budget" approving funds for an initial allotment of counsel's time as well as service providers such as an investigator, paralegal, mitigation specialist, and associate counsel. This allows counsel to begin work without delay, and a formal first-stage budget is submitted after counsel has had an opportunity to assess the needs of the case more thoroughly. As indicated in the Commentary to Recommendation 1(b) (Qualifications of Counsel), courts should not defer appointing "learned counsel" and authorizing an appropriate investigation at this stage. As recognized in Section 640.40 of the Guide, it will be necessary for counsel to begin work immediately, so courts should be prepared to authorize funds for this purpose, even if a case budget has not yet been submitted or approved.

If a death penalty notice is filed, a further budget should be prepared. The court may require a single budget from authorization through trial, though it may be more practical to develop a series of budgets covering shorter increments of time. If the prosecution will not seek the death penalty, Recommendation 9(i) calls for the court to review the case in accordance with the Guide, § 630.30, to determine whether the number or compensation of counsel should be reduced.

Consistent with the Criminal Justice Act, 18 U.S.C. § 3006A, Recommendation 9(e) calls for case budgets to be submitted ex parte and maintained under seal. Guide, § 640.20(b). A case budget requires defense counsel to develop an overall litigation plan for the case. Consequently, it contains privileged information and is an extremely sensitive document.

Recommendation 9(g) encourages prompt and efficient consideration and payment of interim vouchers in capital cases. Delay in approving payments to experts or counsel may prevent the defense from moving forward to develop its case, negatively affect the quality of representation, and/or delay expeditious and cost-effective disposition of the matter.

117

Case budgeting in post-conviction cases should proceed in much the same way as trial case budgeting.  Costs can be significant because counsel is obligated to thoroughly and independently investigate both phases of the trial to determine whether there are any potential constitutional infirmities.  Guideline 10.7 (Investigation), American Bar Association, *Guidelines for the Appointment and Performance of Counsel in Death Penalty Cases*, 31 Hofstra L. Rev. 913, 1015 (2003).  A capital post-conviction budget should include the costs of counsel, investigators, and experts.  The budgeting process should be completed quickly in light of the one-year statute of limitations for filing a motion pursuant to 28 U.S.C. § 2255.

## 10.  Case Management

a. <u>Non-Lawyer Staff.</u> Where it will be cost-effective, courts should consider authorizing payment for services to assist counsel in organizing and analyzing documents and other case materials.

b. <u>Multi-defendant Cases.</u>

   i. <u>Early Decision Regarding Severance.</u> Courts should consider making an early decision on severance of non-capital from capital codefendants.

   ii. <u>Regularly Scheduled Status Hearings.</u> Status hearings should be held frequently, and a schedule for such hearings should be agreed upon in advance by all parties and the court.

   iii. "<u>Coordinating Counsel.</u>" In a multi-defendant case (in particular a multi-defendant case in which more than one individual is eligible for the death penalty), and with the consent of co-counsel, courts should consider designating counsel for one defendant as "coordinating counsel."

   iv. <u>Shared Resources.</u> Counsel for codefendants should be encouraged to share resources to the extent that doing so does not impinge on confidentiality protections or pose an unnecessary risk of creating a conflict of interest.

   v. <u>Voucher Review.</u> In large multi-defendant cases, after approving a case budget, the court should consider assigning a magistrate judge to review individual vouchers. The court should meet with defense counsel at regular intervals to review spending in light of the case budget and to identify and discuss future needs.

