UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

UNITED STATES OF AMERICA

v.   CASE NO. 2S:19-CR-150-SPC-NPM

ALEX JARED ZWIEFELHOFER

**GOVERNMENT'S FIRST MOTION IN LIMINE TO ALLOW
EVIDENCE UNDER FED. R. EVID. 404(b)**

The United States moves in limine to introduce evidence of other crimes, wrongs, or acts committed by the defendant, Alex Jared Zwiefelhofer, pursuant to Federal Rules of Evidence Rule 404(b). The United States has previously notified the defendant of the intent to introduce such evidence, Doc. 122, and the defendant has provided a response to the notice, Doc. 125.

I.   **Background**

a.   *The Superseding Indictment*

Alex Jared Zwiefelhofer is charged in a Superseding Indictment with six separate offenses, including, Conspiracy to Interfere with Commerce by Robbery (Count One); Interference with Commerce by Robbery (Count Two); Conspiracy to Use a Firearm During and in Relation to a Crime of Violence (Count Three); Use of a Firearm During and in Relation to a Crime of Violence (Count Four); Conspiracy to Kill, Kidnap, or Maim Persons in a Foreign Country (Count Five); and Violation of the Neutrality Act (Count Six). Doc. 32. The alleged offenses took place beginning on an unknown date, but no later than in or about February 2018, and

continuing through at least in or about August 2018 (Counts One and Three); on or about April 9, 2018 (Counts Two and Four); and beginning on an unknown date, but no later than in or about February 2018, and continuing through at least in or about October 2018 (Counts Five and Six).  *Id.*  The defendant is alleged to have committed the alleged offenses with a co-defendant, Craig Austin Lang.  *Id.*

      b.    ***Factual Overview of the Superseding Indictment***

On Monday, April 9, 2018, at 10:55 p.m., the Lee County Sheriff's Office (LCSO) received multiple 911 calls for service in reference to reports of rapid gunfire being heard in the area of Cypress Park Circle, Estero, Florida. LCSO deputies responded to the area in which the shots were heard but did not find anything significant. LCSO deputies searched the immediate area, but ultimately cleared the call for service based upon the fact that they were unable to locate a crime scene.

On Tuesday, April 10, 2018, at 7:14 a.m., the LCSO received a 911 call in reference to a deceased person found at 9351 Corkscrew Road, Estero, Florida, a commercial plaza adjacent to the area in which LCSO deputies responded eight hours earlier for the shots-fired calls for service.  Upon arrival at the scene, deputies found a red GMC truck, with multiple gunshot defects, parked in the middle of the plaza. During a cursory search of the immediate area, deputies located an obviously deceased male, suffering from multiple gunshot wounds, lying supine on the ground next to the front passenger side tire of the truck. The male decedent was later positively identified as S.L., Jr.  Deputies also found a female decedent, likewise, suffering from multiple gunshot wounds, sitting in the front passenger seat of the

truck. The female decedent was later positively identified as D.L.

Upon arrival, homicide detectives conducted a walk-through of the scene, noting that on the ground adjacent to S.L., Jr. was a brown leather wallet, a Florida Driver's License belonging to S.L., Jr., and a bill of sale for a firearms transaction. Based upon the trajectory and precision of the shot groupings at the scene, it appeared that the shooting was perpetrated by at least two suspects; one suspect fired from the rear into the passenger side of the truck where D.L. was seated, and the other suspect fired from the front passenger side of the truck where S.L., Jr. was located.

The LCSO's Forensics Unit also responded to assist with documenting the scene, and processing and collecting the evidence. During processing of the scene, Crime Scene Technicians (CSTs) collected sixty-three spent shell casings to include .9mm and LC 17 rifle casings.

During the preliminary investigation, a cellular telephone belonging to S.L., Jr. was located at the crime scene. After a search warrant was obtained for the electronic contents of the cellular telephone, the contents were downloaded by a LCSO Digital Forensics Specialist. Detectives reviewed the download of the cellular telephone and determined that S.L., Jr. and D.L. left Brooksville, Florida just after 7:00 p.m. on April 9, 2018, and traveled down Interstate 75 to the location of the murders. A review of the download indicated that S.L., Jr. and D.L. had traveled to Estero for the purpose of meeting to purchase firearms listed for sale on an Internet website called ARMSLIST. Specifically, a text message thread showing

3

communication between S.L. Jr.'s cellular telephone and a cellular telephone number believed to be used by the Zwiefelhofer and Lang was initiated on April 9, 2018, at approximately 12:10 a.m., in response to an ARMLIST posting listing several firearms for sale.

