## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## FORT MYERS DIVISION

**UNITED STATES OF AMERICA**

**v.**                                         **Case No:  2:19-CR-150-SPC-NPM-1**

**ALEX JARED ZWIEFELHOFER**

_____

## MOTION TO DISMISS INDICTMENT OR, IN THE ALTERNATIVE, FOR GRAND JURY TRANSCRIPTS

The Defendant, Alex Jared Zwiefelhofer, through the undersigned attorneys, moves this Court pursuant to Federal Rule of Criminal Procedure 12(b)(3)(B) and 6(e)(3)(E) to dismiss both indictments rendered in this case or, in the alternative, transcripts of the grand jury proceedings leading to the indictment rendered on September 11, 2019, and December 4, 2019,[1] and states:

1.      On September 11, 2019, the grand jury rendered an indictment charging Alex Zwiefelhofer and Craig Lang with one count of conspiracy to interfere with commerce by robbery in violation of 18 U.S.C. §1951(a), interference with commerce by robbery in violation of 18 U.S.C. §1951(b)(1), conspiracy to use a firearm during and in relation to a crime of violence in

---

[1] The undersigned contacted AUSA Jesus Casas and he objects to the relief requested in this motion.

violation of 18 U.S.C. §§924(c)(1)(A)(iii) and 924(o), and use of a firearm during and in relation to a crime of violence §§924(c)(1)(A)(iii) and 924(j)(1), and 2. Doc 6. Mr. Zwiefelhofer denies the allegations.

2.      On December 4, 2019, a superseding indictment was filed charging Mr. Zwiefelhofer and Craig Lang with count one, conspiracy to interfere with commerce by robbery in violation of 18 U.S.C. §1951(a); count two, interference with commerce by robbery in violation of 18 U.S.C. §1951(b)(1); count three, conspiracy to use a firearm during and in relation to a crime of violence in violation of 18 U.S.C. §§924(c)(1)(A)(iii) and 924(o); count four, use of a firearm during and in relation to a crime of violence §§924(c)(1)(A)(iii) and 924(j)(1); count five, conspiracy to kill, kidnap, or maim persons in a foreign country in violation of §956(a)(1); and count six, violation of the Neutrality Act in violation of 18 U.S.C. §960. Doc. 32.  Mr. Zwiefelhofer denies the allegations.

3.      These indictments were based, in part, on the untruthful testimony of Dameon Adcock as evidenced by his conviction for perjury in *United States v. Dameon Adcock*, Case No. 2:19-cr-00181-TPB-NPM. In light of this fact, Mr. Zwiefelhofer seeks transcripts of the Grand Jury testimony relied on in both indictments and moves to dismiss them. Docs. 6 & 32.

4.     Dameon Adcock, a material witness in Mr. Zwiefelhofer's case, was charged and convicted in this District for perjuring himself before the grand jury that issued the indictment in this case. *See United States v. Dameon Adcock*, Case No. 2:19-cr-181-TPB-NPM.

5.     A separate conspiracy was charged in the Eastern District of North Carolina that involved multiple counts alleging Dameon Adcock, Craig Lang, alleged co-conspirator to Mr. Zwiefelhofer, and others entered into a conspiracy for Adcock and Jordan Dean Miller to sell their personal identifying information to Lang and McCloud so they could evade law enforcement detection. *See U.S. v Craig Austin Lang, et al*, Case No. 5:19-cr-00331-BO. See Appendix A. Mr. Adcock was convicted by plea agreement in that Eastern District of North Carolina case. See Appendix B.

6.     Within the North Carolina case the indictment alleges in the Manner and Means section that Lang, Adcock, McCloud, Miller, and **co-conspirators** participated in the conspiracy. *Id.* (emphasis added), The identity of the "co-conspirators" are unknown to the Defense.

