# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## FORT MYERS DIVISION

**UNITED STATES OF AMERICA,**

     **Plaintiff,**

                            **Case No.2:19-cr-150-FtM-38NPM**

**v.**

**ALEX JARED ZWIEFELHOFER,**

     **Defendant.**

_____

## MOTION TO SUPPRESS EVIDENCE
## OBTAINED THROUGH UNLAWFUL PRESERVATION

Alex Jared Zwiefelhofer, the Defendant, by his undersigned attorneys, moves this Court for an order suppressing the entire contents of Internet and telephone accounts and records obtained from preservation letters dated January 28, 2019, issued for:

1. AT&T Wireless – 2659588 - IMEI No. 3585330514168026 and IMSI No. 310410969230354;

2. Sprint 2019-19599 – IMEI No. 3585330514168026 and IMSI No. 310410969230354;

3. T-Mobile – Metro PCS – IMEI No. 3585330514168026 and IMSI No. 310410969230354;

4. Verizon - IMEI No. 3585330514168026 and IMSI No. 310410969230354;

5. AT&T – 715-404-0337 – IMEI No. 358533051468;

6. Facebook – 2400152 for
   https://www.facebook.com/Alex.zwiefelhofer1

7. T-Mobile – 715-440-1205;

as a fruit of its unlawful suspicionless seizure in violation of the Fourth

Amendment. See Appendix A-G.[1]

## **INTRODUCTION**

Defendant's private messages in the named accounts were seized at the

government's direction under the claimed authority of a federal statute, 18

U.S.C. § 2703(f) (hereinafter, "the preservation statute"). The preservation

statute provides that, "upon the request of a governmental entity," Internet

providers "shall . . . retain[]" files in a user's account "for a period of 90 days,"

renewable for another 90 days. *Id.*

The government believes that the preservation statute allows the

government to order copies made of the contents of any person's Internet and

telephone accounts, and to have those contents held for the government for up

to 180 days, without any cause whatsoever. Based on this understanding, the

named providers, acting at the government's agent, seized the private contents

of the listed accounts and held them on the government's behalf.

This    long-term,    government-directed,    suspicionless    seizure    of

---

[1] AUSA Casas has been contacted and the Government objects to this motion.

Defendant's personal messages and account content cannot be reconciled with the Fourth Amendment. Instead of preservation occurring "pending the issuance of a court order," 18 U.S.C. § 2703(f)(1), as the Fourth Amendment and the plain text of the statute require, the government used the preservation statute to gain control of Defendant's account just in case probable cause eventually developed. The government ordered the seizure of the named accounts without probable cause or even reasonable suspicion. Indeed, the government did not obtain a warrant until an inordinate amount of time after the warrantless seizure occurred.

The Fourth Amendment protects the private e-mails and private messages in a password-protected online account. A government-directed copying and setting aside of a person's private account is a Fourth Amendment seizure. Such a warrantless seizure is permitted under the Fourth Amendment only in very limited circumstances, generally based on probable cause and permitted only for a brief period of time. Because the warrantless seizure in this case occurred without any justification and for an extended period, the fruits of that seizure—the contents of the preserved account—must be suppressed.

## STATUTORY AND FACTUAL BACKGROUND

The Stored Communications Act, 18 U.S.C. §§ 2701-11, is a federal statute that regulates government access to the private records of Internet users. Internet providers such as those named here hold their users' records on their computer network servers. When criminal investigators seek copies of records from the accounts of criminal suspects, investigators obtain the records directly from the Internet providers. The Stored Communications Act establishes the responsibilities and duties of both the government and Internet providers when the government seeks user information. *See generally* 2 WAYNE LAFAVE, ET AL., CRIMINAL PROCEDURE § 4.8 (4th ed. 2015) (presenting overview of the statute).

