UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

UNITED STATES OF AMERICA

v.  CASE NO. 2S:19-CR-150-SPC-NPM

ALEX JARED ZWIEFELHOFER

**UNITED STATES' RESPONSE TO DEFENDANT'S MOTION FOR
INFORMATIVE OUTLINE OF SOCIAL MEDIA EVIDENCE**

The United States responds in opposition to the Defendant's Motion for Informative Outline of Social Media Evidence the Government May Seek to Introduce at Trial, Doc. 133. The Defendant cites to no authority requiring the production of an "informative outline" delineating exactly what evidence the United States intends to introduce at trial. Notwithstanding, the United States has recently offered to provide counsel for the Defendant with the page numbers of Facebook records that the United States intends to introduce during the trial, such records having been obtained during the investigation of the Defendant and others. However, such a voluntary disclosure by the United States would not be an agreement to limit the United States to only those records it identifies pretrial, nor an acquiescence to a further motion by the Defendant to allow for a pretrial determination of the admissibility of each statement contained within the records.

1

I.   **Background**

a.   *The Superseding Indictment*

The Defendant, Alex Jared Zwiefelhofer, is charged in a Superseding Indictment with six separate offenses, including, Conspiracy to Interfere with Commerce by Robbery (Count One); Interference with Commerce by Robbery (Count Two); Conspiracy to Use a Firearm During and in Relation to a Crime of Violence (Count Three); Use of a Firearm During and in Relation to a Crime of Violence (Count Four); Conspiracy to Kill, Kidnap, or Maim Persons in a Foreign Country (Count Five); and Violation of the Neutrality Act (Count Six).  Doc. 32. The alleged offenses took place beginning on an unknown date, but no later than in or about February 2018, and continuing through at least in or about August 2018 (Counts One and Three); on or about April 9, 2018 (Counts Two and Four); and beginning on an unknown date, but no later than in or about February 2018, and continuing through at least in or about October 2018 (Counts Five and Six).  *Id.*  The Defendant is alleged to have committed the offenses with a co-defendant, Craig Austin Lang, as well as known and unknown coconspirators.  *Id.*

b.   *Factual Overview of the Superseding Indictment*

On Monday, April 9, 2018, at 10:55 p.m., the Lee County Sheriff's Office (LCSO) received multiple 911 calls for service in reference to reports of rapid gunfire being heard in the area of Cypress Park Circle, Estero, Florida. LCSO deputies responded to the area in which the shots were heard but did not find anything significant. LCSO deputies searched the immediate area, but ultimately cleared the

call for service based upon the fact that they were unable to locate a crime scene.

On Tuesday, April 10, 2018, at 7:14 a.m., the LCSO received a 911 call in reference to a deceased person found at 9351 Corkscrew Road, Estero, Florida, a commercial plaza adjacent to the area in which LCSO deputies responded eight hours earlier for the shots-fired calls for service. Upon arrival at the scene, deputies found a red GMC truck, with multiple gunshot defects, parked in the middle of the plaza. During a cursory search of the immediate area, deputies located an obviously deceased male, suffering from multiple gunshot wounds, lying supine on the ground next to the front passenger side tire of the truck. The male decedent was later positively identified as S.L., Jr. Deputies also found a female decedent, likewise, suffering from multiple gunshot wounds, sitting in the front passenger seat of the truck. The female decedent was later positively identified as D.L.

Upon arrival, homicide detectives conducted a walk-through of the scene, noting that on the ground adjacent to S.L., Jr. was a brown leather wallet, a Florida Driver's License belonging to S.L., Jr., and a bill of sale for a firearms transaction. Based upon the trajectory and precision of the shot groupings at the scene, it appeared that the shooting was perpetrated by at least two suspects; one suspect fired from the rear into the passenger side of the truck where D.L. was seated, and the other suspect fired from the front passenger side of the truck where S.L., Jr. was located.

The LCSO's Forensics Unit also responded to assist with documenting the scene, and processing and collecting the evidence. During processing of the scene,

3

Crime Scene Technicians (CSTs) collected sixty-three spent shell casings to include .9mm and LC 17 rifle casings.

During the preliminary investigation, a cellular telephone belonging to S.L., Jr. was located at the crime scene. After a search warrant was obtained for the electronic contents of the cellular telephone, the contents were downloaded by a LCSO Digital Forensics Specialist. Detectives reviewed the download of the cellular telephone and determined that S.L., Jr. and D.L. left Brooksville, Florida just after 7:00 p.m. on April 9, 2018, and traveled down Interstate 75 to the location of the murders. A review of the download indicated that S.L., Jr. and D.L. had traveled to Estero for the purpose of meeting to purchase firearms listed for sale on an Internet website called ARMSLIST. Specifically, a text message thread showing communication between S.L. Jr.'s cellular telephone and a cellular telephone number believed to be used by the Defendant and Lang was initiated on April 9, 2018, at approximately 12:10 a.m., in response to an ARMLIST posting listing several firearms for sale.

