UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

UNITED STATES OF AMERICA

v.   CASE NO. 2S:19-CR-150-SPC-NPM

ALEX JARED ZWIEFELHOFER

**UNITED STATES' RESPONSE TO
DEFENDANT'S MOTION IN LIMINE**

The United States responds in opposition, in part, to the Defendant's Motion *in Limine*, Doc. 139.  As represented by counsel for the Defendant, the United States has agreed not to elicit any testimony regarding the Defendant's pending child pornography charges in North Carolina.  *Id.* at 2.  However, the United States does object to items B, C, D, and E of the Defendant's motion and our response in opposition follows.

I.   **Factual Background**

The defendant, Alex Jared Zwiefelhofer, entered on duty with the United States Army on April 21, 2015, and went Absent Without Leave (AWOL) from the Army on September 27, 2016.  Following his deportation from Kenya, the Defendant reentered the United States on August 2, 2017, at the Charlotte-Douglas International Airport in North Carolina.  The Defendant was interviewed by the Federal Bureau of Investigation (FBI) about his travels abroad and his AWOL status.  Unrelated to the FBI interview, but on that same day, the Defendant was arrested for child pornography charges resulting from images of child sexual exploitation found

1

in his cellular phone upon reentry at the airport. After a period of incarceration and discharge from the military, the Defendant returned to his home in Wisconsin. The Defendant remained under felony indictment in the County of Mecklenburg, North Carolina, having been charged with Third Degree Sexual Exploitation of a Minor, an offense punishable by more than one year of incarceration.

On Monday, April 9, 2018, at 10:55 p.m., the Lee County Sheriff's Office (LCSO) received multiple 911 calls for service in reference to reports of rapid gunfire being heard in the area of Cypress Park Circle, Estero, Florida. LCSO deputies responded to the area in which the shots were heard but did not find anything significant. LCSO deputies searched the immediate area, but ultimately cleared the call for service based upon the fact that they were unable to locate a crime scene.

On Tuesday, April 10, 2018, at 7:14 a.m., the LCSO received a 911 call in reference to a deceased person found at 9351 Corkscrew Road, Estero, Florida, a commercial plaza adjacent to the area in which LCSO deputies responded eight hours earlier for the shots-fired calls for service. Upon arrival at the scene, deputies found a red GMC Canyon truck, with multiple gunshot defects, parked in the middle of the plaza. The truck had a disabled parking permit hanging from the rearview mirror and a disabled veteran vanity plate. During a cursory search of the immediate area, deputies located an obviously deceased male, suffering from multiple gunshot wounds, lying supine on the ground next to the front passenger side tire of the truck. The male decedent was later positively identified as S.L., Jr. Deputies also found a female decedent, likewise, suffering from multiple gunshot wounds, sitting in the

front passenger seat of the truck. The female decedent was later positively identified as D.L.  It was subsequently learned that S.L., Jr. and D.L. were veterans of the U.S. military.  S.L., Jr. was a disabled veteran who bought and sold things for a profit and D.L. was employed at a veteran's hospital near Tampa.

 Upon arrival, homicide detectives conducted a walk-through of the scene, noting that on the ground adjacent to S.L., Jr. was a brown leather wallet, a Florida Driver's License belonging to S.L., Jr., and a bill of sale for a firearms transaction. Based upon the trajectory and precision of the shot groupings at the scene, it appeared that the shooting was perpetrated by at least two suspects; one suspect fired from the rear into the passenger side of the truck where D.L. was seated, and the other suspect fired from the front passenger side of the truck where S.L., Jr. was located.  Extensive crime scene photography, video and 3-D imaging was conducted of the crime scene in order to preserve all observable and relevant evidence.  The autopsies of S.L., Jr. and D.L. were subsequently conducted at the Medical Examiner's Office in Fort Myers where additional images were taken to reflect the cause and manner of death of S.L., Jr. and D.L.

 The Defendant and Craig Austin Lang, his codefendant, came under investigation related to the robbery and murders of S.L., Jr. and D.L.  As more information was gathered by law enforcement authorities, the activities of the Defendant and Lang were scrutinized for additional criminal activity.

 The Defendant subsequently came under investigation related to the attempted purchase of a firearm from a federal firearms licensee, Tilden Guns, on

March 25, 2019. Even though his North Carolina case remained pending, the Defendant answered in the negative when he applied to purchase a handgun from Tilden Guns when the ATF Form 4473 asked whether he was currently under indictment for a felony punishable by more than one year of incarceration. As a result, the Defendant was indicted in the Western District of Wisconsin ("the Wisconsin indictment") with having made the false statement in the 4473 form.

