UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

UNITED STATES OF AMERICA

v.                                                          CASE NO. 2S:19-CR-150-SPC-NPM

ALEX JARED ZWIEFELHOFER

**UNITED STATES' RESPONSE TO DEFENDANT'S
MOTION TO SUPPRESS EVIDENCE OBTAINED
THROUGH UNLAWFUL PRESERVATION**

The United States responds in opposition to the Defendant's Motion to Suppress Evidence Obtained Through Unlawful Preservation, Doc. 141. The Lee County Sheriff's Office (LCSO) request for preservation of social media and cellular telephone records was not a seizure under the Fourth Amendment. Moreover, LCSO never exercised dominion and control over the records they sought to preserve until they obtained a subpoena or search warrant. The business records that were obtained by LCSO were kept in the ordinary course of business by the service providers, were not in the exclusive possession of the Defendant and would not have been destroyed by the time they were produced to LCSO. Finally, LCSO's requests to service providers for preservation of social media and cellular telephone records was statutorily authorized and conducted in good faith during the investigation of the Defendant. As a result, the motion to suppress should be denied.

1

I. **Background**

a. **The Investigation of the Robbery and Murders of S.L., Jr. and D.L.**

On Tuesday, April 10, 2018, at 7:14 a.m., the LCSO received a 911 call in reference to a deceased person found at 9351 Corkscrew Road, Estero, Florida, a commercial plaza adjacent to the area in which LCSO deputies responded eight hours earlier for the shots-fired calls for service.  Upon arrival at the scene, deputies found a red GMC Canyon truck, with multiple gunshot defects, parked in the middle of the plaza.  The truck had a disabled parking permit hanging from the rearview mirror and a disabled veteran vanity plate.  During a cursory search of the immediate area, deputies located an obviously deceased male, suffering from multiple gunshot wounds, lying supine on the ground next to the front passenger side tire of the truck. The male decedent was later positively identified as S.L., Jr. Deputies also found a female decedent, likewise, suffering from multiple gunshot wounds, sitting in the front passenger seat of the truck. The female decedent was later positively identified as D.L.

Upon arrival, homicide detectives conducted a walk-through of the scene, noting that on the ground adjacent to S.L., Jr. was a brown leather wallet, a Florida Driver's License belonging to S.L., Jr., and a bill of sale for a firearms transaction.  Further investigation resulted in the location of a cellular telephone under the body of S.L., Jr.  The cellular telephone was collected and taken to the LCSO Digital Forensic Unit for further analysis.  Until the cellular telephone was

successfully downloaded, little to no information was available to law enforcement to understand why S.L., Jr. and D.L. were in Estero on the date of their murders. The investigation of the robbery and murders of S.L., Jr. and D.L. was complex and would last for months as pieces of evidence were gathered. At its inception, it was unknown how long the investigation could take given that there was no eyewitness, no surveillance video and no immediate suspects.

As investigators began to review the downloaded information from the cellular telephone of S.L., Jr., they were able to piece together the reason for his presence in Estero on April 9, 2018 – a gun transaction based upon an Armslist advertisement for the sale of numerous firearms. Further investigation revealed that the Armslist posting was associated with a Google e-mail and cellular telephone number (786) 747-9856.

On April 10, 2018, a search warrant was served on AT&T for (786) 747-9856 seeking subscriber information, records and other data. The search warrant return revealed that telephone number (786) 747-9856 had been issued by TracFone[1] and was being used by a cellular device with a specific International Mobile Equipment Identity (IMEI), 3585330514168026. No preservation request was submitted to AT&T prior to this search warrant.

On April 11, 2018, a search warrant was served on TracFone Wireless seeking

---

[1] TracFone is a Mobile Network Virtual Operator that leases network access from other carriers, including AT&T, Sprint, Verizon and T-Mobile, and resells it to cellular telephone users. Fred Decker, *How to Determine Which Carrier a TracFone Uses*, Updated September 3, 2019, https://www.techwall.com/articles.

subscriber information, records and data for telephone number (786) 747-9856. No preservation request was submitted to TracFone Wireless prior to this search warrant. A response to the search warrant was received on April 13, 2018, which revealed to investigators that cellular telephone number (786) 747-9856 was associated with a SIM kit purchased in Miami and had been activated on April 7, 2018. The device utilizing telephone number (786) 747-9856 was active through the date of the murder.

