UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

UNITED STATES OF AMERICA

     v.                       CASE NO. 2S:19-CR-150-SPC-NPM

ALEX JARED ZWIEFELHOFER

## UNITED STATES OF AMERICA'S RESPONSE IN OPPOSITION TO MOTION TO SUPPRESS STATEMENTS

The United States of America responds in opposition to the Defendant's

Motion to Suppress Statements (Doc. 140).  The Defendant's motion should be

denied because it is based on a false premise:  that Zwiefelhofer invoked his right

to any attorney during an August 1, 2017 interview with two FBI agents.  The

United States is prepared to introduce the testimony of those two agents, as well

as other law enforcement officers, to prove the falsity of his allegation and the lack

of merit in his motion.

## Facts

On August 1, 2017, Zwiefelhofer landed at the Charlotte Douglas

International Airport in North Carolina on a flight from London, England. After

being removed from the plane by Customs and Border Patrol (CBP) agents, his

luggage and phone was searched pursuant to their border search authority, and he

was asked routine questions about his identity and travels based upon his reentry

into the United States.[1]

---

[1] The United States does not intend to introduce answers provided by the Defendant to

Zwiefelhofer was then taken to a room in what is called the "secondary" customs inspection area of the airport, which is used to question foreign travelers coming into the United States.  FBI agents Kristen Sheldon and Michael Newsom[2] arrived at the secondary inspection area to interview Zwiefelhofer.  The purpose of their interview was to assess Zwiefelhofer's threat to the United States given his participation in foreign combat.

When Sheldon and Newsom arrived at the interview room, Zwiefelhofer was not in handcuffs.  Sheldon noted that Zwiefelhofer was eating food that he been provided by other law enforcement officers.  Zwiefelhofer remained unrestrained through the entirety of his encounter with Sheldon and Newsom.  Sheldon recalled Zwiefelhofer sitting with his back to the door of the interview room, which remained open during the interview.

Before the interview began, Newsom advised Zwiefelhofer of his *Miranda* rights.  Then, according to Newsom and Sheldon, Zwiefelhofer answered questions about a variety of topics related to his foreign travel, including his recent activities as they related to the wars in Ukraine and Sudan.  Sheldon and Newsom will both testify that Zwiefelhofer never invoked his right to remain silent or his right to an attorney.  To the contrary, both will state that Zwiefelhofer seemed quite forthcoming with information during the lengthy interview, even noting that "I was waiting for this" as the interview began.  Moreover, both will testify that if

---

these questions in its case-in-chief.

[2] Newsome was a CBP agent who doubled as an FBI task force officer.

Zwiefelhofer had asked for an attorney or invoked his right to remain silent, they would have terminated the interview with no further questions.

There were two topics on which Zwiefelhofer appeared hesitant or outright refused to answer questions. Zwiefelhofer was asked whether he had ever fired his weapon at anyone during his time in foreign combat. He initially sidestepped the question by asking, "is it legal for me to do so," before explaining that he was a medical volunteer who only shot weapons for training purposes. Zwiefelhofer also declined to provide the FBI agents with any biographical information about his "wife," other than she was 27 years old and that their marriage could not become official until he could prove to the Ukrainian government that he was not already married in the United States.

After Sheldon and Newsom's threat assessment interview, Zwiefelhofer was interviewed by Charlotte-Mecklenburg Police Department detective Aleta Dunbar (who was also an FBI TFO) and Homeland Security Investigations Special Agent Jim Burns. Burns and Dunbar conducted the interview because the border search of Zwiefelhofer's phone had revealed images of suspected child pornography.

Before the interview began, Zwiefelhofer was presented with a form listing his *Miranda* rights. Zwiefelhofer placed his initials next to each right (*e.g.* next to the statement "I have the right to remain silent") and ultimately signed below the statement: "I understand my rights as explained by Officer/Detective A. Dunbar. I now state that I DO wish to answer questions at this time." After waiving his rights on the written form, Zwiefelhofer answered questions in which he admitted

3

to knowing that his phone contained images of child pornography, though he claimed that he had received the pictures through a group chat and had deleted, rather than saved them.  Zwiefelhofer further claimed that he had no sexual interest in children.

Detective Dunbar will testify that no one, including Zwiefelhofer, indicated that he had previously invoked his *Miranda* rights in any prior interview. Moreover, Dunbar will testify that Zwiefelhofer never invoked his *Miranda* rights in her interview with him regarding child pornography.  To the contrary, Zwiefelhofer was forthcoming with information in his interview despite the subject matter.  Dunbar will also testify that if she had heard from another individual that Zwiefelhofer had invoked his *Miranda* rights in an earlier interview, she would not have conducted her own; likewise, Dunbar would have terminated her own questioning if Zwiefelhofer had invoked his rights during it.

