UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

UNITED STATES OF AMERICA

v.                                              CASE NO. 2S:19-CR-150-SPC-NPM

ALEX JARED ZWIEFELHOFER

**UNITED STATES' RESPONSE TO DEFENDANT'S
MOTION TO DISMISS INDICTMENT OR, IN THE
ALTERNATIVE, FOR GRAND JURY TRANSCRIPTS**

The United States responds in opposition to the Defendant's Motion to Dismiss Indictment or, In the Alternative, For Grand Jury Transcripts, Doc. 138. The untruthful testimony by Dameon Adcock ("Adcock") before the grand jury that returned the original and superseding indictment charging the Defendant, Alex Jared Zwiefelhofer, is neither a reason to dismiss the indictments nor to allow for the Defendant to receive copies of the entirety of the grand jury proceedings.  The Defendant's claim that "[t]he[] indictments were based, in part, on the untruthful testimony of [] Adcock . . . ." is baseless, given that neither what Adcock lied about in his grand jury testimony, nor what he later admitted to being the truth, implicated the Defendant.  In fact, the untruthful testimony by Adcock obstructed the grand jury investigation by suggesting that Adcock had not received firearms from Craig Lang ("Lang"), when in truth, Adcock had received firearms from Lang.  Only subsequent investigation confirmed that Adcock had lied to the grand jury and thus he was prosecuted separately for that offense.

1

Regardless, the Defendant cannot establish prejudice as a result of Adcock's false statement to the Grand Jury. As a result, the motion to dismiss should be denied.

The Defendant's request for a transcript of the entirety of the grand jury proceedings fails to identify a particularized need for the transcripts and is a veiled request to invade the secrecy of the grand jury proceedings, even after those proceedings have concluded. The need to maintain the secrecy of the proceedings for this case, as well as future cases, outweighs the Defendant's desire "to provide him with material necessary to his defense" and therefore, the request should be denied.

## I.   Background

On Tuesday, April 10, 2018, at 7:14 a.m., the LCSO received a 911 call in reference to a deceased person found at 9351 Corkscrew Road, Estero, Florida, a commercial plaza adjacent to the area in which LCSO deputies responded eight hours earlier for the shots-fired calls for service. Upon arrival at the scene, deputies found a red GMC Canyon truck, with multiple gunshot defects, parked in the middle of the plaza. The truck had a disabled parking permit hanging from the rearview mirror and a disabled veteran vanity plate. During a cursory search of the immediate area, deputies located an obviously deceased male, suffering from multiple gunshot wounds, lying supine on the ground next to the front passenger side tire of the truck. The male decedent was later positively identified as S.L., Jr. Deputies also found a female decedent, likewise, suffering from multiple gunshot wounds, sitting in the front passenger seat of the truck. The female decedent was

later positively identified as D.L.

Upon arrival, homicide detectives conducted a walk-through of the scene, noting that on the ground adjacent to S.L., Jr. was a brown leather wallet, a Florida Driver's License belonging to S.L., Jr., and a bill of sale for a firearms transaction. Further investigation resulted in the location of a cellular telephone under the body of S.L., Jr. The cellular telephone was collected and taken to the LCSO Digital Forensic Unit for further analysis. Until the cellular telephone was successfully downloaded, little to no information was available to law enforcement to understand why S.L., Jr. and D.L. were in Estero on the date of their murders. The investigation of the robbery and murders of S.L., Jr. and D.L. was complex and would last for months as pieces of evidence were gathered.

As investigators began to review the downloaded information from the cellular telephone of S.L., Jr., they were able to piece together the reason for his presence in Estero on April 9, 2018 – a gun transaction based upon an Armslist advertisement for the sale of numerous firearms. Further investigation revealed that the Armslist posting was associated with a Google e-mail and cellular telephone number (786) 747-9856.

