UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.

                                          Case No.: 2:19-cr-150-FtM-38NPM

ALEX JARED ZWIEFELHOFER,

    Defendant.
_____/

### AMENDED APPLICATION FOR ISSUANCE OF SUBPOENA *DUCES TECUM*
### AND INCORPORATED MEMORANDUM OF LAW

The Defendant, Alex Zwiefelhofer, pursuant to Fed. R. Crim. P. 17(c), moves this Court for an Order allowing the issuance of a subpoena *duces tecum* for the data underlying the validation study for both v2.4.08 and v2.5.11 conducted by the DNA laboratory of the Florida Department of Law Enforcement who performed DNA analysis in this case, FDLE 20180603643. In support of this motion, Mr. Zwiefelhofer states:

### CHARGES

Mr. Zwiefelhofer has been charged by Superseding Indictment with Count One, Conspiracy to Interfere with Commerce by Robbery in violation of 18 U.S.C. §1951(a); Count Two, Interference with Commerce in violation of 18 U.S.C. §1951(a) and 2; Count Three, Conspiracy to Use a Firearm During and in Relation to a Crime of Violence in violation of 18 U.S.C. §§924(c)(1)(A)(iii) and 924(o); Count Four, Use

of a Firearm During and in Relation to a Crime of Violence in violation of 18 U.S.C. §§924(c)(1)(A)(iii), 924(j)(1), and 2; Count Five, Conspiracy to Kill, Kidnap, or Maim Persons in a Foreign Country in violation of 18 U.S.C. §956(a)(1) and; Count Six, Violation of the Neutrality Act in violation of 18 U.S.C. §960. (Doc. 32). Mr. Zwiefelhofer's trial is currently set for June 2023.

## FACTS

1.  On Tuesday, April 10, 2018, Lee County Sheriff's Office (LCSO) Homicide Unit and Crime Scene Unit responded to 9351 Corkscrew Road in Estero, Lee County, Florida. Pieces of suspected evidence were collected and submitted to the Florida Department of Law Enforcement on February 8, 2019, and June 14, 2019 by Kim Van Waus of the Lee County Sheriff's Office. Christina Russo of the Florida Department of Law Enforcement (FDLE) performed DNA testing on several pieces of purported evidence submitted by Van Waus. Ms. Russo authored FDLE reports on August 6, 2018 and October 9, 2019 under FDLE Number 20180603643.

2.  The government filed its witness summary on January 30, 2023, listing Christina Russo of the Florida Department of Law Enforcement as an expert the government intends to call at trial in this matter. Doc. 132.

3.  In order to properly evaluate, and defend against, FDLE's DNA analysis in this case, Mr. Zwiefelhofer requires the data underlying the validation studies conducted to establish peak detection (analytical) thresholds; stochastic thresholds; and interpretation of low-level or mixed samples. This request is for the underlying data, including but, not limited to, factor space i.e. the number of contributors to the

sample, the quantity of DNA from each contributor, contributor mixture ratios, sample quality, and the amount of allele sharing to each validation study document for any probabilistic genotyping software used in this case. Additionally, all data and documentation (in their native file formats that were used or generated during the internal validation study for any probabilistic genotyping software used in this case including all STRmix folders, spreadsheets used for analysis, and any other data underlying the STRmix validation study conducted by the lab, is requested. In essence, Mr. Zwiefelhofer requires production of the entire validation study for both v2.4.08 and v2.5.11 in the possession of the Florida Department of Law Enforcement including, any and all unexpected results and corrective actions: For each laboratory that performed DNA testing in the instant case, please provide copies of the laboratory's log of unexpected results and corrective actions. The logs should be provided for the time period beginning six months before the start of testing and ending six months after the completion of testing. Documentation should be provided for unexpected result events that arose due to mechanical, chemical and analyst operations, including; contamination, the presence of extraneous DNA, sample handling errors or any other reason. The logs should be provided for all laboratory personnel not just the analyst(s) who performed the testing in the instant case. Please note, this is a request for the logs themselves, not just for entries within the logs that pertain to the instant case.