### Commentary

Recommendation 10(a) recognizes that the large volume of discovery materials and pleadings associated with a federal death penalty case may make it cost-effective for courts to authorize (and appointed counsel to employ) the services of law clerks, paralegals, secretaries, or others to perform organizational work which would otherwise have to be performed by counsel at a higher hourly rate.  (See also Commentary accompanying Recommendation 3 (Appointment of More Than Two Lawyers), endorsing the practice of authorizing counsel to obtain the services of additional attorneys under appropriate circumstances.)  Judicial Conference policy provides that, in general, appointed counsel may not be reimbursed for expenses deemed part of their office overhead (Guide, § 230.66.10); however, unusual expenses of this nature may be

compensated (Guide, § 320.70.30).  The Guidelines suggest that in determining whether an expense is unusual or extraordinary, "consideration should be given to whether the circumstances from which the need arose would normally result in an additional charge to a fee paying client over and above that charged for overhead expenses." (Guide, § 320.70.30).

Recommendations 10(b)(i) – (iv) address some of the particular management burdens associated with multi-defendant federal death penalty cases.  Special efforts are required to ensure the orderly administration of justice in these matters, which tend to become costly and cumbersome for courts and counsel.  Courts should also consider encouraging prosecutors to provide discovery in a way that will make information much more accessible and therefore less costly for the defense to assimilate.  For example, the way in which the government organizes the material it turns over to defense counsel and the way it formats it can have significant cost consequences.  Where there is extensive wiretap evidence, the government might be asked to provide defense counsel not just with recordings, but with any transcripts of those recordings.  Such time and cost savings possibilities should be urged wherever possible.  The court might initiate discussion about how best to contain discovery costs by soliciting a list of ideas from the parties.

Recommendation 10(b)(i) suggests that courts make early decisions concerning severance of non-capital from capital codefendants.  In general, capital cases remain pending longer than non-capital cases and involve far greater amounts of pre-trial litigation.  Separating the cases of non-capital codefendants, where appropriate, may lead to swifter and less costly dispositions in those cases.  The earlier such a decision is implemented, the greater will be the cost savings.

Recommendation 10(b)(ii) suggests that courts schedule frequent status hearings so that discovery and other matters may proceed efficiently and problems may be noted early and swiftly resolved.  If the schedule for such status hearings (on a monthly or other basis) is agreed upon in advance, all parties can plan accordingly and valuable time will not be consumed with counsel and judges trying to find a mutually convenient time for their next meeting.

Recommendation 10(b) (iii) suggests that, if all counsel agree, courts consider designating the attorneys for one defendant as "coordinating counsel."  Coordinating counsel might be responsible for arranging for the efficient filing and service of motions and responses among the codefendants, scheduling co-counsel meetings and court dates, facilitating discovery, or completing any other tasks deemed appropriate by counsel and the court.  In multi-defendant cases where the federal defender organization represents a defendant eligible for the death penalty, courts should (taking into account the views of the federal defender) consider designating the FDO as coordinating counsel because of its institutional capabilities.  In the event that a panel attorney is designated as coordinating counsel, the additional time and resources demanded by this role should be compensated.

121

## 11.  Availability of Cost Data

The Administrative Office should improve its ability to collect and analyze information about case budgets and the cost of capital cases.

### Commentary

The cost data for this report were assembled by painstaking manual collection, necessitated by the limitations of the only available information source, the CJA payment system.[107]  Given the significance of capital case costs to the federal defender program, the Administrative Office has given priority to developing an electronic CJA voucher processing system that will provide accurate and reliable case data that are accessible for analysis. Enhancing the ability of the Defender Services program to analyze and make use of cost and other quantitative data relating to federal death penalty cases would assist in making resource allocation decisions and in establishing policy.  In addition, the judiciary should give further consideration to geographic disparities in defense resources and the relationship between low cost defense representation and sentencing outcome in capital cases.  The Administrative Office should work with the Department of Justice to obtain useful data about prosecution costs in federal capital cases.

This report could not have been completed without extensive assistance from the federal capital trial, appellate, and post-conviction Resource Counsel Projects, including access to information from their databases.   These data are vitally important to the Defender Services program and their collection and analysis should remain a priority and be supported by the Administrative Office.

---

[107] The CJA Panel Attorney Payment System is a judiciary-wide application in which all attorney and expert service provider vouchers for representation-related work performed are recorded, processed and paid.