Further investigation revealed that S.L., Jr. had intended to purchase these firearms and re-sell them for a profit. On the day of the homicides, S.L., Jr. withdrew $3,000.00 in U.S. currency from his bank account and had brought the currency with him to Estero to purchase the firearms advertised for sale on the above-referenced ARMSLIST posting, which included the following: (One) Gen 4 Glock 17, (One) Gen 3 Glock 17, (One) Gen 3 Glock 17 with Swenson side treaded (One) barrel, (One) Gen 4 Glock 19, (One) G3HK91 Clone – Federal Arms, (One) Uzi Pistol .9mm – Group Industries, (Four) AR15 5.56 11in Pistol Uppers, (Four) AR15 Lowers – Complete Wilson Combat, and (One) Star Pistol .9mm.

Based on Detectives' review of S.L.'s cellular telephone communications, it appeared as though the suspect(s) traveled to Estero from out of the area, and changed the location of the meeting with S.L., Jr., and D.L. several times prior to luring S.L., Jr., and D.L. to the dark and secluded parking lot at 9351 Corkscrew Road.

The ARMSLIST records revealed that the posting, labeled Post #8204183, was created on April 7, 2018, in Miami-Dade, Florida, and was associated with an email address: jeremygb8441@gmail.com.

Detectives then served a search warrant on Google for information

4

related to the Gmail email address, to include obtaining Internet Protocol (IP) addresses associated with the Gmail account, along with any information that may lead to a residence or identify a suspect. The results showed an IP address associated with the Gmail account in the middle of the bay area of Miami, Florida, the same area that the ARMSLIST posting was created.

Detectives determined that the telephone service provider (TSP) for cellular telephone number (786) 747-9856, which was used by the individual(s) facilitating the firearms transaction with S.L., Jr., was Tracfone Wireless. Additional investigation identified the defendant as being associated with the telephone that was utilizing telephone number (786) 747-9856.

Upon further investigation, it was determined that the defendant was communicating frequently, as well as making travel arrangements to Miami, Florida, with Craig Lang.  Through further research, detectives discovered that the defendant and Lang began their travels to Florida just prior to the homicides and ultimately traveled to Miami, Florida on April 5, 2018 (just four days prior to the armed robbery and murders).

Beginning on April 5, 2018, through the afternoon of April 9, 2018, prior to the (786) 747-9856 phone pings showing the travel from Miami to Estero, Florida, Lang's cellular telephone ((480) 678-7349) and the defendant's cellular telephone ((715) 404-0337), were frequently together in the vicinity of the La Quinta Inn, 7401 NW 36th Street, Miami, Florida.  Records received from the La Quinta Inn showed that Lang checked into the hotel on April 5, 2018.

Records showed that on April 7, 2018, Lang's cellular telephone number ((480) 678-7349), the defendant's personal cellular telephone number ((715) 404-0337) and the suspect number (786) 747-9856 (using the same telephone as the defendant's personal cellular telephone number), all pinged in the same location, placing the two telephones (the telephone using (480) 678-7349 and the telephone using (715) 404-0337 and later (786) 747-7349), at the La Quinta Inn.

On April 9, 2018, both Lang's cellular telephone and (786) 747-9856 continued to ping together in the Miami area until later that evening. At approximately 7:00 p.m., (786) 747-9856 began to travel; Lang's cellular telephone was presumably turned off at this time as there was no call, text, or ping activity. At approximately 7:48 p.m., (786) 747-9856 began to ping as it traveled out of Miami and headed west towards Southwest Florida. A text message from (786) 747-9856 to S.L., Jr.'s cellular telephone at 8:48 p.m. read, "We should arrive 10:45p-11:00p". The (786) 747-9856 number continued to ping along Alligator Alley (the section of Interstate 75 between Broward County and Collier County) into Naples, arriving near the Corkscrew Road exit for Estero just before 10:00 p.m. At 10:46 p.m., both (786) 747-9856 and S.L., Jr.'s cellular telephone pinged inside the area of the robbery scene.