7.     On November 6, 2019, Dameon Adcock was indicted for false declarations before a grand jury for his testimony provided on July 31, 2019, in Ft. Myers, Florida against Craig Lang, M.M., and others. *See United States v. Dameon Adcock*, Case No. 2:19-cr-00181-TPB-NPM, Doc. 1. The

indictment states a federal search warrant was executed on Mr. Adcock's residence and evidence material to his July 31, 2019, testimony was obtained. *Id*. It is alleged that Mr. Adcock received cash and firearms from Mr. Lang and M.M. and sold his identity to Mr. Lang, though he denied it during his grand jury testimony in Mr. Zwiefelhofer's case. *Id*. Mr. Adcock pled guilty to the charge of perjury and was sentenced to 8 months for Count 1 and 24 months for Count 3. Doc. 128. The firearms Mr. Adcock is alleged to have received in exchange for his identity are believed to be the firearms used to shoot Serafin Lorenzo, Jr. and Deana Lorenzo in the instant case.

8.     In an undated sworn statement transcribed on December 27, 2019, Agent Roncinske advised Dameon Adcock that he was under arrest for conspiracy to commit passport fraud in violation of 18 U.S.C. 371. Post-*Miranda*, Mr. Adcock spoke with Agent Kehoe in an effort to gain favor on his pending charges for his cooperation.

9.     Agent Roncinske informed Mr. Adcock he was trying to recover the guns Adcock received from Craig Lang because they are allegedly linked to a homicide he is investigating -- the case here. While speaking with Adcock, Agent Roncinske asks him to explain his prior statement he made

4

about being a middle-man when questioned during the execution of a search warrant at his home.[2]

10.    In the interview, Adcock states that Craig Lang paid him with the two guns for the fraudulent passport information Adcock provided. [3] Adcock relates that he left those handguns at Kendall Vaughn's house when he stayed there, and they should still be there.[4]  This was because Adcock failed to sell the guns.[5]

11.    The Agent confronted Adcock about the inconsistency in this statement because Adcock had previously told the Agent he had sold the handguns.[6] Adcock continued to lie to the Agent and the Agent's responses reflect he was aware of that fact.[7]

12.    The Agent tried to get Adcock to tell the truth by explaining to him that his lying to the Grand Jury in this case would be another charge and presciently predicts, "they're going to crush you in Florida."[8]

---

[2] See transcript of interview with Damon Adcock. Appendix C at 27.
[3] *Id.* at 27-32.
[4] *Id.* at 26.
[5] *Id.* at 30 & 33.
[6] *Id.* at 34.
[7] *Id.* at 34-45.
[8] *Id.* at 37.

13.     After the Agent told Adcock that Lang was in custody.[9] Adcock informed the Agent that he gave Lang his social security card, birth certificate, and welding certificate to get a passport.[10] Lang asked Adcock for the name of Adcock's birth mother and Adcock provided the information.[11] Adcock exchanged this information for $2,300 cash[12] and the handguns (described as two Glock 19s and a Glock 43)[13] in a deal where he, Craig Lang, and Matthew McCloud were present.[14]

14.     Adcock also revealed Lang gave him an AR15 upper receiver, with a suppressor on it that was later destroyed, and an M18 smoke grenade from Fort Bliss, where Lang had been stationed.[15]

15.     Adcock told Agents Lang and McCloud were using someone else's debit card to pay for their hotel room and that Lang and McCloud were using a laptop to access the "dark web" in a credit/debit card scheme to make money.[16]

---

[9] *Id.* at 45.
[10] *Id.* at 45-46.
[11] *Id.* at 47.
[12] *Id.* at 53.
[13] *Id.* at 58
[14] *Id.* at 47.
[15] *Id.* at 51 & 58 & 69.
[16] *Id.* at 61 & 72.