This case involves the Stored Communications Act's preservation statute found at 18 U.S.C. § 2703(f). The statute provides:

> (f) Requirement To Preserve Evidence.
> (1) In general.— A provider of wire or electronic communication services or a remote computing service, upon the request of a governmental entity, shall take all necessary steps to preserve records and other evidence in its possession pending the issuance of a court order or other process.
> (2) Period of retention.— Records referred to in paragraph (1) shall be retained for a period of 90 days, which shall be extended for an additional 90-day period upon a renewed request by the governmental entity.

–4–

The preservation statute was enacted to ensure government access to user records that might otherwise be deleted before the government obtained legal process. Because obtaining legal process can be time-consuming, the preservation statute "permits the government to direct providers to 'freeze' stored records and communications" of suspects pending the issuance of a warrant or other court order. U.S. DEP'T OF JUST., SEARCHING AND SEIZING COMPUTERS AND OBTAINING ELECTRONIC EVIDENCE IN CRIMINAL INVESTIGATIONS 139 (2009).

The key question is when the preservation statute can be used. The government and major Internet providers interpret 18 U.S.C. § 2703(f) to permit unlimited preservation of Internet accounts. *See* Orin S. Kerr, *The Fourth Amendment Limits of Internet Content Preservation*, 65 St. Louis U. L.J. 753, 766-78 (2021) (summarizing government and provider practices) (hereinafter Kerr, *Internet Content Preservation*). As the government interprets the law, the statute allows any government agent, at any time, to order any provider to make and set aside a copy of every file, of any Internet account, without any suspicion whatsoever. *See id.* The government calls this process "preservation," but it is really just suspicionless seizing. Acting on the government's instruction, and as the government's agents, Internet providers

–5–

make complete copies of target accounts and save them exclusively for later government use. *See id.* at 784-85.

Based on the belief that the § 2703(f) permits such mass-scale seizures without cause, the federal government and state governments order the preservation of hundreds of thousands of Internet accounts every year. *See id.* at 767-69. This dragnet surveillance practice has gone unchallenged for many years. *See id.* at 755-56. Major Internet providers and the government work together to make this process both automatic and largely secret. *See id.* at 775-78. When a government agent makes a § 2703(f) request, providers will copy and preserve the account contents without question. *See id.* at 772. In the ordinary case, this process is hidden from users. Internet providers do not tell their customers that preservation occurred. And the government ordinarily does not disclose preservation. *See id.* at 775-78.

This case presents a rare constitutional challenge to § 2703(f) preservation because it is a rare case when the fact of preservation was disclosed. On January 28, 2019, the government submitted § 2703(f) requests to the named providers directing the preservation of Defendant's accounts related to the identifiers listed above. In response to those requests, the providers diligently searched and copied relevant accounts. These providers

–6–

then set aside copies and held them for the government.

The accounts were held for the government until warrants were served

on:

1.  AT&T Wireless – 2659588 - IMEI No. 3585330514168026 and IMSI
    No. 310410969230354
       Search warrant 14609 was served on February 13, 2019;

2.  Sprint 2019-19599 – IMEI No. 3585330514168026 and IMSI No.
    310410969230354;
       No warrant in discovery;

3.  T-Mobile – Metro PCS – IMEI No. 3585330514168026 and IMSI
    No. 310410969230354;
       No warrant in discovery;

4.  Verizon - IMEI No. 3585330514168026 and IMSI No.
    310410969230354;
       No warrant in discovery;

5.  AT&T – 715-404-0337 – IMEI No. 358533051468;

6.  Facebook – 2400152 for
    https://www.facebook.com/Alex.zwiefelhofer1
       Search warrant 14636 served on February 13, 2019, for Facebook
       account and search warrant 15444 March 21, 2019, for Instagram
       account;

7.  T-Mobile – 715-440-1205;
       Search warrant 15441 served February 13, 2019;

See Appendix H-K

On those respective dates the government obtained a warrant to justify

the account's seizure and subsequent search. When the government submitted

–7–

the warrant to the respective providers, each provider then complied with the warrant by sending the government the copy of the preserved account that had been created on January 28, 2019. Defendant now seeks the suppression of the preserved account contents as the product of an unlawful seizure.