Further investigation revealed that S.L., Jr. had intended to purchase these firearms and re-sell them for a profit. On the day of the homicides, S.L., Jr. withdrew $3,000.00 in U.S. currency from his bank account and had brought the currency with him to Estero to purchase the firearms advertised for sale on the above-referenced ARMSLIST posting, which included the following: (One) Gen 4 Glock 17, (One) Gen 3 Glock 17, (One) Gen 3 Glock 17 with Swenson side treaded (One) barrel, (One) Gen 4 Glock 19, (One) G3HK91 Clone – Federal Arms, (One) Uzi Pistol

4

.9mm – Group Industries, (Four) AR15 5.56 11in Pistol Uppers, (Four) AR15 Lowers – Complete Wilson Combat, and (One) Star Pistol .9mm.

Based on Detectives' review of S.L.'s cellular telephone communications, it appeared as though the suspect(s) traveled to Estero from out of the area, and changed the location of the meeting with S.L., Jr., and D.L. several times prior to luring S.L., Jr., and D.L. to the dark and secluded parking lot at 9351 Corkscrew Road.

The ARMSLIST records revealed that the posting, labeled Post #8204183, was created on April 7, 2018, in Miami-Dade, Florida, and was associated with an email address: jeremygb8441@gmail.com.

Detectives then served a search warrant on Google for information related to the Gmail email address, to include obtaining Internet Protocol (IP) addresses associated with the Gmail account, along with any information that may lead to a residence or identify a suspect. The results showed an IP address associated with the Gmail account in the middle of the bay area of Miami, Florida, the same area that the ARMSLIST posting was created.

Detectives determined that the telephone service provider (TSP) for cellular telephone number (786) 747-9856, which was used by the individual(s) facilitating the firearms transaction with S.L., Jr., was Tracfone Wireless. Additional investigation identified the defendant as being associated with the telephone that was utilizing telephone number (786) 747-9856.

Upon further investigation, it was determined that the Defendant was

5

communicating frequently, as well as making travel arrangements to Miami, Florida, with Craig Lang. As later determined, many of those communications were through Facebook Messenger. Through further research, detectives discovered that the Defendant and Lang began their travels to Florida just prior to the homicides and ultimately traveled to Miami, Florida on April 5, 2018 (just four days prior to the armed robbery and murders).

Beginning on April 5, 2018, through the afternoon of April 9, 2018, prior to the (786) 747-9856 phone pings showing the travel from Miami to Estero, Florida, Lang's cellular telephone ((480) 678-7349) and the Defendant's cellular telephone ((715) 404-0337), were frequently together in the vicinity of the La Quinta Inn, 7401 NW 36th Street, Miami, Florida. Records received from the La Quinta Inn showed that Lang checked into the hotel on April 5, 2018.

Records showed that on April 7, 2018, Lang's cellular telephone number ((480) 678-7349), the defendant's personal cellular telephone number ((715) 404-0337) and the suspect number (786) 747-9856 (using the same telephone as the defendant's personal cellular telephone number), all pinged in the same location, placing the two telephones (the telephone using (480) 678-7349 and the telephone using (715) 404-0337 and later (786) 747-7349), at the La Quinta Inn.

On April 9, 2018, both Lang's cellular telephone and (786) 747-9856 continued to ping together in the Miami area until later that evening. At approximately 7:00 p.m., (786) 747-9856 began to travel; Lang's cellular telephone was presumably turned off at this time as there was no call, text, or ping activity. At

6

approximately 7:48 p.m., (786) 747-9856 began to ping as it traveled out of Miami and headed west towards Southwest Florida. A text message from (786) 747-9856 to S.L., Jr.'s cellular telephone at 8:48 p.m. read, "We should arrive 10:45p-11:00p". The (786) 747-9856 number continued to ping along Alligator Alley (the section of Interstate 75 between Broward County and Collier County) into Naples, arriving near the Corkscrew Road exit for Estero just before 10:00 p.m. At 10:46 p.m., both (786) 747-9856 and S.L., Jr.'s cellular telephone pinged inside the area of the robbery scene. Cellular activity for the device using telephone number (786) 747-9856 ended a short time after the 911 calls were received by the Lee County Sheriff's Office.

Facebook records for the accounts of the Defendant, Lang and others were obtained pursuant to search warrants. The Facebook records revealed numerous conversations between the Defendant, Lang and others pertaining to their intent, plan, preparation, knowledge, and actions in 2018. The communications between these individuals were not veiled in any meaningful way and they openly discussed their plans for their future military expedition and other activity. The Facebook accounts for the Defendant and Lang, in particular, were readily identifiable by the use of their proper names as their Facebook vanity name.

    c.    *Defendant's Motion for Informative Outline*

The Defendant seeks the production of an informative outline of the social media records the United States intends to introduce at trial. Doc. 133. The Defendant does not readily define what an "informative outline" consists of, but suggests the provision of "the social media posts [the United States] intend[s] to

admit . . . ." *Id.* at 2.  In support of the request, the Defendant claims that "[j]ustice would be well-served here by the Government providing the social media posts they intend to admit and (sic) trial and the Court hearing any objections to that evidence pretrial." *Id.* at 2.  The Defendant relies upon Federal Rules of Evidence Rule 104(C)(3) for the request.  *Id.*