On May 19, 2019, a search warrant was executed at the residence of the Defendant in Bloomer, Wisconsin and he was taken into custody for the Wisconsin indictment. Subsequent to his arrest, the Defendant was interviewed by the FBI and LCSO regarding the events of 2018, in particular the robbery and murders of S.L., Jr. and D.L. Upon the interview being concluded, the Defendant was transported in custody to face the Wisconsin indictment.

## II.   Defendant's Motion in Limine

The Defendant moves *in limine* for an order excluding certain evidence or facts from introduction at trial. Doc. 139. The Defendant identifies five items or categories of evidence it seeks to exclude from the trial. *Id.*

## III.   Argument and Incorporated Memorandum of Law

The Defendant seeks exclusion of evidence pursuant to Federal Rules of Evidence Rules 402 and 403 which will be addressed here in turn as they are labeled in the Defendant's motion.

### A. Any mention of pending charges in North Carolina state court for possession of child pornography.

4

The United States does not object to this request by the Defendant.

### B. Limit gruesome photos and video of S.L. and D.L. at the scene and at their respective autopsies.

The United States objects to the request by the Defendant. While the United States does not intend to introduce all the photographs, video and 3-D imaging that reveal the crime scene and autopsy of S.L., Jr., and D.L., the United States does intend to introduce enough evidence that it believes will satisfy proof of the elements of the offenses, explain the opinions and reasons and bases for opinions and conclusions provided by expert witnesses and otherwise explain the events charged in the Superseding Indictment.

Beyond just a bare claim of cumulativeness and undue prejudice, the Defendant provides no reason for excluding any of these items of evidence. Each of the categories of evidence (photos, video and 3-D imaging), provide a different perspective for a juror to consider and deliberate upon during trial. While each of the categories of evidence may capture the same object or subject matter, they are each unique in their own way and therefore not cumulative.

The Defendant also seeks to limit the introduction of evidence it deems "shocking and gruesome," and further states that only those photographs that have probative value should be introduced. Doc. 133 at 3-4. Additionally, the Defendant requests that the photos be excluded or that the United States identify which photos it will seek to introduce at trial. *Id.* at 4.

The crimes the Defendant stands accused of are shocking and gruesome, and

5

the memorialization of that can be found in the photographs, video and 3-D imaging created during the investigation. However, beyond the catastrophic appearance of the crime scene, there is a narrative that can only be told by those photos, video and 3-D imaging. That is because there was no eyewitness nor video surveillance to reveal the actions that resulted in the deaths of S.L., Jr., and D.L. on April 9, 2018. Even so, the United States will present evidence that it believes will explain what happened on April 9, 2018, balancing the burden the United States carries with the right of the Defendant to a fair trial, absent from sensationalism or undue sympathy for the victims.

    Imagery from the crime scene the United States will seek to introduce that includes both S.L., Jr. and D.L. is probative for a variety of reasons, including, the orientation and location of S.L., Jr. and D.L. when they died, the orientation of gunshot wounds both received, the association of damage to the red GMC Canyon and the respective bodies of S.L., Jr. and D.L. and the locations of the shooters involved. Such evidence is not substantially outweighed by any unfair prejudice that the Defendant can claim based upon the importance of explaining to the jury what happened and how it is believed to have happened on April 9, 2018.

    The United States is willing to provide counsel for the Defendant a list of the evidence that relates to the crime scene and autopsy of S.L., Jr. and D.L. two weeks prior to trial. As noted by the Defendant, any of the evidence the United States seeks to introduce at trial has been previously provided in discovery. However, the United States would reserve the right to use any evidence from the

crime scene or autopsies at trial in light of the uncertainties associated with pre-trial preparation of witnesses and the conduct of a trial, specifically cross-examination.

### C. Any mention of the attempted purchase of a firearm from Tilden Guns and the subsequent ATF interview of Mr. Zwiefelhofer.

The United States does not intend to elicit testimony at trial of the attempted purchase of a firearm from Tilden guns that resulted in the Defendant's indictment in Wisconsin. However, the United States does intend to introduce the interview of the Defendant following his arrest by the ATF that same day on May 23, 2019. The fact of the Defendant's lawful arrest is not in dispute and the United States does not anticipate that the Defendant will claim that he was unlawfully arrested by law enforcement.