On January 28, 2019, LCSO issued several preservation letters to cellular service providers[2], including AT&T, Sprint, T-Mobile and Verizon. Relevant to the investigation, a preservation letter[3] was sent on January 28, 2019, to AT&T Wireless, for IMEI No. 3585330514168026, IMSI No. 310410969230354.

Two days later, on January 30, 2019, LCSO obtained and served AT&T with a State Attorney's Office subpoena[4] for non-content record information for IMEI 3585330514168026.

On February 10, 2019, pursuant to the subpoena issued on January 30, 2019, AT&T provided information for IMEI 3585330514168026 which revealed that the

---

[2] Preservation letters were sent to all the major cellular service providers to ensure that any service provider associated with the particular IMEI, phone number or IMSI was identified. Only the service provider who had <u>actually</u> provided service to the IMEI, phone number or IMSI was then the subject of a search warrant or State Attorney's Office subpoena. Consequently, no warrant would have been provided in discovery for those service providers (Sprint, T-Mobile, and Verizon) who did not provide any service to the particular IMEI, phone number or IMSI.

[3] The Defendant appended this preservation letter to his motion. *See* Doc. 141, Appendix A.

[4] The Defendant's motion incorrectly attributes a search warrant to "1. AT&T Wireless -2659588 – IMEI3585330514168026 and IMSI No. 310410969230354 Search Warrant 14609 was served on February 13, 2019." Doc. 141 at 7. In reality, the legal process was a State Attorney's Office subpoena that was served on January 30, 2019. *See* Attachment 1.

device, whose IMEI was 3585330514168026, had been used by telephone number (715) 404-0337 until April 7, 2018, and thereafter, the device was used for telephone number (786) 747-9856 through the date of the murders.

On February 12, 2019, a preservation letter[5] was sent to AT&T for telephone number (715) 404-0337.

On February 13, 2019, <u>one day</u> after the preservation letter was sent to AT&T for telephone number (715) 404-0337, a search warrant was served on AT&T for the content and non-content information for telephone number (715) 404-0337[6].

On that <u>same day</u>, at 6:55 a.m., a preservation letter was sent to Facebook, via their Law Enforcement Online Request System, for the account bearing vanity name "Alex.zwiefelhofer1."[7]

Later that <u>same day</u>, at 4:28 p.m., a search warrant was served on Facebook for the account being vanity name "Alex.zwiefelhofer1."[8]

On February 21, 2019, AT&T provided records for (715) 404-0337 pursuant to the search warrant that was authorized on February 13, 2019.

On February 28, 2019, a preservation letter was sent to T-Mobile for cellular telephone number (715) 440-1205.[9]

On March 8, 2019, Facebook provided records in response to the search

---

[5] The Defendant's motion, Doc. 141 at 1 - #5, incorrectly notes that this preservation letter was submitted on January 28, 2019, and includes an incomplete IMEI number. No IMEI number was listed on the preservation letter.  *See* Doc. 141, Appendix E.
[6] The Defendant appended this search warrant to his motion.  *See* Doc. 141, Appendix H.
[7] The Defendant appended proof of this request to his motion.  *See* Doc. 141, Appendix F.
[8] The Defendant appended this search warrant to his motion.  *See* Doc. 141, Appendix I.
[9] The Defendant appended this preservation letter to his motion.  *See* Doc. 141, Appendix G.

warrant served on February 13, 2019.

On March 21, 2019, a search warrant was served on T-Mobile for cellular telephone number (715) 440-1205.[10]

On April 6, 2019, T-Mobile provided records in response to the search warrant served on March 21, 2019.

### b. Defendant's Motion to Suppress

The Defendant moves to suppress records obtained by State Attorney's Office subpoenas and search warrants that were maintained by service providers who had been requested by LCSO, pursuant to 18 U.S.C. § 2703(f), to preserve the records. Doc. 141. The Defendant claims that an unlawful seizure occurred when, in response to the preservation letters LCSO sent, the service providers copied telephone and social media records for accounts that belonged to the Defendant, in the absence of a search warrant and interfered with his possessory interests in the records. *Id.* 2-7.

## II.    Argument and Incorporated Memorandum of Law

The Stored Communications Act ("SCA"), 18 U.S.C. §§ 2701-13, provides the framework by which law enforcement investigators seek and obtain records of communications maintained by third party electronic communication service providers ("ECSP" or "service providers").  Relevant here, cellular telephone

---

[10] The Defendant's motion, Doc. 141 at 7 - #7, incorrectly notes that the search was warrant was served on February 13, 2019. The warrant was served on March 21, 2019. The Defendant appended this search warrant to his motion. *See* Doc. 141, Appendix K.

providers such as AT&T and T-Mobile are ECSP. So are social media companies, including Facebook and Instagram. ECSPs maintain both content and non-content information in their records in the ordinary course of their business practice for periods of time, often referred to as retention periods. It is well known that law enforcement investigators utilize the SCA to promote investigations of criminal offenses by seeking content and non-content information from ECSPs.