### Defendant's Motion to Suppress Statements

Referencing his interview with Sheldon and Newsom, Zwiefelhofer claims he "unequivocally asked for a lawyer after he was read the *Miranda* warnings and was told he was not leaving until he talked to them."  Thus, he believes the question-and-answer session which followed violated his "Fifth Amendment protections against self-incrimination."  Accordingly, the Defendant asks to suppress "any and all statements which he made on August 2, 2017, to law

enforcement agents at Charlotte Douglas International Airport."[3]

**<u>Argument</u>**

The Fifth Amendment provides that ""[n]o person ... shall be compelled in any criminal case to be a witness against himself." U.S. Const. Amend. V.  Since *Miranda v. Arizona*, 384 U.S. 436 (1966), a defendant's statements made during a custodial interrogation may not be used against him in a court unless the government first advises the defendant of certain rights.  *See id.* at 479.  Statements made by a defendant after a voluntary, knowing, and intelligent waiver of his *Miranda* rights are otherwise admissible.  *See United States v. Barbour*, 70 F.3d 580, 585 (11th Cir. 1995).  Such a waiver may be explicit, or it may be implied by the defendant's actions and words.  *See North Carolina v. Butler*, 441 U.S. 369, 373–76 (1979). Simply answering questions in a non-coercive interview after being given a clear explanation of the *Miranda* rights has been found to constitute a waiver of those rights.  *See Berghuis v. Thompkins*, 560 U.S. 370, 386-87 (2010).

In this case, Zwiefelhofer admits he was given *Miranda* warnings during his interview with FBI agents Sheldon and Newsom.  He claims asked for an attorney and invoked his rights; the government claims he didn't and waived them.  Thus, the Court is faced with a credibility question on a narrow issue:  did Zwiefelhofer invoke his rights or waive them?[4]

---

[3] As it relates to statements made at the airport to law enforcement officers, the United States only intends to introduce Zwiefelhofer's statements made to Sheldon and Newsom during its case-in-chief at trial.

[4] While the necessity of *Miranda* warnings turns on whether an interrogation is "custodial,"

5

The answer to that question is clear. He waived them. Sheldon and Newsom will testify that Zwiefelhofer never asked for an attorney and that he willingly answered questions about a variety of topics after being read the rights off a standardized form. Zwiefelhofer's answers to questions were detailed and wide-ranging in a manner which suggests an openness to communication, not someone who was reluctant to speak. *See* Doc. 140 at pp. 25-31 (containing FBI interview report detailing topics of conversation as varied as Army Ranger School, Ukraine, Kenya, his disdain for "Jews," "jihadis," and the "British," back pain, and squirrel hunting as a child).

Tellingly, Zwiefelhofer did decline to speak about a topic, namely his wife, and the FBI noted so in its report. Zwiefelhofer's decision not to answer questions about his wife, and the agents respect for that decision, belies his claim that he didn't want to answer questions about anything without an attorney, and that he only did so because the FBI forced him.

The evidence demonstrates that Zwiefelhofer was a person willing to answer questions about a wide variety of topics without a lawyer, that the agents were conducting the interview by the book, and that he could have stopped the

---

a court need not consider matters of custody where a defendant's *Miranda* rights were adequately conveyed and respected. *See United States v. Woods*, 684 F.3d 1045, 1055 (11th Cir. 2012) (noting that "the district court never reached the issue of custody, and neither do we" before holding that evidence need not be suppressed on *Miranda* grounds). In this case, the United States does not concede that the questioning of Zwiefelhofer was custodial. However, Zwiefelhofer's motion is more efficiently and squarely addressed by focusing on the inadequacy of his claim that he asked for an attorney.

questioning at any time he wanted, but he didn't.

That conclusion is buttressed by the subsequent interview of Zwiefelhofer by Dunbar and Burns regarding child pornography.  At the outset of that interview, Zwiefelhofer signed a waiver of his *Miranda* rights form and then openly discussed the pictures of child pornography on his phone.  Dunbar will testify that Zwiefelhofer was forthcoming in the interview and did not invoke his *Miranda* rights at any time.  His actions were inconsistent with a person who had asked for an attorney in an interview just moments before.

To believe the Defendant's version of events requires one to abandon common sense and accept the following: Zwiefelhofer was read his *Miranda* rights in the Newsom and Sheldon interview, then he unequivocally demanded an attorney, then he was railroaded into answering questions by two FBI agents, then he talked with those two agents about events ranging from his childhood hunting activities to his present day mercenary work, but he also took a stand and refused to answer questions about something as un-incriminating as the name of his wife, then he met with two more law enforcement officers, initialed and signed a *Miranda* waiver form, then answered questions implicating himself in the possession of perhaps the most notorious criminal contraband in existence, child pornography.  It just doesn't add up.

Accordingly, the United States of America requests an evidentiary hearing so that it may present its evidence and demonstrate that Zwiefelhofer's claim about invoking his right to an attorney is baseless.

7

## **Conclusion**

For the foregoing reasons, the government respectfully requests that the

Court deny the Defendant's motion to suppress statements after a hearing on the

matter.

Respectfully submitted,

ROGER B. HANDBERG
United States Attorney

Michael V. Leeman
Assistant United States Attorney
Florida Bar No. 84422
2110 First Street, Suite 3-137
Ft. Myers, Florida 33901
Telephone:   (239) 461-2200
Facsimile:    (239) 461-2219
Michael.leeman@usdoj.gov

8

## CERTIFICATE OF SERVICE

I hereby certify that on February 15, 2023, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following:

D. Todd Doss
Todd_Doss@fd.org

Erin Brenna Hyde
Erin_Hyde@fd.org

Michael V. Leeman
Assistant United States Attorney
Florida Bar No. 84422
2110 First Street, Suite 3-137
Ft. Myers, Florida 33901
Telephone:   (239) 461-2200
Facsimile:    (239) 461-2219
Michael.leeman@usdoj.gov