As the investigation continued in the following months and into 2019, information was gathered that resulted in investigators focusing on the activity of the Defendant and Lang in 2018. Further law enforcement investigation resulted in the identification of possible witnesses. In the summer of 2019, the investigation focused on Adcock, a resident of North Carolina, who was believed to have

3

received firearms from Lang in 2018. Law enforcement was interested in obtaining those firearms to determine whether they had been used in the robbery and murders of S.L., Jr. and D.L.

On July 2, 2019, law enforcement officers met with Adcock in North Carolina and questioned him about Lang and any firearms. Adcock denied that he received any firearms from Lang. Adcock was served with a subpoena to testify before the Grand Jury on July 31, 2019, in Fort Myers, Florida. As of July 2019, no firearms believed to have been used in the robbery and murders had been recovered by law enforcement.

On July 31, 2019, Adcock testified before the Grand Jury in Fort Myers. Consistent with his prior statement to law enforcement, Adcock testified that he did not receive any firearms from Lang in North Carolina.

On August 8, 2019, the Diplomatic Security Service executed a search warrant in Roxboro, North Carolina, based upon an investigation they were conducting involving passport fraud. Adcock's home was searched pursuant to a warrant and Adcock subsequently provided a post-*Miranda* statement during which he admitted that he had received firearms from Lang in exchange for his personal identity documents and had lied to the Grand Jury in Fort Myers.

On August 20, 2019, Lang, Adcock, Matthew Scott McCloud and Jordan Dean Miller, were indicted in the Eastern District of North Carolina ("EDNC") for offenses including Conspiracy to Commit Passport Fraud and Aggravated Identity Theft. *See* Doc. 1 ("EDNC Indictment"), *United States v. Craig Lang, et.al.* 5:19-cr-

4

331-BO.

On August 26, 2019, Adcock was arrested for the EDNC indictment. Adcock provided a post-*Miranda* statement to FBI Agent James Roncinske. Adcock admitted that he had received firearms from Lang in North Carolina. Adcock was later released on conditions by the Court in EDNC.

On September 6, 2019, the FBI in North Carolina seized an AR pistol upper that had previously been in the possession of several individuals, including Lang and Adcock. The AR upper was forensically linked to the crime scene involving the robbery and murders of S.L., Jr. and D.L.

On October 9, 2019, the FBI seized a Glock 17 handgun that had previously been in the possession of several individuals, including Lang and Adcock. The Glock 17 was forensically linked to the crime scene involving the robbery and murders of S.L., Jr. and D.L.

On November 6, 2019, Adcock was indicted for a violation of 18 U.S.C. § 1623(a), False Declarations Before a Grand Jury, on or about July 31, 2019. *See* Doc. 1 ("MDFL Indictment"), *United States v. Dameon Adcock,* 2:19-cr-181-TPB-NPM. The indictment provides a factual quotation of the allegations of false declarations made by Adcock to the Grand Jury.

On November 13, 2019, Adcock entered a guilty plea to Counts 1 and 3 of the EDNC indictment pursuant to a plea agreement.

On November 22, 2019, Adcock was arrested for the MDFL indictment in North Carolina and made his initial appearance in the EDNC. Adcock made his

5

initial appearance in Fort Myers on December 19, 2019.  Doc. 8, 2:19-cr-81.  Following his initial appearance, Adcock provided additional information regarding his disposition of the firearms that he received from Lang.  The case was subsequently transferred to EDNC for final resolution.

On June 25, 2020, Adcock entered a guilty plea to the MDFL indictment in EDNC pursuant to a plea agreement.