  4. The sought-after data underlying the validation summaries are kept in the

regular course of the FDLE's laboratory accreditation process and are centrally located as per regulatory authority therefore, this request it is not unduly burdensome. The requested information and documentation regarding FDLE's DNA laboratory are material and necessary to the preparation of this case for trial and to the charges. As noted by NIST:

> We note that the degree of reliability of a DNA mixture interpretation system, such as a DNA analyst using a probabilistic genotyping software program, depends on sample complexity. Results cannot be simply categorized as "reliable" or "unreliable" without considering context. In addition, reliability cannot be established without validation tests using known samples of similar complexity. The results of such tests provide data that are considered accurate and reliable; only with such valid results can comparisons be made as to the reliability of unknown casework samples. We also emphasize that samples used in proficiency tests need to be representative of complex DNA mixtures seen in casework if these tests are intended to assess analysts' ability to conduct dependable DNA mixture interpretation.[1]

Mr. Zwiefelhofer is indigent and has court-appointed counsel from the Office of the Federal Defender and is therefore entitled to the relief sought under the provisions of Fed. R. Crim. P. 17(b). The requested records are necessary for the evaluation of the DNA evidence produced in discovery that the Government intends to present at trial. Mr. Zwiefelhofer requests that the attached subpoena duces tecum be issued, and any witness fees paid without cost.

5. The undersigned has conferred with Assistant United States Attorney

---

[1] NIST 8351-Draft, Executive Summary, DNA Mixture Interpretation: NIST Scientific Foundation Review, by Butler, Iyer, Press, Taylor, Vallone, & Willis, June 9, 2021 found at: NISTIR_8351-draft_Executive_Summary.pdf.

Jesus Casas who does not object to the issuance of the requested subpoena.

## MEMORANDUM OF LAW

Fed. R. Crim. P. 17(c) implements the Sixth Amendment guarantee that an accused have compulsory process to secure evidence in his favor. *In* re *Martin arietta Corp.,* 856 F.2d 619, 621 (4th Cir. 1988). Rule 17(c)(1) provides that a court may order production of subpoenaed items before trial to expedite the proceedings. *See United States v. Nixon*, 418 U.S. 683, 698-99. Rule 17(c) provides in pertinent part:

> A subpoena may order the witness to produce any books, papers, documents, date, or other objects the subpoena designates. The Court may direct the witness to produce the designated items in Court before trial or before they are to be offered in evidence. When the items arrive, the Court may permit the parties and their attorneys to inspect all or part of them.

Fed. R. Crim. P. 1 7(c)(l).

Unlike a trial subpoena under Fed.R.Crim.P. 17(a), a *subpoena duces tecum* may also be returnable before trial. *United States v. Nixon,* 418 U.S. 683, 698-99, 94 S.Ct. 3090, 3102-03, 41 L.Ed.2d. 1039 (1974). The main purpose of the rule is to expedite the trial by providing a time and place before trial for the inspection of the subpoena materials. *See Bowman Diary Co. v. United States,* 341 U.S. 214, 71 S. Ct. A675, 95 L.Ed. 879 (1951). It provides a mechanism to prevent delays at trial which typically occur when documents are produced in response to a subpoena *duces tecum* produced at trial. *Id.* The rule affords the requesting party the opportunity to inspect subpoenaed documents before trial to enable the party to see whether he can use it or

5

whether he wants to use it. *Id.* However, it is only returnable pretrial as a matter of convenience and for the purpose of saving time of the Court at trial. *United States v. Ferguson,* 37 F.R.D. 6, 7-8 (D.D.C. 1965).

The production of the requested data underlying the validation summaries prior to trial should be ordered if:

> (1) "the documents are evidentiary and relevant;"
>
> (2) the documents "are not otherwise procurable reasonably in advance of trial by exercise of due diligence;"
>
> (3) if the requesting "party cannot properly prepare for trial without such production and inspection in advance of trial" and "the failure to obtain such inspection may tend unreasonably to delay the trial;" and
>
> (4) "the application is made in good faith and is not intended as a general fishing expedition."

*Nixon* at 699.