On May 23, 2019, the defendant was arrested by ATF agents in Wisconsin pursuant to an indictment issued in the Western District of Wisconsin for knowingly making a false statement on an ATF Form 4473.

After his arrest, the defendant provided a post-*Miranda* interview to law enforcement. In particular, the defendant admitted to traveling to Florida from

6

Minnesota via Greyhound bus in April of 2018. The defendant also stated that he and Lang met in Florida and the two traveled aboard a Greyhound bus bound for Miami, Florida. Lang brought firearms, firearm magazines and ammunition with him from Arizona. The defendant advised that he and Lang had planned to take a boat from Miami to Venezuela to fight the Venezuelan government.

The defendant further advised that he and Lang stayed at the La Quinta Inn in Miami, and that Lang had rented a room for them at the La Quinta Inn. The defendant indicated that the two ran out of money after a short period of time and could no longer afford the room at the La Quinta Inn. The defendant stated that he and Lang had to leave the motel and stay overnight in a public dog park in Miami. The defendant advised that the park's sprinkler system came on while the two were in the park causing his cellular telephone to become wet. The defendant stated that his cellular telephone was damaged by the water, so he went to a Walmart in the Miami area and obtained another cellular telephone. The defendant could not recall the telephone number of the cellular telephone he claimed he purchased in Miami.

    *c.*    ***Factual Overview of the Proposed 404(b) Evidence***

The defendant entered on duty with the United States Army on April 21, 2015, and went Absent Without Leave (AWOL) from the Army on September 27, 2016.

In June 2017, the defendant came to the attention of authorities at the United States Embassy in Nairobi, Kenya, as he, Craig Lang and William Brandon Wright-Martinovich were detained by Kenyan authorities trying to enter the South Sudan.

7

All were eventually deported to the United States.

On August 1, 2017, the defendant arrived at the Charlotte-Douglas International Airport in Charlotte, North Carolina, where he was interviewed by an FBI SA and a CBP officer. In summary and as memorialized in a written report, during this interview the defendant claimed that he joined the Army in early 2015 to go to war. In September of 2016, the defendant decided to go AWOL. The defendant traveled to France to join the French Foreign Legion (FFL) because he was told they traveled everywhere and fought. However, upon learning that he needed to have more than eight years of service prior to being deployed, he left the FFL. The defendant then traveled to the Ukraine with the purpose of going to war. In Ukraine, the defendant met Lang.

According to the defendant, he and Lang fought with the Right Sector, a volunteer battalion that fought Russian separatists, for ten months. In May 2017, the defendant claimed that the Ukraine was engaged in peace talk so he and Lang decided to leave. Both traveled to Kenya because they wanted to fight against Al Shaabab. A third individual, William Brandon Wright-Martinovich, also joined them and paid for the flight to Nairobi. Upon arrival in Kenya, the three attempted to meet with local contacts with little success. In particular, the defendant had three pairs of night vision goggles taken from him. Eventually, they went to the border with South Sudan where they hoped to be volunteers for the Sudanese army. However, the three were detained by authorities and eventually deported to the United States.

On March 19, 2019, the defendant was interviewed by the United States Secret Service related to an online posting that was under investigation. During the recorded interview, the defendant provided factual background about himself, including his decisions to go to Ukraine and South Sudan because he felt like going to war. The defendant claimed he was kind of working as a sniper in Ukraine. He further advised that he went with Lang and Martinovich to South Sudan to join the war.

On May 23, 2019, following his arrest in Wisconsin, the defendant advised that he felt that his career in the Army was over, so he went to France to join the French Foreign Legion. The defendant indicated that he wanted to be involved in military action and thereafter went to Ukraine to fight separatists and Russians. The defendant claimed that there came a point in Ukraine when three weeks had passed without being shot at that they (Lang, Martinovich and the defendant) decided to leave. The defendant further claimed that they went to Africa because there were civil wars everywhere. They then flew to Kenya where guns were obtained before heading towards South Sudan. In South Sudan, he was pistol whipped by the South Sudanese before being turned over to the Kenyans. The defendant advised that he later communicated with Lang and decided to go to Miami to go to Venezuela to shoot communists and fight the Venezuelan government.