16.     Adcock said Lang asked him to look up non-extradition countries and Adcock told Agents Lang planned to travel to the Ukraine because it was a non-extradition country.[17]

17.     Adcock and Agents discussed McCloud being a cocaine user who carried a firearm.[18]

18.     Adcock told the FBI Agent Craig Lang and Matthew McCloud called him on the phone, together.[19] Adcock and Damon McGinty met Lang and McCloud at "Jersey Mikes."[20] At that meeting, Lang told Adcock that he did not have an ID, so he needed Adcock to get him a hotel room and Lang would give him cash.[21]

19.     McCloud then called Adcock the next day and invited him to their room.[22] Once at the room, Adcock, McGinty, Lang, and McCloud went to Walmart where Lang told Adcock that he (Lang) needed to get out of the country.[23]

---

[17] *Id*. at 62.
[18] *Id*. at 74 & 75.
[19] *Id*. at 84.
[20] *Id*. at 85
[21] *Id*. at 86.
[22] *Id*. at 88.
[23] *Id*. at 88,

20.    Lang offered Adcock $2300 for Adcock's birth certificate and social security card in order to get a passport.[24] Adcock went home to retrieve his documents and additionally provided a welder's certificate, per Lang's request, a day later in exchange for $2300.00.[25] Lang told Adcock he has a post office box in Virginia,[26] and asked Adcock for his birthmother's name for his application.[27]

21.    Lang gave Adcock a suitcase containing three Glocks, an AR15 upper receiver, $2300.00 cash, and a smoke grenade.[28] Adcock wanted to keep the green Glock 43 in the suitcase that McCloud carried for personal use and asked him if it was clean.[29]

22.    Adcock allowed Damon McGinty to borrow "the rusted Glock" that he believed had its serial number because McGinty said he needed a firearm for personal protection.[30] Adcock said he sold the AR upper to a friend named, Brandon Jones[31] and reiterated that the AR upper was melted down by a gunsmith. Ultimately, Adcock returned the purchase

---

[24] *Id.* at 89.
[25] *Id.* at 90 & 92.
[26] *Id.* at 91.
[27] *Id.* at 92.
[28] *Id.* at 92 & 94.
[29] *Id.* at 96.
[30] *Id.* at 98.
[31] *Id.* at 99.

price of $3,000.00 to Jones.[32]  Adcock also explained that he left the other two Glocks at Kendall Vaughn's house.[33]

23.    The FBI Agent called Adcock out on his story and stated he understood Adcock to have given the rusty Glock to McGinty.[34] Adcock then described his phone call with Kendall Vaughn's wife and that she 90% sure the Glocks in question were still at her house.[35] Adcock confirmed that he gave the green Glock 43 to Agent Kehoe and the other two Glocks Lang gave him were at Vaughn's home.[36]

24.    Adcock ends by stating that Lang and McCloud were engaged in identity theft with credit/debit cards using a laptop.[37]

25.    On December 19, 2019, Agent Roncinske, Detective Sarah Rodriguez of the Lee County Sheriff's Office, and Assistant U.S. Attorney Jesus Casas spoke with Dameon Adcock in the presence of his lawyer after his initial appearance in his perjury case. *See United States v. Dameon Adcock*, Case No. 2:19-cr-00181-TPB-NPM, Doc. 1. Dameon Adcock confessed that he lied about what he did with the two handguns he received

---

[32] *Id.* at 99,
[33] *Id.* at 101.
[34] *Id.* at 102.
[35] *Id.* at 105.
[36] *Id.* at 108.
[37] *Id.* at 110-111.

from Craig Lang. Presumably, Mr. Adcock told these lies to Agent Roncinske during his arrest and interview. Adcock confessed that sold one of the handguns to Jake Rickman who then sold them to Brandon Latta and that he knew the FBI had recovered one of the handguns. Adcock confessed that he sold the other handgun to Timothy "Junebug" Weadon, Jr.

26.   Mr. Zwiefelhofer moves this court for transcripts of the grand jury testimony supporting each of the indictments rendered against him to determine the extent to which Mr. Adcock's perjury impacted their validity and to provide him with material necessary to his defense in line with cases such as *Brady* and *Giglio* and the Fifth and Sixth Amendments to the Constitution of the United States. Disclosure of Mr. Adcock's testimony before the grand jury, alone, would not be sufficient to properly assess the impact his dishonest testimony had on the grand jury's indictment.  Mr. Zwiefelhofer asserts that the testimony of all who testified before the grand jury, and the exhibits entered, are necessary to evaluate the effect Mr. Adcock's perjured testimony had on the grand jury's findings. Transcripts of the entirety of the grand jury proceedings are necessary to evaluate the weight the grand jury put on Mr. Adcock's testimony as they would reveal information, including but, not limited to:  the number of witnesses who testified, the substance of their testimony, whether or not Mr. Adcock was

10

the only lay witness who was presented, whether there was any evidence to the contrary of Mr. Adcock's testimony and how his perjury, which would have been immediately known to the prosecution, was treated and/or attempted to be cured.