## LEGAL ARGUMENT

The warrantless preservation of Defendant's Internet and telephone accounts violated his Fourth Amendment rights. The preservation was government action because it required the named providers to act on the government's behalf. Preservation triggered a Fourth Amendment seizure because it eliminated Mr. Zwiefelhofer's exclusive control of his accounts. It was an unreasonable seizure because it was not based on probable cause or even reasonable suspicion and was not followed promptly by a warrant. The contents of the account must be suppressed because they are fruits of the unconstitutional preservation and the good-faith exception does not apply. The analysis below addresses each point in turn.

## A. THE PRESERVATION OF DEFENDANT'S ACCOUNT WAS FOURTH AMENDMENT STATE ACTION.

The named provider's act of preserving the listed accounts pursuant to 18 U.S.C. § 2703(f) was government-directed action regulated by the Fourth Amendment. The Fourth Amendment applies to acts of private individuals

acting as "instrument[s] or agent[s]" of the Government. *Coolidge v. New Hampshire*, 403 U.S. 443, 487 (1971). A private party acts as a government agent when the government "compelled a private party to perform a search" or the private party otherwise acted pursuant to the "encouragement, endorsement, and participation" of the government. *Skinner v. Railway Labor Executives' Assn.*, 489 U.S. 602, 613–614 (1989).

That test is satisfied here. Section 2703(f) states that "upon the request of a governmental entity," the provider "*shall take all necessary steps* to preserve records and other evidence" in its possession, and that the records "*shall be retained* for a period of 90 days, which *shall be extended* for an additional 90-day period upon a renewed request by the governmental entity." 18 U.S.C. § 2703(f) (emphasis added). By triggering the preservation statute, the government directed what the named providers must do. In response, the named providers fulfilled the government's wishes on the government's behalf. This mandate satisfies the test for state action. *See Skinner*, 489 U.S. at 613 (noting that "compell[ing] a private party to perform a search" makes that private party a Fourth Amendment state actor).

The preservation in this case is Fourth Amendment government action even if compliance with § 2703(f) is considered voluntary instead of a

mandatory obligation. In *Commonwealth v. Gumkowki*, 167 N.E.3d 803 (Mass. 2021), a state trooper asked the cellular and Internet service provider Sprint to voluntarily disclose a suspect's cell-site location records without a warrant. Sprint agreed. The Court ruled that Sprint's voluntary disclosure constituted Fourth Amendment state action: When "law enforcement instigates the search by contacting the cell phone company to request information, there is State action. That Sprint could have refused to provide records in response to [the state trooper's] request does not change the fact that he instigated the search." *Id.* at 812.

*United States v. Hardin*, 539 F.3d 404 (6th Cir. 2008), confirms the point. In *Hardin*, an apartment manager entered an apartment at the request of the government to see if the defendant was present. The Sixth Circuit ruled that the apartment manager was a Fourth Amendment state actor. *Id.* at 407. This was true, the court ruled, "because the officers urged the apartment manager to investigate and enter the apartment, and the manager, independent of his interaction with the officers, had no reason or duty to enter the apartment." *Id*.

When the named providers complied with the government's directive under the preservation statute, both the government and the named providers

believed that compliance with the government's "request" was mandatory. The statute imposes an obligation: It states what a provider "shall" do when it receives a preservation request. 18 U.S.C. § 2703(f). This is not merely "instigat[ing]" the provider's act under *Gumkowski* and *Hardin*, it is "compell[ing] a private party" to act under *Skinner*. But whether the preservation is construed as ordering or merely instigating the act of preservation, it is state action under the Fourth Amendment.

## B. PRESERVATION OF THE NAMED ACCOUNTS WAS A FOURTH AMENDMENT SEIZURE.

A Fourth Amendment seizure occurs "when there is some meaningful interference with an individual's possessory interests in that property." *United States v. Jacobsen*, 466 U.S. 109, 113 (1984). The classic example of a seizure is physical taking away of property. Being "dispossessed" of your property by government action causes a seizure of it. *Soldal v. Cook County*, 506 U.S. 56, 61 (1992) (towing away a mobile home).