    II.    **Argument and Incorporated Memorandum of Law**

Neither the Court's Criminal Discovery Order nor the Rules of Criminal Procedure provide for the "informative outline" that the Defendant seeks the Court to order the United States to provide prior to trial.  For that matter, neither does Rule 104(c)(3) of the Rules of Evidence.  Rule 104(c)(3) relates to the conduct of hearings outside the presence of the jury, not the production of what amounts to a partial exhibit list.  While the United States does not dispute that a large number of social media records were provided to counsel for the Defendant, a reasonable review of such records can readily identify the communications between the Defendant and others that pertain to the conduct charged in the Superseding Indictment.  The Defendant was provided the Facebook records in January of 2020.  *See* Discovery Disclosure, January 29, 2020.  The United States has reviewed the Facebook records and anticipates that between 400 and 500 pages of the records pertain to the conduct charged in the Superseding Indictment.  Such a distilled number of records is not voluminous under the circumstances.

Regardless, the United States is willing to provide a list of pages of the Facebook records it anticipates seeking to introduce at trial two weeks prior to

trial. The United States has not finalized an exhibit list and the review of such records for trial remains an ongoing process subject to change. However, notwithstanding such provision, the United States would reserve the right to use any admissible Facebook record, even if it was not previously identified by the United States as one that it would seek to admit. The nature of trials provides for uncertainty as to the admittance of evidence, the testimony of witnesses and defenses that are presented. The Defendant has not advised the United States of an alibi,[1] nor a theory of defense. Therefore, the United States should not be restricted in seeking the admission of evidence based upon the voluntary pretrial provision of a list of records it seeks to admit.

The Defendant also alludes to a process by which the provision of the "informative outline" would the allow defense counsel to lodge objections via motion and a pretrial hearing. Doc. 133 at 2. The Defendant does not identify on what basis he would object to contents of the Facebook records purporting to be the communications of the Defendant with others, even though he has had those records for years. Moreover, the Defendant is not entitled to such a hearing. *United States v. Van Hemelryck*, 945 F.2d 1493, 1497-98 (11th Cir. 1991)("The district court has discretion to admit the statements subject to proof of these [foundational requirements for admissibility] *during the course of the trial*.")(citing *United States v. Fernandez*, 797 F.2d 943, 945 (11th Cir. 1986), *cert. denied*, 483 U.S. 1006

---

[1] By letter dated January 12, 2023, the United States requested disclosure of an alibi for the Defendant. Fourteen days have elapsed since the request by the United States and no response has been received by the undersigned to date.

(1987)(emphasis added); *see also*, *United States v. Roe*, 670 F.2d 956, 962-64 (11th Cir.) *cert. denied*, 459 U.S. 856 (1982)(holding the trial court's decision not to hold a *James* hearing was not error and the court was not required to find a *James* hearing would be impractical before deciding to forego it).

The United States anticipates introducing the Facebook records containing the statements of the Defendant and others by linking those statements to a conspiracy and violation of the Neutrality Act. Depending upon the order of witnesses at trial who will identify the participants in the communications and witnesses who will establish the existence of a conspiracy, those statements will be introduced as statements by an opposing party pursuant to FRE Rule 801(d)(2). The Court can conditionally accept those statements if the foundational requirements have not been met at the time the statement(s) are offered. *United States v. Miller*, 664 F.2d 826, 827-29 (11th Cir. 1981). However, the United States anticipates that the foundational requirements will be met prior to the introduction of the statements contained within the Facebook records.

While the Defendant claims that a pretrial hearing would obviate a "mini-evidentiary hearing on each piece of evidence" during the trial, Doc. 133 at 2, a pretrial hearing here would essentially become a "mini-trial" of the case prior to the actual trial and would not be an efficient use of the Court's resources. There is no need for a trial before the trial given the anticipated length of the actual trial. For that reason, this Court should reject the suggestion by the Defendant of a pre-trial hearing following the voluntary disclosure by the United States of the

Facebook records it will seek to admit.

## CONCLUSION

For the foregoing reasons, the government respectfully requests that the Court deny the Defendant's motion for informative outline and pretrial hearing.

Respectfully submitted,

ROGER B. HANDBERG
United States Attorney

By: /s/ *Jesus M. Casas*
JESUS M. CASAS
Assistant United States Attorney
Florida Bar No. 0152110
2110 First Street, Suite 3-137
Ft. Myers, Florida 33901
Telephone: (239) 461-2200
Facsimile: (239) 461-2219
E-mail: Jesus.M.Casas@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on February 2, 2023, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following:

D. Todd Doss
Todd_Doss@fd.org

Erin Brenna Hyde
Erin_Hyde@fd.org

                                                /s/ *Jesus M. Casas*
                                                JESUS M. CASAS
                                                Assistant United States Attorney
                                                Florida Bar No. 0152110
                                                2110 First Street, Suite 3-137
                                                Ft. Myers, Florida 33901
                                                Telephone:   (239) 461-2200
                                                Facsimile:    (239) 461-2219
                                                E-mail: Jesus.M.Casas@usdoj.gov