With respect to the Defendant's *in limine* request, the United States would point out that the relevant interview of the Defendant was <u>not</u> conducted by the <u>ATF</u>, but rather, an agent from the Federal Bureau of Investigation (FBI) and a homicide detective with the Lee County Sheriff's Office (LCSO). To the extent the Defendant seeks to exclude the post-*Miranda* interview of the Defendant by the FBI/LCSO following his arrest for the firearms violation, the United States would object. The Defendant has not filed a motion to suppress the Defendant's post-*Miranda* interview on May 23, 2019, and the time to do so has expired.

Regardless, the interview of the Defendant did not pertain to the ATF firearms investigation and the interview is relevant to the charges contained within the Superseding Indictment. The interview is admissible as the statement of the

7

Defendant, the opposing party. *See* FRE 801(d)(2)(A).

### D. AWOL from the U.S. Army

The United States intends on introducing evidence that the Defendant abandoned his military post in furtherance of his desire to engage in combat anywhere a conflict would allow him to do so, but specifically Europe and Africa. The United States has provided notice of intent to introduce the Defendant's AWOL status. *See* Doc. 122. The United States has also filed a Motion *in Limine* seeking introduction of the same. Doc. 129. The United States does not intend to elicit testimony regarding the Defendant's "other than honorable" discharge from the military as a result of his military misconduct.

The Defendant was aware of the risk and consequences of going absent without leave (AWOL) in furtherance of his desire to engage in combat. The Defendant's actions in going AWOL relate to his state of mind and such action took place as a series of events that led to the charged conduct in the Superseding Indictment. The fact of the Defendant going AWOL is evidence of his intent to seek combat in a foreign country at a time when he was already in the U.S. Army. That fact is probative of his intent to participate in a military expedition as charged in the Superseding Indictment. It was the Defendant's belief that his career in the U.S. military was over and the absence of combat experience that caused him to disregard the consequences of abandoning his enlistment in search of global conflict. The Defendant's AWOL status was known to others because the Defendant revealed it along with his motivation for going AWOL. Such a fact is

not substantially more prejudicial than probative and should be admitted at trial.

### E. S.L., Jr. and D.L. Veteran Status

The victims in this case, S.L., Jr., and D.L. were veterans of the U.S. military. S.L., Jr. was a disabled veteran as a result of his service. The United States does not intend to elicit testimony to explain S.L., Jr.'s disability, but his status as a disabled veteran is not unduly prejudicial to the Defendant. S.L., Jr.'s being a disabled veteran is part of his work background which the jury should be permitted to learn. S.L., Jr.'s vehicle, a red GMC Canyon truck, was involved in the events that transpired on April 9, 2018. The license plate of the truck displays a disabled veteran vanity plate. From the rearview mirror hung a disabled parking permit. The United States does not intend to make either item a feature of the case and will not elicit testimony about either item.

Likewise, D.L. being a veteran is a part of her work history and should not be excluded from trial. Such a fact does not evoke sympathy and it would not unduly prejudice the jury. At the time of her death, D.L. was also working at a veteran's hospital.

During the trial of the Defendant, the United States anticipates presenting witness testimony about the biographical background of S.L., Jr. and D.L. The testimony would include a very brief description of S.L., Jr.'s and D.L.'s work history as well as S.L., Jr.'s most recent business activity. Such background information would be presented in the context of the fact that S.L., Jr. and D.L. were both attempting to purchase firearms approximately 2 hours away from

home, at 10:00 p.m., in a dark parking lot. Such a scenario might create a misimpression with the jury about S.L., Jr. and D.L. Explaining S.L., Jr.'s and D.L.'s work history would mitigate any negative perception that might be created by the setting of the scene of the crime. The testimony relating to S.L., Jr. will not include when he became disabled, why he was disabled or any further inquiry about his disability.

While the Defendant claims that the mere fact of S.L., Jr. and D.L. being veterans would tend to evoke sympathy or unduly prejudice the Defendant, the United States would suggest such a claim is overstated and does not rise to the level requiring exclusion. The fact is that S.L., Jr. and D.L. were brutally murdered and robbed during a gun transaction. That fact eclipses the contested fact that they were veterans on the day they were murdered. Throughout the trial, the jury will hear that the Defendant served in the U.S. military, and although he was "other than honorably" discharged (a fact the United States will not seek to elicit), the jury will know that the Defendant was also a veteran of the U.S. military. Additionally, witnesses the United States intends to call were in the U.S. military and they knew others associated with this case from that military service. Such a fact of military service, and being a veteran, is simply a background fact that does not unfairly prejudice anyone, including the Defendant.