Within the SCA, Title 18, United States Code, Section 2703(f) provides that:

(f) Requirement to preserve evidence.

    (1) In general.---A provider of wire of electronic communication services or a remote computing service, upon the request of a governmental entity, shall take all necessary steps to preserve records and other evidence in its possession pending the issuance of a court order or other process.

    (2) Period of retention.---Records referred to in paragraph (1) shall be retained for a period of 90 days, which shall be extended for an additional 90-day period upon a renewed request by the governmental entity.

The focus of the Fourth Amendment analysis here is whether an unlawful seizure occurred when LCSO submitted letters to ECSPs, more particularly, AT&T, T-Mobile, Facebook and Instagram, containing requests for preservation of business records that were created as a result of the Defendant's use of the service provider. If the Defendant cannot establish that an unreasonable seizure occurred here, then he cannot establish a Fourth Amendment violation and the motion fails. But even if the Defendant could establish that a seizure occurred here, the Defendant cannot establish that such a seizure is unreasonable under the

Fourth Amendment.

### a. The Defendant Cannot Establish that a Preservation Request to an ECSP is a Seizure Under the Fourth Amendment.

The Fourth Amendment protects individuals from the unlawful search and seizure of their private papers. Const. Amend. IV. It is well established that "meaningful interference" with the possessory interests of an individual in his property is a Fourth Amendment seizure. *United States v. Jacobsen*, 466 U.S. 109, 113, 104 S.Ct. 1652, 1656, 80 L.Ed.2d 85 (1984). However, such interference must be actual, not just technical. *United States v. Karo*, 468 U.S. 705, 712, 104 S.Ct. 3296, 3302, 82 L.Ed.2d 530 (1984). Here, the Defendant has failed to show that a Fourth Amendment seizure occurred when LCSO submitted a preservation letter to the service providers. The Defendant claims that "[i]n response to [the preservation] requests, the providers diligently searched and *copied* relevant accounts. These providers then *set aside* copies and *held them* for the government." Doc. 141 at 6-7 (emphasis added). The records obtained from the service providers do not support the Defendant's claim of a seizure.

First, the LCSO preservation requests were made pursuant to 18 U.S.C. § 2703(f) and simply requested *preservation* of the records, not copying or any other act by the service provider, including setting aside or holding. The letters submitted by LCSO were drafted to include the language that the service providers require by law, namely, 18 U.S.C. § 2703(f). The letters follow the language of 18 U.S.C. § 2703(f) and contemplate a time period of preservation per the statute and

8

additional legal process for the records to be actually provided to LCSO.

Second, the Defendant claims that the providers copied, set aside and held the records that were the subject of the preservation requests by LCSO. However, the Defendant fails to provide any proof that AT&T, T-Mobile, Facebook or Instagram did any of those three acts (copy, set aside or hold) in response to the *preservation requests*. There is no dispute that such actions (copy, set aside, or hold) were taken subsequent to a subpoena or search warrant, but that is not the focus here.

Here, the records provided to LCSO belie the claim by the Defendant. AT&T created the records provided to LCSO on February 5 and 20, 2019, after AT&T had received either a subpoena (on January 30, 2019 – Attachment 1) or search warrant (on February 13, 2019). *See* Attachment 2, (Run Date: 02/05/2019), Attachment 3, (Run Date: 02/20/2019). The Facebook business records for vanity name Alex.zwiefelhofer1 reflect that they were generated on March 4, 2019, after Facebook had been served with a search warrant on February 13, 2019. *See* Attachment 4. The Instagram business records for vanity name "az4721" reflect that they were generated on April 5, 2019, after a search warrant had been served on Instagram on March 21, 2019. *See* Attachment 5. The T-Mobile business records for (715) 440-1205 were provided on April 6, 2019, after the search warrant was served on March 21, 2019.