### II.      Defendant's Motion to Dismiss

The Defendant seeks dismissal of the indictments against the Defendant based upon Adcock's perjured testimony before the grand jury that indicted the Defendant.  Doc. 138.  Alternatively, the Defendant requests a transcript of the grand jury proceedings that resulted in the indictment of the Defendant.  *Id.*

### III.     Argument and Incorporated Memorandum of Law

"An indictment returned by a legally constituted and unbiased grand jury, like an information drawn by the prosecutor, if valid on its face, is enough to call for trial of the charge on the merits. The Fifth Amendment requires nothing more." *Costello v. United States*, 350 U.S. 359, 363 (1956).  "[T]he mere fact that evidence itself is unreliable is not sufficient to require a dismissal of the indictment." *Bank of Novia Scotia v. United States*, 487 U.S. 250, 261 (1988).  It has long been recognized "that dismissal of an indictment . . . is an extreme sanction which should be infrequently utilized." *United States v. Pabian*, 704 F.2d 1533, 1536 (11th Cir. 1983)(quoting *United States v. Owen*, 580 F.2d 365, 367 (9th Cir. 1978))(internal

quotations omitted). The Defendant is required to prove prejudice when his request for dismissal of an indictment is based upon a constitutional violation. *Pabian*, 704 F.2d at 1540.

    a. **The Indictment of the Defendant Was Not Based Upon the Perjured Grand Jury Testimony of Dameon Adcock.**

The Defendant's claims that the indictments returned against the Defendant "were, based in part, on the untruthful testimony of Dameon Adcock as evidenced by his conviction for perjury . . ., " Doc. 138 at 2, are without merit. The Defendant was not implicated by Adcock in relation to the criminal activity, a separate conspiracy[1], that was the subject of the EDNC Indictment or the MDFL Indictment. In fact, whether you consider the perjured testimony of Adcock as outlined in the MDFL Indictment against Adcock, or the subsequent statements Adcock made to law enforcement following his investigation for passport fraud (the EDNC Indictment) that established his perjury, neither statement[2] mentions the Defendant. This fact, that the Defendant is not implicated in the criminal conduct charged in EDNC, is well known to the Defendant[3]. The United States also provided discovery that included statements by Damon McGinty and Matthew McCloud to law enforcement, neither of whom implicated the Defendant

---

[1] The Defendant admits that there was a separate conspiracy charged in the EDNC. Doc. 138 at 3, no. 5.
[2] The Defendant outlines Adcock's post-*Miranda* statement to law enforcement from paragraph 8 through 25 of his motion. Not surprisingly, the Defendant is not mentioned one time. Doc. 138.
[3] While not mentioned in his motion, the Defendant boarded a Greyhound bus in Raleigh, North Carolina on May 31, 2018, bound for Eau Claire, Wisconsin where he would remain until his arrest on May 23, 2019. The conspiratorial activity that was the subject of the EDNC Indictment took place in Roxboro, North Carolina in August 2018, months after the Defendant had left North Carolina. *See* Doc. 138, Appendix A (EDNC Indictment)(alleging a conspiracy that began in or around August 2018, and continued through on or about August 8, 2019).

in the criminal activity in North Carolina that was the subject of the EDNC Indictment. However, the Defendant fails to mention either statement in his motion. The Defendant also claims that "[t]he [MDFL] indictment against Mr. Adcock references a person identified only as M.M. and references others. It is logical to assume that 'others' may pertain to Alex Zwiefelhofer given the allegations that he is alleged to have conspired with Craig Lang as to the firearms allegedly traded by Land (sic) to Adcock for Adcock's identity . . . ." *Id.* at 17.

First, the Defendant can readily identify who M.M. is from the MDFL Indictment that states "M.M. was an associate of Lang's who visited [Adcock] with Lang in Roxboro, North Carolina, in or about August 2018"; to suggest otherwise is incredible given what he recites in his own motion. Second, it is completely illogical that a reference to "others" in the MDFL Indictment somehow suggests that the Defendant was involved in the separate EDNC conspiracy. How could that be logical if the Defendant was never identified by anyone who was a witness to the gun trade for identity documents belonging to Adcock?

Clearly, the Defendant disregards his own knowledge of those involved in the EDNC Indictment as a separate conspiracy, where the Defendant is not charged or implicated, and thereafter attempts to link the conspiracy that he is charged with involving Lang in the MDFL, based upon the firearms. The fact that Lang and the Defendant were involved in a separate conspiracy that involved the same firearms that were later exchanged in North Carolina for personal identity documents does not change the calculus for dismissal or production of grand jury transcripts.