The requested records from the Florida Department of Law Enforcement are relevant to Mr. Zwiefelhofer's defense and necessary for the proper evaluation and treatment of the evidence the government intends to present at trial. FDLE has possession of the documents and they are not otherwise available. The right to the production of all evidence at a criminal trial has constitutional dimensions. The Sixth Amendment explicitly affords every criminal defendant the right to be confronted with the witnesses against him and to have compulsory process for obtaining witnesses in his favor. Moreover, the Fifth Amendment also guarantees that no person shall be

deprived of liberty without due process of law. Thus, the Sixth Amendment right to compulsory process is fundamental to the right to a fair trial. *See Pennsylvania v. Ritchie,* 480 U.S. 39, 56, 107 S. Ct. 989, 1000-1001, 94 L.Ed.2d. 40 (1987). This same right applies to the production of evidence to present to the jury to assist in the determination of guilt. *Id.* It is thus the manifest duty of the courts to vindicate these guarantees and to accomplish that, it is essential that all relevant and admissible evidence be produced. *Nixon* at 711.

      Although pretrial subpoena *duces tecum'*s should be granted only in rare circumstances, Mr. Zwiefelhofer asserts that in this case he has met the exception to the rule. Furthermore, this application is made in advance, in good faith, and relies on specific requests establishing that it is not a general "fishing expedition." Finally, NIST makes a recommendation regarding disclosure of these requested materials in their Executive Summary stating, "[t]o allow for external and independent assessments of reliability going forward, we encourage forensic laboratories to make their underlying PGS validation data publicly available and to regularly participate in interlaboratory studies.[2]

      Wherefore, Mr. Zwiefelhofer requests that this Court order issue a subpoena *duces tecum* for the entire validation study for both v2.4.08 and v2.5.11 conducted by the DNA laboratory of the Florida Department of Law Enforcement who performed

---

[2] NIST 8351-Draft, Executive Summary, DNA Mixture Interpretation: NIST Scientific Foundation Review, pg. 6, by Butler, Iyer, Press, Taylor, Vallone, & Willis, June 9, 2021 found at: NISTIR_8351-draft_Executive_Summary.pdf.

DNA analysis in FDLE case number 20180603643. Data underlying the validation studies include but, is not limited to: all data relating to validations conducted to establish peak detection (analytical) thresholds; stochastic thresholds; and interpretation of low-level or mixed samples; factor space i.e. the number of contributors to the sample, the quantity of DNA from each contributor, contributor mixture ratios, sample quality, and the amount of allele sharing to each validation study document for any probabilistic genotyping software used in this case; all data and documentation (in their native file formats that were used or generated during the internal validation study for any probabilistic genotyping software used in this case including all STRmix folders, spreadsheets used for analysis, and any other data underlying the STRmix validation study conducted by the lab, is requested; all unexpected results and corrective actions: For each laboratory that performed DNA testing in the instant case, please provide copies of the laboratory's log of unexpected results and corrective actions. The logs should be provided for the time period beginning six months before the start of testing and ending six months after the completion of testing. Documentation should be provided for unexpected result events that arose due to mechanical, chemical and analyst operations, including; contamination, the presence of extraneous DNA, sample handling errors or any other reason. The logs should be provided for all laboratory personnel not just the analyst(s) who performed the testing in the instant case. Please note, this is a request for the logs themselves, not just for entries within the logs that pertain to the instant case.

  Respectfully submitted this 22nd day of February 2023.

        A. FITZGERALD HALL, ESQ.
        FEDERAL DEFENDER, MDFL

*/s/ D. Todd Doss*
D. Todd Doss, Esq.
Assistant Federal Defender
Florida Bar No. 0910384
201 S. Orange Avenue, Suite 300
Orlando, FL 32801
Telephone: 407-648-6338
Fax: 407-648-6095
E-Mail: todd_doss@fd.org

*/s/ Erin Brenna Hyde*
Erin Brenna Hyde, Esq.
Florida Bar No. 0026248
Assistant Federal Defender
201 South Orange Avenue, Suite 300
Orlando, FL  32801
Telephone: 407-648-6338
Fax: 407-648-6095
Email: erin_hyde@fd.org

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that undersigned electronically filed the foregoing with the Clerk of Court (CM/ECF) by using the CM/ECF system this 23rd day of February 2023 which will send an electronic copy to all counsel of record.

        *s/Erin Brenna Hyde*
        Attorney for Mr. Zwiefelhofer