II.     **Memorandum of Law**

**Admissibility of Rule 404(b) Evidence**

Rule 404(b) provides "[e]vidence of other crimes, wrongs, or acts" may be admitted "as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident" with respect to the charged offense. Fed.R.Evid. 404(b).  Rule 404(b) is a rule of "inclusion which allows [extrinsic] evidence unless it tends to prove only criminal propensity." *United States v. Stephens*, 365 F.3d 967m 975 (11th Cir. 2004)(internal quotation marks omitted)(quoting *United States v. Cohen*, 888 F.2d 770, 776 (11th Cir. 1989)); *see United States v. Jernigan*, 341 F.3d 1273, 1280 (11th Cir. 2003)("Rule 404(b) is a rule of inclusion, and . . . accordingly 404(b) evidence, like other relevant evidence, should not be lightly excluded when it is central to the prosecution's case.").  It [is] not necessary for the government to await defendant's denial of intent or knowledge before introducing this evidence; instead, the government may anticipate the defense and introduce it in it's case-in-chief." *United States v. Lewis,* 759 F.2d 1316, 1349 n.14 (8th Cir. 1985); *see also United States v. Jardan*, 552 F.2d 216, 219 (8th Cir. 1977).

In determining whether evidence should be admitted pursuant to Rule 404(b), the Eleventh Circuit applies "the following three-part test: (1) the evidence must be relevant to an issue other than the defendant's character; (2) the evidence's probative value must not be substantially outweighed by its prejudicial effect; and (3) the government must offer sufficient proof so the jury could find that the defendant

committed that act." *United States v. Lanier*, 778 F.App'x 672, 674 (11th Cir. 2019). *See also*, *United States v. Cancelliere,* 69 F.3d 1116, 1124 (11th Cir. 1995).

### a. *The 404(b) Evidence is Relevant to the Charged Offenses.*

Other extrinsic acts are relevant to intent when "that act required the same intent as the offense charged." *United States v. Watson,* 611 F.App'x 647, 654 (11th Cir. 2015)(internal quotations omitted). If the extrinsic act evidence is offered to prove the intent of the defendant in committing the crimes charged, that evidence is relevant to something other than the bad character of the defendant if the extrinsic bad act or misdeed requires the same criminal intent as the crime charged and the jury could find that the defendant committed the extrinsic conduct. *United States v. Jackson*, 761 F.2d 1541, 1543 (11th Cir. 1985).

The defendant has been charged with a violation of 18 U.S.C. § 956(a)(1), Conspiracy to Kill, Kidnap, or Maim Persons in a Foreign Country. Doc. 32 (Count Five). The defendant has also been charged with a violation of 18 U.S.C. § 960, Violation of the Neutrality Act. 18 U.S.C. § 956 requires, in relevant part, proof of the defendant having agreed with at least one person to commit murder and the defendant having willfully joined the agreement with the intent to further its purpose. *United States v. Wharton*, 320 F.3d 526, 538 (5th Cir. 2003).

18 U.S.C. § 960 requires proof of knowledge by the defendant of the character of a military expedition and enterprise against the territory or dominion of any foreign state, district, or people with whom the United States is at peace that is organized in the United States. Intent in the context of a violation of what is now

11

known as the Neutrality Act (18 U.S.C. § 960) can be established by proving "that [the defendants] have combined and organized here to go . . . and make war on a foreign government, and to have provided themselves with the means of doing so." *United States v. Tauscher,* 233 F.597, 599 (S.D.N.Y. 1916).

The proposed 404(b) evidence will prove that the defendant was motivated by a desire to engage in combat in areas of the world known to be in armed conflict. The defendant abandoned the U.S. Army in 2016 when his desire to fight could not be fulfilled. In search of conflict, he traveled abroad and arrived in Ukraine in October 2016, where he met his codefendant, Lang, and fought for months. When peace talks started in May 2017, the defendant decided to leave with Lang and William Wright-Martinovich. In an interview in June 2019, the defendant stated that "we Googled the worst warzone in Africa and we got South Sudan. And, basically, just spent, like, three weeks, like pouring over it." After the planning and preparation, the defendant then traveled to Kenya with Lang and Martinovich, with the intent to engage in combat in South Sudan, but all were captured in June 2017.