## Memorandum of Law and Argument

The Fifth Amendment provides that "no person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury." The court held that "the Due Process Clause of the Fifth Amendment is violated when a defendant has to stand trial on an indictment which the government knows is based partially on perjured testimony, when the perjured testimony is material, and when jeopardy has not attached." See *United States v. Basurto,* 497 F.2d 781, 785 (1974). "The untainted administration of justice is certainly one of the most cherished aspects of our institutions.  Its observance is one of our proudest boasts … Fastidious regard for the honor of the administration of justice requires the Court to make certain that the doing of justice be made so manifest that only irrational or perverse claims of its disregard can be asserted." *Basurto* at 786 (1974). "Permitting a defendant to stand trial on an indictment which the government knows is based on perjured testimony cannot comport with this 'fastidious regard for the honor of the administration of justice." *Id.* at

787.    In *Basurto*, William Barron was named in the indictment as a co-conspirator, but not a defendant.  He testified as to appellants' activities in the conspiracy before the grand jury that rendered the indictment against Basurto. Prior to trial, Barron told the prosecutor he had committed perjury before the grand jury who then told opposing counsel but not the Court or the grand jury. The Court found, "[t]he conduct of the prosecutor in this case reinforces the expression by Professor Moore that, over the years, the government prosecutor has gained substantial influence over the grand jury, and subsequently that institution has lost much of its former independence. *See* 8 J. Moore, Federal Practice, P6.02(1). Because the prosecutor did not act to cure the indictment upon discovery of the perjured grand jury testimony, the Court reversed Mr. Basurto's convictions.

The Defendant acknowledges that, as a general rule, "[a]n indictment returned by a legally constituted and unbiased grand jury … if valid on its face, is enough to call for trial of the charge on the merits." *Costello v. United States*, 350 U.S. 359, 363 (1956). The extent to which Mr. Adcock's testimony tainted the grand jury's findings cannot be determined as inquiry into its deliberations is strictly prohibited. Therefore, the only recourse would be to provide transcripts of the entirety of the grand jury proceedings and/or dismiss the indictments.

## **Alternatively, To Produce Grand Jury Transcripts**

Federal Rule of Criminal Procedure Rule 6(e)(3)(E) states, the court may authorize disclosure – at any time, in a manner, and subject to any other conditions that it directs - of a grand jury matter:

> (i)     preliminarily or in connection with another judicial proceeding
>
> (ii)    at the request of a defendant who shows that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury;

(F)   A petition to disclose a grand-jury matter under Rule 6(e)(3)(E)(i) must be filed in the district where the grand jury convened. Unless the hearing is *ex parte*—as it may be when the government is the petitioner—the petitioner must serve the petition on, and the court must afford a reasonable opportunity to appear and be heard to:

> (i) an attorney for the government;
>
> (ii) the parties to the judicial proceeding; and
>
> (iii)   any other person whom the court may designate.

"This Court has recognized the 'long-established policy that maintains the secrecy of the grand jury proceedings in the federal courts.'"

*Dennis v. United States*, 384 U.S. 855, 869 (1966) (*quoting United States v. Proctor & Gamble Co.,* 356 U.S. 677, 681(1958)). "And it has ruled that, when disclosure is permitted, it is to be done 'discretely and limitedly." *Id.* at 683.

The Court has recognized the trial court's ability to disclose transcripts of grand jury testimony "preliminarily to or in connection with a judicial proceeding." In *Proctor*, the Court admitted that "problems concerning the use of the grand jury transcript at the trial to impeach a witness, to refresh his recollection, to test his credibility"… are "cases of particularized need where the secrecy of the proceedings is lifted discretely and limitedly." *Dennis*, 384 U.S. at 870 (*quoting Proctor,* 356 U.S. at 683).