Preservation of the listed accounts caused a Fourth Amendment seizure because it dispossessed Mr. Zwiefelhofer of control over the accounts. Internet providers "execute preservation requests by making a copy of the full contents of the relevant account and storing it separately." Kerr, *Internet Content Preservation*, at 771. Although this process is labeled 'preservation,' it reality

it is "a dynamic process of entry, copying, and storage." *Id*. at 782. As Internet providers have themselves explained, this is done by performing a "data pull" of the contents of the account that take a "snapshot" of the account contents. *Id.* (quoting public statements from Twitter and Apple). The copy is then stored outside the user's control so the user cannot alter or delete any files. *Id.* at 784-85.

The government-directed act of creating a government copy of the account, and storing it away for later government access, caused a "meaningful interference" with Mr. Zwiefelhofer's "possessory interests in that property" because it denied him control over his private information. *Jacobsen*, 466 U.S. at 113. "Possession" is defined as the "detention and control. . . of anything which may be the subject of property." BLACK'S LAW DICTIONARY 1047 (5th ed. 1979). Before preservation occurred, Mr. Zwiefelhofer had control of his account contents. He could view his files, he could alter his files, and he could delete his files as he wished.

Preservation eliminated that control. Preservation ensured that a perfect copy of the account contents was generated and detained outside his control exclusively for the government's future use. This was done for the express purpose, and with the exact effect, that Mr. Zwiefelhofer could no

longer control the contents of his account. Preservation therefore triggered a seizure. *See United States v. Bach*, 310 F.3d 1063, 1067-68 (8th Cir. 2002) (analyzing the copying and review of stored Internet contents held by an Internet provider as a Fourth Amendment "seizure" and a "search" of the contents); *Vaugh v. Baldwin*, 950 F.2d 331, 334 (6th Cir. 1991) (noting that, in the absence of consent, the government had "no right to . . . photocopy" a person's private documents); *United States v. Loera,* 333 F. Supp. 3d 172, 185 (E.D.N.Y. 2018) ("Most courts that have addressed duplication, including digital duplication, have analyzed it as a seizure."); Fed. R. Crim. Pro. 41(e)(2)(B) (equating the seizure of electronically stored information with the copying of the information).[2]

In the data context, of course, the government dispossesses a person of control without physically removing the data. But that makes no legal difference. Copying private files triggers a seizure because the government gains control of the data. The government's gaining control and a user's losing exclusive control causes a seizure even though the user still has access to a

---

[2] The Second Circuit expressly held that copying a file is a seizure in a panel decision that was later vacated on rehearing en banc; the en banc court did not reach the question. *See United States v. Ganias*, 755 F.3d 125, 137 (2d Cir. 2014) (holding that the Government's retention of electronic copies of the defendant's personal computer "deprived him of exclusive control over those files," which was "a meaningful interference with [the defendant's] possessory rights in those files and constituted a seizure within the meaning of the Fourth Amendment."), *vacated by United States v. Ganias*, 824 F.3d 199 (2d Cir. 2016) (en banc).

prior copy of the data. *See United States v. Jefferson,* 571 F. Supp. 2d 696, 703 (E.D. Va. 2008) (holding that "recording . . . information by photograph or otherwise" is a seizure, "even if the document or disc is not itself seized," because "the Fourth Amendment privacy interest extends not just to the paper on which the information is written or the disc on which it is recorded but also to the information on the paper or disc itself"). The government cannot simply take control of the contents of everyone's private Internet messages and information, just as long as the government does not (yet) look at the files, entirely at the government's whim. Preservation triggers copying of the account, and that copying is a Fourth Amendment seizure permitted only if it is constitutionally reasonable. *See id.*