Background information is admissible under Federal Rules of Evidence Rules 401 and 402, limited only by Rule 403 and excluded where its probative value is substantially outweighed by a danger of unfair prejudice, confusing the issues,

misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence. Determinations of the relevance and admissibility of evidence lie largely in the discretion of the trial court. *United States v. Linetsky*, 533 F.2d 192, 204 (5th Cir. 1976). "The policy of the [Federal Rules of Evidence] is one of broad admissibility, and the generous definition of 'relevant evidence' in Rule 401 was specifically intended to provide that background evidence ... is admissible." *Conway v. Chem. Leaman Tank Lines, Inc.,* 525 F.2d 927, 930 (5th Cir. 1976), *on reh'g*, 540 F.2d 837 (5th Cir. 1976); *United States v. Lepore*, No. 1:15-CR-00367, 2016 WL 4975237, at *5 (N.D. Ga. Sept. 19, 2016); Paul F. Rothstein, *Federal Rules of Evidence Rule 401* (3d ed. Dec. 2015) ("Evidence whose only function is to enable the jury to place the parties and events against a background may not precisely fit the words of the Rule, but is nonetheless liberally allowed.").

The background information pertaining to S.L., Jr. and D.L. as veterans that explains their work history, in part, is not substantially outweighed by the danger of unfair prejudice. Such information will provide the jury with a brief overview of who they were prior to being robbed and murdered.

"Evidence, not part of the crime charged but pertaining to the chain of events explaining the context, motive[,] and set-up of the crime, is properly admitted if linked in time and circumstances with the charged crime, or forms an integral and natural part of an account of the crime, or is necessary to complete the story of the crime for the jury." *United States v. Edouard*, 485 F.3d 1324, 1344 (11th Cir. 2007)(alteration in original). Evidence is linked with the charged crime when it is an

11

"integral and natural part of the witness's accounts of the circumstances surrounding the offenses for which the defendant was indicted . . . even if it tends to reflect negatively on the defendant's character." *United States v. Foster*, 889 F.2d 1049, 1053 (11th Cir. 1989)(internal quotations omitted).

    The Defendant's AWOL status was the result of a calculated decision by the Defendant to abandon his military service in search of an alternative that would provide him with the combat experience he wanted. Having gone AWOL, the Defendant would meet his co-defendant, Craig Lang, who also was engaged in combat oversees and they would continue together from Ukraine, to Kenya, back to the United States and ultimately to Florida with the intent to travel to Venezuela. The chain of events described here all began when the Defendant went AWOL and therefore, the probative value of such evidence is not substantially outweighed by the danger of unfair prejudice.

    "[R]elevant evidence should only be excluded under Rule 403 when there is a genuine risk that the emotions of a jury will be excited to irrational behavior, and this risk is disproportionate to the probative value of the offered evidence." *United States v. Hassan*, 742 F.3d 104, 132 (4th Cir. 2014)(internal quotations omitted).

    The admission of crime scene and autopsy imagery that includes the life-taking injuries sustained by S.L., Jr. and D.L. is essential to a presentation of the entire series of events of April 9, 2018. Such imagery will facilitate the presentation of testimony by expert witnesses the United States intends to call at trial. For that

reason, the United States respectfully submits that the imagery in the form of photographs, video and 3-D imaging should be admitted at trial.

## CONCLUSION

For the foregoing reasons, the government respectfully requests that the Court deny the Defendant's motion *in limine* where the United States has not otherwise agreed or conceded to the Defendant's request.

Respectfully submitted,

ROGER B. HANDBERG
United States Attorney

By:  /s/ *Jesus M. Casas*
JESUS M. CASAS
Assistant United States Attorney
Florida Bar No. 0152110
2110 First Street, Suite 3-137
Ft. Myers, Florida 33901
Telephone:  (239) 461-2200
Facsimile:   (239) 461-2219
E-mail: Jesus.M.Casas@usdoj.gov

## **CERTIFICATE OF SERVICE**

I hereby certify that on February 6, 2023, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following:

D. Todd Doss
Todd_Doss@fd.org

Erin Brenna Hyde
Erin_Hyde@fd.org

/s/ *Jesus M. Casas*
JESUS M. CASAS
Assistant United States Attorney
Florida Bar No. 0152110
2110 First Street, Suite 3-137
Ft. Myers, Florida 33901
Telephone: (239) 461-2200
Facsimile: (239) 461-2219
E-mail: Jesus.M.Casas@usdoj.gov