Third, each of the service providers have record retention periods that would have resulted in the keeping or holding of those records beyond the time when they

9

were provided to LCSO.  AT&T retains its records for five years; T-Mobile retains its records for two years.  Rob Pegoraro, *Apple and Google Remind You About Location Privacy, But Don't Forget Your Wireless Carrier,* (November 23, 2019), https://www.usatoday.com/story/tech/columnist/2019/11/23/location-data-how-much-do-wireless-carriers-keep/4257759002/,.  Facebook retains user data for 90 days after account deletion by a user.  Jason Cipriani, Katie Teague, *Deleting Facebook? Follow These Steps Carefully,* (February 24, 2022, originally published on April 11, 2019), https://www.cnet.com/tech/services-and-software/deleting-facebook-follow-these-steps-carefully/.  Instagram also has a 90-day retention period following deletion.  *Delete Your Instagram Account*, https://help.instagram.com/139886812848894?helpref=hc_fnav (last visited Feb. 10, 2023)

At the time of the request to the service providers, the Defendant did not have exclusive possession or ownership of the business records which were kept by the service providers in the ordinary course of their business.  Here, the Defendant had a limited ability to exercise dominion and control over the records.  Moreover, the Defendant does not claim that he actually tried to destroy his records for any of the service providers that received preservation letters and the period of retention of those records had not lapsed at the time that LCSO submitted its preservation requests or legal process to the service providers.

The Defendant claims that he could "alter his files, and he could delete his files as he wished."  Doc. 141 at 12.  While he could delete them, even if he had,

which here he did not, the service providers would have retained the records for several months, if not years, per their retention policies. The time frame that those records were retained fell within the time frame that LCSO requested preservation and subsequent legal process was obtained. In other words, the Defendant only had a limited ability to destroy his records based upon the retention policies of the service providers, regardless of the requests for preservation by LCSO.

Here, the Defendant could have thrown away his cellular device with a SIM card he purchased at Walmart in Miami to carry out the robbery and murders, but the records associated with the use of that cellular telephone, as maintained by the service provider, could not be destroyed or completely deleted during the period of record retention. Those records would exist through the period of time that a service provider retains them, regardless of the actions of the Defendant who uses the service. As a result, the Defendant cannot establish a meaningful interference with his possessory interests in those records.

The Defendant has the burden of establishing that a Fourth Amendment seizure resulted from the actions of LCSO in submitting the preservation letter and he has failed to do so. The Defendant has not proven how his ability to possess the records was affected in any meaningful way by the preservation requests.

To establish that the service providers copied the records upon receiving the preservation requests, the Defendant relies upon a law journal article. *See* Doc. 141 at 6 (citing Kerr, The Fourth Amendment Limits of Internet Content Preservation, 65 St. Louis U.L.J. 753, 772 (2021). The Defendant fails to identify and does not

11

attach any record pertaining to this case to support his claim that the records were copied upon the preservation request being submitted. Even if the Defendant could prove the records were copied at the time of the preservation request, the records were not disclosed to LCSO until additional legal process was provided to the service provider. Making a copy of records to be <u>kept by the service provider</u> is not meaningful interference with the Defendant's possessory interest in those records, especially when those records are maintained by the service provider anyway. As a result, the Defendant has failed to carry his threshold burden and the Defendant's motion should be denied.

### b. LCSO acted in good faith reliance upon the provisions of the SCA, including 18 U.S.C. § 2703(f).

Even if the Court expands the boundaries of a constitutional seizure to the mere request by law enforcement for preservation of records maintained by a service provider during a period of record retention, the Court should deny the Defendant's motion because LCSO acted in reasonable reliance upon 18 U.S.C. 2703(f) when it requested such preservation. *See United States v. Warshak*, 631 F.3d 266, 274, 282 (6th Cir. 2010)(holding that good faith reliance upon provisions of the Stored Communications Act precluded application of the exclusionary rule). "The application of the exclusionary rule to suppress evidence obtained by an officer acting in objectively reasonable reliance on a statute would have [] little deterrent effect on the officer's actions . . . ." *Illinois v. Krull*, 480 U.S. 340, 349 (1987). An officer whose reliance upon a statute is objectively reasonable should not result in

the exclusion of evidence even if that statute is later found to be unconstitutional. *Id.* at 357-59.

In *Warshak*, the Sixth Circuit considered the application of the exclusionary rule in the context of law enforcement's warrantless seizure of e-mails from an internet service provider pursuant to the SCA. *Id.* at 282. In particular, law enforcement had compelled[11] the service provider to provide the contents of *Warshak's* e-mails without a search warrant, but under the statutory authority of 18 U.S.C. § 2703(b) and (d). *Id.* at 284. The Court considered the purpose of the exclusionary remedy sought by *Warshak*, the conduct of law enforcement which included violations of provisions of the SCA and concluded that exclusion was unwarranted in light of the good faith reliance by law enforcement upon the statute. *Id.* at 289-292.