8

The fate and recovery of the firearms was relevant to both the EDNC Indictment and the Superseding Indictment here, but that does not mean that Adcock was a material witness[4] against the Defendant in the Superseding Indictment. Adcock was not a coconspirator to Lang and the Defendant in the Superseding Indictment. The Defendant is not a coconspirator to Lang and Adcock in the EDNC Indictment. These mutually exclusive conspiracies, while sharing evidence in common, do not justify dismissal of the Superseding Indictment predicated on the perjured testimony of Adcock.

The Defendant also cannot establish any prejudice arising from Adcock's perjured testimony before the Grand Jury because that perjured testimony only hindered the Government investigation. Adcock's claim (the lie) that he did not receive firearms from Lang did not falsely implicate anyone. To the contrary, it had the effect of falsely exonerating Lang from criminal conduct, including the passport fraud conspiracy that was being separately investigated. Further law enforcement investigation confirmed that Adcock had in fact received firearms from Lang. However, Adcock's grand jury lies delayed the recovery of the firearms that he received from Lang. Even later, after his grand jury testimony, Adcock lied about his disposition of the firearms he received from Lang during statements he made to law enforcement. Fortunately, two of those firearms[5] were recovered

---

[4] Adcock is not a material witness for the United States and the United States has, at the earliest stages of this case, advised Counsel for the Defendant that the United States would not be calling Adcock as a witness at trial.

[5] Both firearms were forensically examined and linked to the crime scene involving the robbery and murders of S.L., Jr. and D.L.

prior to Adcock being charged in the MDFL Indictment. Nothing that Adcock said, whether a lie before the Grand Jury, or the truth after he was being investigated in North Carolina for passport fraud, ever implicated the Defendant in criminal conduct. For these reasons, the Defendant's motion to dismiss should be denied.

      **b. The Defendant Cannot Establish a Particularized Need for the Grand Jury Transcripts that Resulted in his Indictments.**

The secrecy of grand jury proceedings has long been recognized in the criminal justice system. *U.S. v. Procter & Gamble Co.*, 356 U.S. 677, 681, 78 S.Ct. 983, 987, 2 L.Ed.2d 1077 (1958); *Blalock v. United States,* 844 F.2d 1546, 1555 (11th Cir.1988) (citing *Douglas Oil Co. of Cal. v. Petrol Stops Northwest,* 441 U.S. 211, 218 n. 9, 99 S.Ct. 1667, 1672 n. 9, 60 L.Ed.2d 156 (1979)); *see also United States v. Phillips,* 843 F.2d 438, 441 (11th Cir.1988) (stating that "[t]he secrecy of the grand jury is sacrosanct"). "Defendants are not entitled to grand jury transcripts before trial; due to the strictly enforced tradition of grand jury secrecy, defendants generally have access to no information whatsoever regarding the conduct of the grand jury proceedings." *United States v. Mechanik*, 475 U.S. 66, 80 (1986). Disclosure of grand jury testimony requires that the party seeking disclosure carry a heavy burden that establishes "a compelling and particularized need." *United States v. Aisenberg,* 358 F.3d 1327, 1348 (11th Cir. 2004).

Here, the Defendant seeks disclosure of the grand jury transcripts that resulted in his indictment "to determine the extent to which Mr. Adcock's perjury impacted

their validity *and* to provide him with material necessary to his defense. . . ." Doc. 138 at 10.  Essentially, what the Defendant seeks is discovery[6] of the grand jury proceedings to attempt to build a case he believes will justify dismissal of the indictments, or in the alternative, to assist at trial.  However, bare allegations and unsubstantiated claims do not demonstrate a particularized need.  *United States v. Cole*, 755 F.2d 748, 759 (11th Cir. 1985); *United States v. Smith*, 449 Fed.Appx. 791, 793 (11th Cir. 2011)(unpublished).  More significantly, the impact of Adcock's perjury on the indictments can be readily determined on its face from the fact that the perjury was only detrimental to the United States and did not implicate the Defendant.