The defendant sought and acted on the opportunities presented to him to participate in armed conflicts in foreign countries. The defendant knew when he traveled to Ukraine and Kenya that his stated purpose was to engage in combat; there was no mistake in the defendant's actions; there was a plan of action to go where ongoing armed conflicts allowed them to fight and he did it in tandem with his alleged coconspirator, Craig Austin Lang.

In this case, the United States will introduce evidence that the defendant and Lang discussed and planned their military expedition and enterprise to Venezuela to "shoot communists," as admitted by the defendant in a recorded interview in June 2019. Much like the defendant's plan, preparation and research to engage in combat as reflected by the proposed 404(b) evidence, the defendant did the same or similar in this case. In particular, in communications with Lang, the defendant referred back to the mistake made in Africa in the hopes of not committing the same with regard to the expedition to Venezuela. In a Facebook message on March 8, 2018, the following exchange took place between Lang and the defendant:

> **Lang**: "The resistance is begging us to show up sooner The politic side of shit has been increasing protests And they want us to do raids to show they have teeth.
>
> **The defendant**: "We're doing this as fast as we can. Taxes should come in this week or they just won't and then we'll know what we can do."
> [ . . .]
> **Lang**: "I just don't want to miss our chance and piss off our contacts and be stuck with nothing again."
>
> **The defendant**: "I know man but rushing is how we ended up fucking Africa up"
>
> **Lang**: "True to a degree But part of that issue was having someone on our team who was only looking out for himself."

As evidenced by this exchange between the defendant and Lang, their prior acts, including those in the proposed 404(b) evidence, were guiding their planning and preparation for the offenses alleged in the Superseding Indictment, specifically Counts Five and Six. The only difference between the proposed 404(b) evidence and the allegations contained in Counts Five and Six are the countries or people

13

involved and who the defendant sought to kill or maim. Otherwise, they are remarkably similar.

      b.    *The 404(b) Evidence is Not Substantially More Prejudicial than Probative.*

The probative value of the proposed 404(b) evidence is not substantially outweighed by the risk of unfair prejudice. Regarding this aspect of admissibility, "[f]actors to be considered included whether it appeared at the commencement of trial that the defendant would contest the issue of intent, the overall similarity of the charged and extrinsic offenses, and the temporal proximity between the charged and extrinsic offenses." *United States v. Edourard*, 485 F.3d 1324, 1345 (11th Cir. 2007).

In this case, the defendant entered a not guilty plea, thereby putting his intent at issue. Because intent involves the mental processes of an individual, evidence of such intent can be difficult to prove in the absence of an outright admission to the offense conduct. *See United States v. Manoocher Nostari-Shamloo*, 255 F.3d 1290, 1292 (11th Cir.)("A defendant's intent is often difficult to prove and often must be inferred from circumstantial evidence."), *cert. denied* 534 U.S. 1030, 122 S.Ct. 566 (2001).

The proposed 404(b) evidence would establish the defendant's mental state of mind and intent with respect to the offenses alleged in Counts Five and Six of the Superseding Indictment. In most respects, the proposed 404(b) evidence is similar, if not identical, to the charged offenses. It explains why the defendant undertook the military expedition with which he is charged in the Superseding Indictment. The 404(b) evidence establishes that the defendant traveled to foreign countries

intending to engage in armed combat with other like-minded individuals. It was in Ukraine that the defendant met Lang and others with whom he would later conspire with as alleged in Counts Five and Six of the Superseding Indictment.

In this case, the proposed 404(b) evidence is not offered to prove bad character or propensity, namely, that the defendant did it before and so he must have done it again. Such argument is clearly precluded by Rule 404(b). However, the proposed 404(b) evidence would serve to explain why it was that the defendant was undertaking the presently charged criminal activity and with whom, for what, where and how he had done so in the past. The government offers the proposed 404(b) evidence with the legitimate purpose of establishing the defendant's motive, opportunity, intent, preparation, plan, knowledge, or absence of mistake or accident as it relates to the Counts Five and Six of the Superseding Indictment.