Though the Court held in *Pittsburgh Plate Glass Co. v. United States*, 360 U.S. 395 (1959) to sustain denial of grand jury transcripts because the petitioner made no showing of need, it was agreed that relevant portions of grand jury testimony could be accessed if "particularized need" was shown. *Id.* at 400. In *Pittsburgh Plate Glass Co.*, the petitioner made no showing of need, but insisted upon production of the grand jury minutes as a matter of right, and where there was "overwhelming" proof of the offense charged without reference to the witness' testimony. *Id.*

14

Further, in *Socony-Vacuum Oil Co.,* the Court found "after the grand jury's functions are ended, disclosure is wholly proper where the ends of justice require it." *See United States v. Socony-Vacuum Oil Co.,* 310 U.S. 150, 234 (1940). In *Socony-Vacuum Oil Co.,* the Court did not find abuse of discretion in refusing to provide copies of the grand jury transcripts to the defense that the prosecution selectively used to refresh the recollection of certain witnesses. The Court found that since no rule requires production of the testimony and the court itself examined and directly controlled the use of the testimony without making it available to the defense, it cannot be said that the ruling was reversible error. *Id.*   The Court did note, however, that if the testimony had been introduced into evidence or otherwise used to "arouse the passions of the jury" rather than to merely refresh recollection as to material facts, there would be reversible error. *Id.*

Each case and situation must be evaluated on an individual basis. *Dennis* pointed out that developments within the area of grand jury testimony production are not unlike the development of the Jencks Act where "realization that disclosure, rather than suppression, of relevant materials ordinarily promotes the proper administration of the criminal justice system." *Dennis,* 384 U.S. at 870 (citing *Jencks v. United States,* 353

15

U.S. 657 (1957)). *Dennis* was a prosecution for an alleged conspiracy to fraudulently obtain services of the National Labor Relations Board on behalf of a union by filing false non-Communist affidavits by union officers. The Court held that various factors, including the growing realization that disclosure rather than suppression of relevant materials ordinarily promotes proper administration of criminal justice, entitled alleged conspirators to examine grand jury minutes relating to trial testimony of four government witnesses. The testimony of the four witnesses who were accomplices and other material witnesses was largely uncorroborated and one had admitted on cross-examination to being mistaken as to dates in earlier testimony. "A conspiracy case carries with it the inevitable risk of wrongful attribution of responsibility to one or more of the multiple defendants." *Dennis*, 384 U.S. at 873.

Here, where conspiracy has been charged in multiple counts with Craig Lang as a coconspirator to Mr. Zwiefelhofer, and Dameon Adcock having been found by the government to have offered perjured testimony. Disclosure of the grand jury's testimony is necessary to promote the proper administration of justice.

According to the indictment in Dameon Adcock's perjury case, he provided perjured grand jury testimony about whether he received money and firearms from Craig Lang, M.M., and others, and whether he sold his identity to Craig Lang. The direct connection of Dameon Adcock's grand jury testimony to this case and any evidence to refute it is relevant to all six counts of the superseding indictment against Alex Zwiefelhofer and Craig Lang.

Any testimony offered to the grand jury related to Dameon Adcock's alleged perjury is material and should be disclosed. The indictment against Mr. Adcock references a person identified only as M.M. and references others. It is logical to assume that "others" may pertain to Alex Zwiefelhofer given the allegations that he is alleged to have conspired with Craig Lang as to the firearms allegedly traded by Land to Adcock for Adcock's identity and that those firearms were allegedly connected to the deaths of S.L. and D.L. in the case here.

Even if the Government does not expect to call Dameon Adcock to testify at this trial, the information he provides as to the conspiracy surrounding Craig Lang is material. The only connections the government has made to the conspiracy, robbery, and death charged in the indictment

and Alex Zwiefelhofer relate to cell phones and social media that can easily be possessed and manufactured by people other than and unbeknownst to Mr. Zwiefelhofer. To determine, as part of his defense, which deeds and statements are attributable to him, and which are not, disclosure is necessary.