It should be especially clear that preservation is a Fourth Amendment "seizure" given how Internet search warrants are executed under the Stored Communications Act as required by the Fourth Amendment. *See Warshak v. United States*, 631 F.3d 266, 274 (6th Cir. 2010) (holding that accessing private emails is a Fourth Amendments search that requires a warrant). When the government serves a warrant on a provider under § 2703(a), the provider will run off a copy of the account and send the copy to the government for its review. The provider conducts the initial "seizure," and the government conducts the

subsequent "search." *Cf. Bach*, 310 F.3d at 1067-68.[3] Preservation under §

2703(f) is the "seizure" part of the Stored Communications Act's procedure for

obtaining Internet account contents. Preservation does not cause a search to

occur, because information is not yet revealed to the government. But the

transfer of control of account contents under § 2703(f) is a seizure

independently of any subsequent search, and it must be independently

justified as reasonable. *See Soldal,* 506 U.S. at 61 (explaining that seizures

must be justified under the Fourth Amendment independently of any

searches).

## C. THE GOVERNMENT CANNOT SATISFY ITS BURDEN OF ESTABLISHING THAT THE WARRANTLESS SEIZURE OF THE ACCOUNT WAS REASONABLE.

"If the defendant meets his burden of establishing a warrantless

seizure, the burden then shifts. The Government must establish the

warrantless seizure was reasonable." *United States v. Shrum*, 908 F.3d 1219,

1229 (10th Cir. 2018). The government cannot meet that burden. The contents

of the named accounts were seized on receipt of the preservation letters. Those

---

[3] A small number of trial courts have reasoned that copying account contents are not seizures in the special context of copying files stored outside the United States. *See, e.g., United States v. Gorshkov*, 2001 WL 1024026, at *3 (W.D. Wash. May 23, 2001) (copying from a server in Russia); *In re Search Warrant To Google, Inc.*, 2017 WL 2985391, at *11 (D.N.J. 2017) (copying accounts from servers outside the United States as part of the execution of a cloud warrant). This case does not raise the unique international concerns that underly those decisions.

contents were held without a warrant until a warrant was issued. Only then probable cause was finally asserted and a warrant was served to permit the disclosure of the account contents to the government. For some of the accounts a subpoena duces tecum was issued and others it is unclear if further action was taken based upon discovery received in this case.   This government-directed suspicionless seizure cannot be upheld as reasonable under the Fourth Amendment.

## D. THE ENTIRE CONTENTS OF THE LISTED ACCOUNTS MUST BE SUPPRESSED AS FRUITS OF THE POISONOUS TREE.

Defendant believes that the preserved copy of the named accounts was turned over to the Government when it served a warrant or a subpoena duces tecum. Because the Government only had access to each preserved copy as a result of its prior constitutional violations, the entire contents of the named accounts must be suppressed as fruits of the poisonous tree under *Wong Sun v. United States*, 371 U.S. 471 (1963).

Suppression is appropriate when it "results in appreciable deterrence." *Herring v. United States*, 555 U.S. 135, 141 (2009). That is the case here. Suppression is needed to deter massive-scale and ongoing violations of the Fourth Amendment. Every year, hundreds of thousands of Internet accounts are preserved based on the erroneous assumption that 18 U.S.C. § 2703(f)

permits unlimited and suspicionless preservation. *See* Kerr, *Internet Content Preservation*, at 755. Preservation occurs almost entirely in secret, and therefore has gone unchallenged, because governments and Internet providers do not notify their users that preservation has occurred. *See id.* at 771, 775-78. Preservation has occurred on a massive scale nationwide because it has been treated—wrongly, and in the absence of caselaw—as a constitution-free process.

Suppression of the evidence in this case would have a powerful effect "in deterring Fourth Amendment violations in the future." *Herring*, 555 U.S. at 141. A single court ruling could alter practices nationwide. At present, "preservation under § 2703(f) occurs on a wide scale with little scrutiny because law enforcement and providers consider it a privacy non-event." Kerr, *Internet Content Preservation*, at 756. Many if not most preservations that occur today likely violate the Fourth Amendment. A decision from this court suppressing the evidence would be read and digested by both government lawyers nationwide and lawyers at the major Internet providers. A suppression order in this case would force the government to bring its preservation practices into constitutional bounds. It would both limit when investigators seek preservation and trigger provider scrutiny of preservation requests.