Suppression of records obtained pursuant to a statute that was in effect at the time the preservation requests were made would be an unreasonable application of the exclusionary rule. No deterrence of law enforcement action would be gained from a scenario in which law enforcement's actions were permitted contemplated by a statute. The suggestion by the Defendant that LCSO made the mistake here, rather than Congress, is unsupported by the plain language of 18 U.S.C. § 2703(f). Doc. 141 at 18-20. The statute contemplates the preservation request from law

---

[11] Notably, but ultimately irrelevant to the Court's analysis involving good faith reliance, law enforcement in *Warshak* had submitted a *prospective* preservation request that resulted in records being kept beyond the normal period of retention by the service provider. *Warshak* at 290.

13

enforcement.  While it does not say when such a request can be made, the Defendant claims that the Fourth Amendment governs when a preservation request can be made.  *Id.* at 19.  But there is no Fourth Amendment jurisprudence to guide law enforcement when the request for preservation can be made and the Defendant certainly does not cite to any.  If Congress made a mistake in not specifically delineating when preservation is permissible, then such a legislative mistake should not require suppression.  Such an action by the Court would essentially require law enforcement to second guess all lawful process and undermine investigations as a result.  Fourth Amendment jurisprudence does not support such an action and this Court should decline the invitation by the Defendant.  This Court should conclude that LCSO's actions in seeking preservation pursuant to statute was reasonable and therefore the records obtained should not be suppressed.

    Here, LCSO requested preservation of retrospective records from a service provider pursuant to a statute that they had no reason to believe was subject to constitutional challenge.  LCSO was well within their right to seek preservation of such records as a result.  LCSO did not ask nor compel the service providers to provide the records without further legal process.  They also did not ask for the records to be kept beyond the period of retention implemented by the service providers.  LCSO thereafter quickly obtained legal process following the preservation requests.  The shortest period of time between a preservation request and search warrant was approximately 10 hours (to Facebook) and the longest

14

period of delay was 21 days (to T-Mobile). However, even 21 days of delay has not been found to be unreasonable in the context of seizures and subsequent searches of devices. *See United States v. Laist*, 702 F.3d 608, 616 (11th Cir. 2012)(finding no unreasonable delay based upon the lapse of 25 days between seizure and search of a hard drive). Here, there was no unreasonable delay between the preservation requests and subsequent legal process in the context of a very complex investigation, involving unknown suspects, and multiple sources of records to be obtained and reviewed. At all times, LCSO acted diligently and in good faith. For those reasons, the motion should be denied.

### c. The Defendant's Request for an Evidentiary Hearing Should Be Denied.

The Defendant's request for an evidentiary hearing should be denied. The Defendant, having failed to carry his burden to establish a seizure under the Fourth Amendment, is not entitled to a hearing. *See United States v. Sneed*, 732 F.2d 886, 888 (11th Cir. 1984). Even if the Court concludes that such burden was met by the Defendant, the actions of LCSO in seeking preservation of records pursuant to statute were objectively reasonable and does not require any further evidentiary development. For these reasons, the Court should deny the request for an evidentiary hearing.

## CONCLUSION

For the foregoing reasons, the government respectfully requests that the Court deny the Defendant's motion to suppress based upon the preservation requests made by the Lee County Sheriff's Office.

                Respectfully submitted,

                ROGER B. HANDBERG
                United States Attorney

By:    */s/ Jesus M. Casas*
        JESUS M. CASAS
        Assistant United States Attorney
        Florida Bar No. 0152110
        2110 First Street, Suite 3-137
        Ft. Myers, Florida 33901
        Telephone:  (239) 461-2200
        Facsimile:   (239) 461-2219
        E-mail: Jesus.M.Casas@usdoj.gov

## **CERTIFICATE OF SERVICE**

I hereby certify that on February 10, 2023, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following:

D. Todd Doss
Todd_Doss@fd.org

Erin Brenna Hyde
Erin_Hyde@fd.org

            /s/ *Jesus M. Casas*
            JESUS M. CASAS
            Assistant United States Attorney
            Florida Bar No. 0152110
            2110 First Street, Suite 3-137
            Ft. Myers, Florida 33901
            Telephone: (239) 461-2200
            Facsimile: (239) 461-2219
            E-mail: Jesus.M.Casas@usdoj.gov