Finally, no prejudice to the Defendant can be established where the perjury only served to undermine the United States' investigation by falsely exonerating Lang.  Adcock's false testimony before the Grand Jury had no effect on the Defendant.  Ultimately, Adcock's lie was revealed and the truth about what happened to firearms that Lang possessed in North Carolina was established.

The Defendant's "blanket" request for all grand jury transcripts associated with his indictments is of the kind that has been rejected for not being particularized.  *Aisenberg*, 358 F.3d at 1347-48; *United States v. Gonzalez*, 452 Fed.Appx. 844, 848 (11th Cir. 2011)(unpublished); *United States v. Abusaid*, 256 Fed.Appx. 289, 291 (11th Cir. 2007)(unpublished).  Here too, the Defendant's all-

---

[6] Such disclosure is not required by the Federal Rules of Criminal Procedure.  Fed.R.Crim.P 16(a)(3).

11

encompassing request seems more focused on preparing a defense, rather than determining what impact Adcock's perjured testimony had on the grand jury. The Defendant's request to know "the number of witnesses who testified, the substance of their testimony, whether or not Mr. Adcock was the only lay witness who was presented, whether there was any evidence to the contrary of Mr. Adcock's testimony and how his perjury, which would have been immediately known[7] to the prosecution, was treated and/or attempted to be cured" is a broad net on a fishing expedition to invade the secrecy of the grand jury. The Defendant simply fails to explain how each of these items would address his needs. *Abusaid*, 256 Fed.Appx. at 291.

Even though the Grand Jury that returned the indictments against the Defendant is no longer sitting, it is the future of grand jury proceedings that must also be considered. To allow a Defendant to make an unsubstantiated claim of a constitutional violation before a grand jury that results in transcripts being provided would invite countless such requests and eventually erode the foundation of how individuals are charged with federal violations, or not at all. Undoubtedly, it would reveal the identity of witnesses who testified in a grand jury investigation and would likely testify at trial, potentially subjecting them to harassment, intimidation or worse. When weighed against the Defendant's desire to know

---

[7] It is within the province of the grand jury to assess the credibility of a witness or other evidence in determining what to believe or disbelieve. Even when there is contradictory evidence before a jury or grand jury, that circumstance alone does not amount to "immediate" perjury. To suggest otherwise fails to understand what a violation of 18 U.S.C. § 1621 entails and how it is proven.

12

more about the United States' case against him, the Defendant must wait[8].

## IV. CONCLUSION

For the foregoing reasons, the government respectfully requests that the Court deny the Defendant's motion to dismiss, or in the alternative, his request for grand jury transcripts.

                              Respectfully submitted,

                              ROGER B. HANDBERG
                              United States Attorney

By:   /s/ Jesus M. Casas
       JESUS M. CASAS
       Assistant United States Attorney
       Florida Bar No. 0152110
       2110 First Street, Suite 3-137
       Ft. Myers, Florida 33901
       Telephone:   (239) 461-2200
       Facsimile:   (239) 461-2219
       E-mail: Jesus.M.Casas@usdoj.gov

---

[8] As is required by 18 U.S.C. § 3500, the Defendant would be permitted to review the grand jury testimony of a witness who also testifies at trial.

## CERTIFICATE OF SERVICE

I hereby certify that on February 17, 2023, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following:

D. Todd Doss
Todd_Doss@fd.org

Erin Brenna Hyde
Erin_Hyde@fd.org

                                             /s/ *Jesus M. Casas*
                                             JESUS M. CASAS
                                             Assistant United States Attorney
                                             Florida Bar No. 0152110
                                             2110 First Street, Suite 3-137
                                             Ft. Myers, Florida 33901
                                             Telephone:   (239) 461-2200
                                             Facsimile:    (239) 461-2219
                                             E-mail: Jesus.M.Casas@usdoj.gov