The temporal proximity of the proposed 404(b) evidence to the charged conduct is also very close as it establishes a short timeline, approximately two years or less, between the various attempts by the defendant to participate in armed conflicts abroad beginning in 2016, leading to the focus of the charged criminal conduct in 2018. The Eleventh Circuit "has refrained from adopting a bright-line rule with respect to temporal proximity because decisions as to impermissible remoteness are so fact-specific that a generally applicable litmus test would be of dubious value." *United States v. Matthews*, 431 F.3d 1296, 1311 (11th Cir. 2005)(internal quotation marks omitted). Here, as stated, there is a "logical" factual connection between the charged conduct and the proposed 404(b) evidence.

15

*Jernigan, supra,* 341 F.3d at 1281. The defendant's associations in Africa and Ukraine in 2016 and 2017, with Lang and others, formed the motivation, plan and preparation for the opportunity to carry out a military expedition to overthrow the government of Venezuela. That the defendant was unsatisfied by his prior experiences in the U.S. Army, Ukraine and Africa, is also contextually important. Most importantly, the proposed 404(b) evidence is not being offered to prove propensity, but rather, to establish that the defendant intended to participate in a military expedition whose purpose was to topple a government by way of armed violence. Therefore, the probative value of such evidence is not substantially outweighed by any prejudice.

Regardless, any prejudice that could arise from admitting the proposed 404(b) evidence against the defendant could be cured by a limiting instruction. Rather than exclude relevant evidence, the Court can instruct the jury to consider the evidence for its limited use and presume that the jury will follow that instruction. *United States v. Diaz-Lizaraza*, 981 F.2d 1216, 1225 (11th Cir. 1993)(concluding prejudice could be mitigated by giving a cautionary instruction on the limited use of such evidence).

    c. ***There is Sufficient Proof of the Defendant's Participation in the Proposed 404(b) Evidence.***

One prong of the 404(b) admissibility test requires "pro[of] sufficient[] to permit a jury determination that the defendant committed the act." *United States v. Chavez*, 204 F.3d 1305, 1317 (11th Cir. 2000). This requirement requires proof by a preponderance of the evidence. *See United States v. Bowe*, 221 F.3d 1183, 1192 (11th

Cir. 2000)(citing *Huddleston v. United States*, 485 U.S. 681, 689 1988)).  The Eleventh Circuit has held that a witness' testimony about a prior act is legally sufficient to establish that the defendant committed the act.  *See United States v. Pessefall*, 27 F.3d 511, 516 (11th Cir. 1994).

The United States can prove the defendant's participation in the proposed 404(b) evidence based upon the testimony of witnesses with personal knowledge, records of communications involving the defendant and others, including his co-defendant coconspirator, Lang, and the defendant's own statements to law enforcement and others.  Each of these sources of evidence establish the defendant's participation in the proposed 404(b) evidence by a preponderance of the evidence.

III. **Conclusion**

For the foregoing reasons, the United States moves in limine to introduce at the trial of the defendant, Alex Jared Zwiefelhofer, the proposed § 404(b) evidence discussed in this motion.

Respectfully submitted,

ROGER B. HANDBERG
United States Attorney

By: */s/ Jesus M. Casas*
    JESUS M. CASAS
    Assistant United States Attorney
    Chief, Fort Myers Division
    Florida Bar No. 0152110
    2110 First Street, Suite 3-137
    Ft. Myers, Florida 33901
    Telephone: (239) 461-2200

                    Facsimile:   (239) 461-2219
                    E-mail: jesus.m.casas@usdoj.gov

U.S. v. Alex Jared Zwiefelhofer      Case No. 2:19-cr-15-SPC-NPM

## CERTIFICATE OF SERVICE

I hereby certify that on January 26, 2023, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following:

D. Todd Doss
Todd_Doss@fd.org

Erin Hyde
Erin_Hyde@fd.org

By: */s/ Jesus M. Casas*
JESUS M. CASAS
Assistant United States Attorney
Chief, Fort Myers Division
Florida Bar No. 0152110
2110 First Street, Suite 3-137
Ft. Myers, Florida 33901
Telephone: (239) 461-2200
Facsimile: (239) 461-2219
E-mail: jesus.m.casas@usdoj.gov