In conspiracy cases in which the witnesses testify to conversations that were largely uncorroborated, "the question of guilt or innocence may turn on exactly what was said [and] the defense is clearly entitled to all relevant aid which is reasonably available to ascertain the precise substance of these statements." *Dennis,* 384 U.S. at 872-873. The court in *Dennis* also acknowledged that the grand jury testimony would likely be more accurate than testimony at trial, given that witnesses memories would be better closer in time to the charged events. *Id*. at 872.  The Court stated, "[W]e cannot accept the view of the Court of Appeals that it is 'safe to assume' no inconsistencies would have come to light if the grand jury testimony had been examined.  There is no justification for relying upon assumption*." Dennis*, 384 U.S. at 874. It is with this in mind that the defense requests any and all testimony pertaining to the conspiracy counts to be turned over along with Dameon Adcock's testimony.

Further, the fact that Dameon Adcock offered perjured testimony to the grand jury responsible for indicting Alex Zwiefelhofer may be grounds for dismissing the indictment. The superseding indictment in November does not cure the error as testimony from the original grand jury can be relied on in subsequent grand jury proceedings.

In camera review of the grand jury testimony would be insufficient to address Mr. Zwiefelhofer's statutory right under Fed. R. Crim. Proc. 6(e)(3)(E)(ii), or his Fifth and Sixth Amendment rights, as "it will be extremely difficult for even the most able and experienced trial judge under the pressures of conducting a trial to pick out all of the grand jury testimony that would be useful in impeaching a witness." *Pittsburgh Plate Glass*, 360 U.S. at 410. "Nor is it realistic to assume that the trial court's judgment as to the utility of material for impeachment or other legitimate purposes, however conscientiously made, would exhaust the possibilities." *Dennis*, 384 U.S. at 874, 875. "The determination of what may be useful to the defense can properly and effectively be made only by an advocate." *Id.* at 875.

Secrecy of grand jury proceedings are based upon: 1) preventing escape of those who might be indicted; 2) to prevent interference with the deliberation of the grand jury; 3) to prevent interference with witnesses who

testify at the grand jury and who may later testify at trial; 4) to encourage witnesses to disclose information; and 5) to protect the innocent who are accused and exonerated by a grand jury. *See Proctor & Gamble Co.*, 356 U.S. at 681, n.6 (citation omitted). Other policy reasons might favor secrecy where additional individuals are targeted in the grand jury aside from those who have been indicted. Where there are such concerns, the Court can disclose portions of the transcript with a protective order. The circumstances here favor disclosure because the policy reasons supporting secrecy no longer apply. The grand jury has completed its deliberations, witnesses have already provided testimony twice, Mr. Zwiefelhofer, Mr. Lang, and Mr. Adcock have already been publicly indicted, Mr. Zwiefelhofer is incarcerated with no means of release in a Florida jail, and Mr. Lang is in Ukraine.

## CONCLUSION

Wherefore, Alex Zwiefelhofer requests that this court enter its order dismissing the indictment against him or, in the alternative, disclosing the grand jury testimony in support of both indictments finding disclosure is greater than the need for continued secrecy.

Respectfully submitted,

A. FITZGERALD HALL, ESQ.
FEDERAL DEFENDER, MDFL

/s/D. Todd Doss
D. Todd Doss, Esq.
Assistant Federal Defender
Florida Bar No.0910384
201 S. Orange Avenue, Suite 300
Orlando, FL 32801
Telephone: 407-648-6338
Fax: 407-648-6765
E-Mail: todd_doss@fd.org

s/Erin Brenna Hyde
Erin Brenna Hyde, Esq.
Assistant Federal Defender
Florida Bar No.0026248
201 S. Orange Avenue, Suite 300
Orlando, FL 32801
Telephone: 407-648-6338
Fax: 407-648-6095
E-Mail: erin_hyde@fd.org

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that undersigned electronically filed the
foregoing with the Clerk of Court (CM/ECF) by using the CM/ECF system
this 1st day of February 2023 which will send an electronic copy to Jesus
Casas, Assistant United States Attorney.

s/Erin Brenna Hyde
Attorney for Mr. Zwiefelhofer