A suppression order would have an indirect effect, as well. By identifying constitutional limits on preservation, this court's ruling would encourage providers to disclose preservation to their users, and force governments to disclose preservation to defendants, so that other individuals could more readily litigate potential violations of their Fourth Amendment rights. It is rare that a single court ruling could have such a nationwide impact. But this is such a case. Under Supreme Court precedent, that deterrent effect justifies suppression. *See Herring*, 555 U.S. at 700.

Finally, the good-faith exception of *Illinois v. Krull*, 480 U.S. 340 (1987), poses no barrier to suppression. *Krull* held that the exclusionary rule does not apply "when officers act in objectively reasonable reliance upon a statute authorizing warrantless administrative searches, but where the statute is ultimately found to violate the Fourth Amendment." *Id.* at 342. Officers are entitled to rely on legislative judgments that searches are constitutional, *Krull* reasoned, at least when those legislative judgments are reasonable. *See id.* at 349-50.

*Krull* does not apply because the mistake here belongs to law enforcement instead of Congress. When Congress enacted 18 U.S.C. § 2703(f), it did not make any legislative judgments about what law enforcement seizures

are permitted or when they are constitutional. The preservation statute is not directed to governments at all. The Fourth Amendment governs when a preservation request can be made, and the preservation statute does not say otherwise. The preservation statute merely specifies what providers such as those here must do when a government preservation request is made. "[U]pon the request of a governmental entity," the statute says, "[a] provider . . . shall take all necessary steps to preserve records and other evidence in its possession" 18 U.S.C. § 2703(f)(1).

It may be that investigators erroneously believed that § 2703(f) authorizes unlimited preservation. But, if so, that is a law enforcement mistake that falls outside *Krull*. Because there is no legislative error to defer to, the government cannot rely on *Krull* to avoid suppression. *See United States v. Wallace,* 885 F.3d 806, 811 n.3 (5th Cir. 2018) (noting, in a Fourth Amendment challenge brought to surveillance claimed to be authorized by the Stored Communications Act, that "[t]he holding of *Krull* does not extend to scenarios in which an officer erroneously, but in good faith, believes he is acting within the scope of a statute"); *People v. Madison*, 520 N.E.2d 374, 380 (Ill. 1988) (ruling that *Krull* cannot apply where a "police officer reasonably relies on his own interpretation of a valid statute in conducting a search and seizure"

but courts later reject that interpretation).

Put another way, *Krull* only applies when a legislature enacts an unconstitutional law that law enforcement reasonably followed. Here, however, Congress enacted a perfectly constitutional law. Law enforcement's unconstitutional application of the preservation statute is law enforcement's fault, not the fault of Congress. The exclusionary rule should apply.

## <u>CONCLUSION</u>

For the foregoing reasons, the Defendant respectfully requests that this court suppress all evidence obtained as a result of the unlawful seizure of the listed accounts. In the alternative, this Court should order an evidentiary hearing to determine whether to grant this Motion to Suppress.

Respectfully submitted this 1st day of February 2023.

Respectfully submitted,

A. FITZGERALD HALL, ESQ.
FEDERAL DEFENDER, MDFL

*/s/D. Todd Doss*
D. Todd Doss, Esq.
Assistant Federal Defender
Florida Bar No.0910384
201 S. Orange Avenue, Suite 300
Orlando, FL 32801
Telephone: 407-648-6338
Fax: 407-648-6765
E-Mail: todd_doss@fd.org

–20–

*/s/ Erin Brenna Hyde*
Erin Brenna Hyde, Esq.
Assistant Federal Defender
Florida Bar No.0026248
201 S. Orange Avenue, Suite 300
Orlando, FL 32801
Telephone: 407-648-6338
Fax: 407-648-6095
E-Mail: erin_hyde@fd.org

## CERTIFICATE OF SERVICE

I hereby certify that the undersigned attorney filed the foregoing *Motion*

with the Clerk of Court by using the CM/ECF system, which will send a notice

of electronic filing to all counsel of record this 1st day of February 2023.

/s/ D. Todd Doss
Attorney for Defendant